IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ) | Chapter 11 |
| ) | |
| TOUCH AMERICA HOLDINGS, INC., et al., ) | Bk. No. 03-11915 (KJC) |
| ) | |
| Debtors. ) | Jointly Administered |
| ENTECH LLC, ) | |
| ) | Adv. No. 04-52935 (KJC) |
| Plaintiff, ) | |
| ) | |
| OFFICIAL COMMITTEE OF UNSECURED ) | |
| CREDITORS, ) | |
| ) | |
| Plaintiff-Intervenor, ) | |
| ) | |
| v. ) | C.A. No. 04-1336-SLR |
| ) | |
| WESTMORELAND COAL COMPANY, ) | |
| a Delaware corporation, and ) | |
| WESTMORELAND MINING LLC, ) | |
| a Delaware limited liability company, ) | |
| ) | |
| Defendants. ) | |

**OPENING BRIEF IN SUPPORT OF
PLAINTIFF ENTECH LLC'S MOTION TO COMPEL**

WINSTON & STRAWN LLP
C. MacNeil Mitchell
Piero A. Tozzi
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700

Rolf S. Woolner
333 South Grand Avenue
Los Angeles, CA 90071-1543
(213) 615-1700

YOUNG CONAWAY STARGATT
  & TAYLOR, LLP
Robert S. Brady (No. 2847)
John T. Dorsey (No. 2988)
Christian Douglas Wright (No. 3554)
Matthew B. McGuire (No. 4366)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600

Co-counsel to the Plaintiff

Dated: April 29, 2005

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................... iii

NATURE AND STAGE OF THE PROCEEDINGS ........................................ 1

SUMMARY OF THE ARGUMENT .......................................................... 2

STATEMENT OF FACTS ..................................................................... 4

    A.   The Parties ........................................................................ 4

    B.   The Sale of the Companies ..................................................... 5

    C.   The Stock Purchase Agreement and Related Contracts ................... 6

    D.   Westmoreland's Financing For The Transaction ........................... 7

    E.   The Closing ........................................................................ 8

    F.   Westmoreland's Objections ..................................................... 8

    G.   The IAP And This Litigation ................................................... 9

    H.   The Remaining Claims ......................................................... 10

        1.   Entech's Claims ........................................................ 10

        2.   Westmoreland's Counterclaims ..................................... 10

    I.   Entech's Discovery Requests Directed To Westmoreland ................ 11

    J.   Westmoreland's Responses To The Discovery Requests ................... 13

    K.   Westmoreland's Document Production ..................................... 13

ARGUMENT ................................................................................. 15

    I.   WESTMORELAND HAS NOT FULFILLED ITS OBLIGATION
        TO PRODUCE NON-PRIVILEGED DOCUMENTS
        RESPONSIVE TO ENTECH'S REQUESTS FOR PRODUCTION ....... 16

        A.   Request No. 9 ............................................................ 16

        B.   Request No. 11 .......................................................... 17

        C.   Request No. 12 .......................................................... 18

        

D.   Request No. 15................................................................................ 19

E.   Request No. 16................................................................................ 21

F.   Request No. 17................................................................................ 21

G.   Request No. 19................................................................................ 22

H.   Request No. 20................................................................................ 23

I.   Request No. 25................................................................................ 24

J.   Request Nos. 26 and 27 .................................................................. 25

K.   Other Concerns With Westmoreland's Document
     Production ...................................................................................... 26

II.   WESTMORELAND HAS NOT FULFILLED ITS OBLIGATION
      TO RESPOND TO CERTAIN OF ENTECH'S
      INTERROGATORIES ............................................................................. 26

A.   Interrogatory No. 6......................................................................... 26

B.   Interrogatory No. 17....................................................................... 27

C.   Interrogatory No. 18....................................................................... 28

D.   Interrogatory No. 20....................................................................... 29

CONCLUSION................................................................................................ 30

ii

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Corning Inc. v. SRU Biosystems, LLC*,
    2004 U.S. Dist. LEXIS 14831 (D. Del. July 7, 2004) ..................................................15

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978)......................................................................................................15

*Pennwalt Corp. v. Plough, Inc.*,
    85 F.R.D. 257 (D. Del. 1979) ......................................................................................15

*Sykes v. Target Stores, Inc.*,
    2002 U.S. Dist. LEXIS 6627 (N.D. Ill. April 15, 2002)..................................................

*United States v. Dentsply Int'l, Inc.*,
    2000 U.S. Dist. LEXIS 6925 (D. Del. May 10, 2000).................................................15

**Rules**

Fed. R. Civ. P. 26(b)(1)........................................................................................................15

WP3:1106815.6

062207.1011

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Entech LLC ("Entech") moves to compel full responses to certain of Entech's interrogatories and requests for the production of documents, and the production of documents which are properly discoverable under Federal Rules of Civil Procedure 26 and 34. Defendants have failed to comply fully and fairly with their discovery obligations in responding to interrogatories and document requests and in producing responsive, non-privileged documents.

Fact discovery in this case is set to close on June 30, 2005, so Entech has already been harmed by Westmoreland's delay in producing what few, largely irrelevant documents it has produced, and its flat refusal to produce documents and information concerning certain highly-relevant topics. Entech has engaged in good faith efforts to obtain Westmoreland's compliance with its discovery obligations without the need for court intervention, but those efforts met with only limited success. Westmoreland's failure to comply with its discovery obligations will impede Entech's ability to try this case on its merits, thus requiring the motion to compel.

## SUMMARY OF THE ARGUMENT

This litigation arises from the sale by Entech to defendant Westmoreland Coal of Entech's coal subsidiaries (the "Companies") pursuant to a Stock Purchase Agreement dated September 15, 2000 (the "SPA"). Westmoreland has refused to pay the agreed sum for the Companies because it asserts that the representation that the financial statements of the Companies provided to Westmoreland "were prepared in accordance with GAAP and fairly present[ed] in all material respects the consolidated financial condition and statement of operations" was not true and that Westmoreland suffered damages as a result. Entech has been forced to file the Motion to Compel because defendants have failed to produce documents and respond to interrogatories concerning some of the most basic issues here.

Westmoreland filed proofs of claim in Entech's bankruptcy asserting more than $39 million in damages, and at the same time denying it owes Entech a remaining $5 million payment under the SPA. Yet, Westmoreland has steadfastly refused to produce documents that are basic to its alleged claims, defenses and damages. Moreover, it has delayed producing the few documents it has by weeks in an obvious attempt to prejudice Entech's ability to prepare its case for trial. At the same time Entech has produced over 70,000 pages of documents in response to Westmoreland's requests and as a part of its initial disclosures. Westmoreland's explanation for its discovery failures is its determination that documents directly related to its claims, defenses and damages are somehow not relevant to the issues in this case. As discussed below, Westmoreland's explanation is without merit.

As explained in detail in the Argument section below, Entech is entitled to receive all documents from Westmoreland relating to:

2

1.    any valuation of the Companies;

2.    any work performed by KPMG, which provided accounting and tax advice to Westmoreland, with respect to the transaction;

3.    the accounting and tax treatment, methods, or procedures used by Westmoreland with respect to the Companies since closing;

4.    the minutes (including drafts) of or materials presented or provided at, or notes taken by persons present at any meeting of the Westmoreland board of directors at which there was any discussion or consideration of the transaction and closely related matters;

5.    any opinion, expression of views, advice, or other communication Westmoreland received relating to the transaction;

6.    any meetings or communications between Entech and Westmoreland relating to the Transaction;

7.    the Section 338(h)(10) election under the Internal Revenue Code (which resets the basis for certain assets) made by Westmoreland upon its purchase of the Companies;

8.    the files of Thomas S. Barta, Westmoreland's Controller and the individual identified by Westmoreland as having the most knowledge concerning the issues in this case, with respect to the Transaction and closely related matters;

9.    organizational charts that show the personnel in Westmoreland's Colorado Springs offices from 2000 to the present, and the personnel at two of the Companies (WECO and Northwestern) following the closing;

3

10.    Westmoreland's general document retention policies and those with respect to electronic mail and other electronic data for the time period since the transaction.

And as is also explained in this brief with respect to the interrogatories propounded to Westmoreland, Entech is entitled to identification of:

1.    any persons with knowledge of facts supporting Westmoreland's contention in paragraph 103 of its counterclaims that Entech "improperly excluded non-vested benefits from the transfer amount," or confirmation that Westmoreland is unaware of any such persons.

2.    all meetings of Westmoreland's board of directors, and all persons present at such meeting, at which there was any discussion or consideration of the transaction or certain closely related matters.

3.    any person who provided any opinion, expression of views, advice, or other communication, concerning the transaction or certain closely related matters.

4.    all third-persons to whom any disclosures were made by Westmoreland in which Westmoreland included, referred to, or incorporated the financial information at issue.

## STATEMENT OF FACTS

### A.    The Parties

Prior to February 2002, Entech was a wholly-owned subsidiary of The Montana Power Company ("MPC"). Entech, in turn, was the parent company of the non-utility businesses of MPC, including the Companies, whose sale to Westmoreland pursuant to the SPA is the subject of this litigation. Approximately two years after the April 2001

4

sale of the Companies to Westmoreland, Entech, its then parent, and various affiliates filed for Chapter 11 protection in the United States Bankruptcy Court for the District of Delaware. On October 19, 2004, the Debtors' Amended Liquidating Chapter 11 Plan (the "Plan") became effective, at which time a plan trust was vested with the administration of the post-confirmation estates and assets, including this litigation.[1]

Defendant Westmoreland Coal was the original party to the SPA. Defendant Westmoreland Mining is a wholly-owned subsidiary of Westmoreland Coal. The sale was structured so that Westmoreland Mining purchased the Companies pursuant to an assignment of interests under the SPA from Westmoreland Coal. Westmoreland Mining asserts a claim based upon this assignment.

**B.      The Sale of the Companies**

In March 2000, MPC and Entech announced the sale of the Companies through a competitive bidding process. Westmoreland and other prospective buyers conducted due diligence throughout the summer of 2000 and were provided extensive access to the Companies' books and records before tendering their bids. During due diligence, Entech provided Westmoreland with, among other things: (i) the Companies' balance sheet as of December 31, 1999, and the related unaudited consolidated statement of operations for the fiscal years of 1997, 1998, and 1999; and (ii) the most recent balance sheet of the Companies as of July 31, 2000 (the "Interim Financial Statement" and, collectively with the documents referred to in (i), the "Pre-Closing Financial Statements").

---

1    Although the Trust is now the real party in interest, the plaintiff will still be referred to as Entech.

062207.1011

**C.    The Stock Purchase Agreement and Related Contracts**

Negotiations ultimately resulted in the execution of the SPA on September 15, 2000. The parties agreed to a purchase price of $138 million. Section 1.04 of the SPA contemplated a possible purchase price adjustment in the event of two contingencies: (1) possible changes in the Companies' net asset value on the Closing Date; and (2) Entech's payment to Westmoreland of the Companies' net revenues from January 1, 2001 up to the Closing Date, if the closing took place after December 31, 2000.

The SPA contains a variety of representations and warranties by both sides, several of which are relevant to the parties' dispute. Section 2.08(a) contains a representation by Entech that, subject to certain exceptions, the Pre-Closing Financial Statements "were prepared in accordance with GAAP and fairly present in all material respects the consolidated financial condition and statement of operations" of the Companies as of their respective dates. Section 3.07 contains representations by Westmoreland concerning its knowledge and experience and the extent of its independent investigation and due diligence, including its review of the books and records of the Companies.

As part of the transaction, the parties executed related contracts that affected the purchase price. First, the parties entered into a letter agreement on April 25, 2001 (the "$5 Million Adjustment Agreement"), whereby Entech, in order to accommodate some issues Westmoreland was having with its financing, agreed to reduce the cash payable at closing from $138 million to $133 million, in return for Entech receiving a $5 million credit, plus interest, as the last step in preparing the final Closing Date Certificate ("CDC") contemplated under the SPA to make final adjustments to the purchase price. Second, Entech and Westmoreland executed a Guiding Principles Agreement on April

6

25, 2001, in which they adopted certain "Guiding Principles for Calculation of Net Asset Value and Net Revenue Amount." The parties expressly agreed to use these Guiding Principles in calculating the Net Asset Value and the Net Revenue Amount in the CDC, and agreed that the Guiding Principles "are based upon generally accepted accounting principles (GAAP), applied consistently." These Guiding Principles were the same accounting principles historically applied in preparing the Companies' balance sheets and income statements.

**D.    Westmoreland's Financing For The Transaction**

In order to finance the purchase of the Coal Companies, Westmoreland entered into a $20 million revolving credit agreement with PNC Bank, Firstar Bank (now U.S. Bank), and National City Bank, and a term loan agreement for the placement of $120 million in secured notes (jointly, the "Transaction Financing Agreements").[2] As security for the financing, Westmoreland pledged all of the stock in the Companies. Under the Transaction Financing Agreements Westmoreland was obligated to provide the banks, lenders, and note purchasers with a confidential offering memorandum containing, among other things, information about the Transaction, as well as compliance certificates, notices of litigation, and information about the Companies, including financial statements, schedules, books of record and account, pension plan information, budgets, forecasts, projections, and management letters provided by independent accountants in connection with any audit.

---

[2]    The Transaction Financing Agreements are publicly available, having been filed by Westmoreland with the SEC on a Form 8-K on April 30, 2001.

E.     **The Closing**

After executing the SPA, Entech continued to provide Westmoreland with detailed financial statements and information on a regular basis. PricewaterhouseCoopers ("PWC") audited Montana Power Company's financials (which incorporated the Companies' financial performance) for the year ended December 31, 2000 and issued an unqualified opinion on those statements, indicating that the statements complied with GAAP.  Because of a bonding requirement, one of the operating coal companies required audited financials, and PWC audited its 2000 financial statements, again issuing a clean opinion.  These statements were all provided to Westmoreland.

The closing occurred on April 30, 2001.  Entech provided Westmoreland with the CDC on June 29, 2001, with supplemental schedules on July 1 and July 16, 2001.  The CDC and schedules were prepared by the Companies' same accounting personnel using the same accounting systems as for the Pre-Closing Financial Statements.  The CDC showed an increase in net assets, offset by net revenue in 2001, for an adjustment to the purchase price in Entech's favor of $3.8 million, in addition to the $5 million Entech had agreed to defer past the closing date.

F.     **Westmoreland's Objections**

Westmoreland objected to the CDC on July 27, 2001 (the "Objections"),  initially claiming an adjustment in its favor of $74 million – more than half the purchase price! – alleging that many of the assets values did not comply with GAAP.  Westmoreland subsequently amended its claim to $30.4 million.  The SPA required submission of

8

disputes over the purchase price adjustment to a "nationally recognized independent accountant" for resolution (the "Independent Accountant Proceeding" or "IAP").

Westmoreland demanded that all of its Objections be submitted to an Independent Accountant.  Entech declined, arguing that most of Westmoreland's Objections were based on allegations regarding historical accounting practices, not matters involving the time period between the Interim Financial Statement and closing that would be subject to the Independent Accountant Proceeding.

### G.    The IAP And This Litigation

Ultimately, after the bankruptcy had been filed, the parties entered into a Stipulation and Order, approved by the Bankruptcy Court, whereby certain of Westmoreland's Net Asset Value Objections and Net Revenue Objections claims would be adjudicated in an IAP, with the remainder of the Net Asset Objections to be determined in litigation.  When the independent accountant issued a report on November 30, 2004, the end result was a net asset/net revenue purchase price adjustment to Westmoreland of $586,683, separate from the undisputed $5 million (plus interest) owed to Entech.

The remaining claims are now before this Court.[3]

_____

3    Following the issuance of the IAP report, Westmoreland filed its Second Amended Answer and Counterclaims in this action, in which it asserting that the IAP "did not resolve" certain Net Asset Value Objections "on their merits" and thus Westmoreland may, pursuant to the Stipulation and Order referred to above, assert these Objections anew in this litigation, effectively seeking a second bite of the apple.  There is no merit to this assertion, as the IAP report made an adjustment in Westmoreland's favor for the Objections in question.

### H.    The Remaining Claims

#### 1.    Entech's Claims

Entech has asserted seven claims against Westmoreland.  Counts 1 and 2 of its First Amended Complaint are breach of contract claims based on Westmoreland's refusal to pay to Entech the approximately $5.2 million (including interest) Westmoreland owes Entech after the IAP.  Count 3 is a turnover claim brought under Section 542(a) of the Bankruptcy Code, and seeks to require Westmoreland to turn over amounts still owed under the SPA and the $5 Million Adjustment Agreement after an ultimate liquidation of Westmoreland's claims is reached.  Count 4 asserts a claim against Westmoreland for breach of the covenant of good faith and fair dealing under New York law.  Count 5 seeks to have any valid claim held by Westmoreland equitably subordinated on account of Westmoreland's conduct and breach of its covenant of good faith and fair dealing. Count 6 is an objection to allowance of Westmoreland's Proof of Claim, on the ground that there is no merit to the claim that the Companies' financial statements were not maintained in accordance with GAAP.  Count 7 asserts a mandatory subordination claim pursuant to Section 510(b) of the Bankruptcy Code.

#### 2.    Westmoreland's Counterclaims

Westmoreland asserts four counterclaims against Entech.  The first asserts that Entech breached representations and warranties in Section 2.08 of the SPA concerning the Pre-Closing Financial Statements by improperly accounting for certain assets, making improper tax assumptions, and failing to follow GAAP in preparing the Pre-Closing Financial Statements.  The objections in issue are those objections that were not sent to

062207.1011

the IAP; in addition, Westmoreland seeks to reassert certain objections that were dealt with in the IAP (*see* n.3, *supra*).

Westmoreland also asserts two breach of contract claims relating to a dispute regarding the transfer of specific pension plan assets from the Montana Power Company Pension Plan to a plan maintained by Westmoreland (the "Pension Transfer Dispute") arising out of Section 5.04(g) of the SPA. Westmoreland's fourth and final counterclaim asserts a setoff claim under Section 553 of the Bankruptcy Code, and seeks to offset any amount awarded to Entech by whatever amount is awarded on Westmoreland's claims.

## I. Entech's Discovery Requests Directed To Westmoreland

On February 10, 2005, Entech propounded its First Set of Requests for the Production of Documents and Things (the "Requests for Production") (attached as Exhibit A) and its First Set of Interrogatories (the "Interrogatories") (attached as Exhibit B) to Westmoreland.

Broadly stated, Entech's Requests for Production seek documents relating to the Transaction and the various agreements, documents, and papers related to the Transaction and/or referred to in the parties' pleadings. The Requests for Production also seek documents relating to the statements of operation and any financial or accounting information, statements, balance sheets, and reports relating to the Companies which were utilized in connection with the Transaction or the preparation of the Objections, the Proof of Claim, or the Indemnity Notices (these materials being defined in the Requests for Production as the "Financial Materials"). The Requests for Production also seek documents relating to the Pension Transfer Dispute, and Westmoreland's damages claims.

11

Unsurprisingly, given that the majority of Westmoreland's claims relate to the accounting and tax treatments, methods, and procedures Entech applied with respect to the Coal Companies and whether the assets Westmoreland purchased (*i.e.*, the Companies) were worth what Westmoreland paid for them, the Requests for Production also seek documents relating to any valuations of the Coal Companies, and to the accounting and tax treatment, methods, or procedures used with respect to the Coal Companies, both at the time they were owned by Entech and after their purchase by Westmoreland. Equally unsurprising, given that both sides retained experienced, nationally-recognized accounting firms to advise them in the Transaction (KPMG for Westmoreland, PricewaterhouseCoopers for Entech) the Requests for Production also seek documents relating to the work KPMG performed for Westmoreland with respect to the Transaction.

The Interrogatories seek information relating to the identification of persons with knowledge of the case, including those who were involved in the due diligence and negotiation of the Transaction and seek information concerning (i) the representations and warranties in the SPA Westmoreland contends were breached by Entech, (ii) the financial statements Westmoreland contends were not prepared in accordance with GAAP or which did not fairly present in all material respects the consolidated financial condition and statement of operations of the Coal Companies on the dates indicated, (iii) the alleged misstatements of asset values of the Coal Companies (as stated in paragraph 94 of Westmoreland's counterclaims), (iv) the Pension Transfer Dispute, and (v) Westmoreland's damages.

J.    **Westmoreland's Responses To The Discovery Requests**

Westmoreland requested and received an extension of time to respond to the

Requests for Production and the Interrogatories.   On March 23, 2005, Westmoreland

served its responses and objections to the Requests for Production (attached as Exhibit C)

and the Interrogatories (attached as Exhibit D).  In its responses, Westmoreland

interposed a number of objections and drew artificial limitations on the scope of its

responses.

Counsel for Entech requested a meet-and-confer with counsel for Westmoreland

to discuss the areas of concern to Entech.  Counsel conferred on two occasions, April 19

and 25, 2005, and were able to address some issues but failed to reach agreement on

others, thus necessitating the filing of this motion to compel.

K.    **Westmoreland's Document Production**

In the more than one month since Westmoreland was due to produced responsive

documents, and in the two-and-one-half months since the Requests for Production were

first propounded, Westmoreland has produced approximately 12,000 pages of documents.

The first batch of documents, approximately 6,500 pages, was not produced until April 4,

2005, and contains documents, such as corporate organizational documents for the

Companies (in some cases going back over 30 years), that are virtually all irrelevant to

any of the issues in this litigation – under either side's version of what is or is not in issue

– and which were not (at least on their face) called for by the Request for Production.

Despite repeated inquiries by counsel for Entech as to when additional documents

would be produced, Westmoreland did not produce more documents for another three

weeks – until Tuesday, April 26 – when it produced an additional 6,000 pages.  Counsel

for Westmoreland has advised counsel for Entech that Westmoreland's document

production is nearly complete.  Therefore, Entech expects that Westmoreland will be

producing less than 20,000 pages of documents, notwithstanding the fact that

Westmoreland had access to reams of information about the Companies during its due

diligence and that it succeeded to all of the corporate and financial records of the

Companies when it acquired them.

Westmoreland's dilatory approach to document production, combined with its

outright refusal to respond to relevant requests and interrogatories, is calculated to

hamper Entech's ability to try this case.  In contrast to Westmoreland's tactics, Entech

has produced approximately 70,000 pages of material in response to Westmoreland's

document requests, served two weeks after Entech's requests.

14

## ARGUMENT

The standards for discovery are, as this Court has noted, "broad and liberal." *Corning Inc. v. SRU Biosystems, LLC*, 2004 U.S. Dist. LEXIS 14831, at *3 (D. Del. July 7, 2004) ("it is well recognized that the federal rules allow broad and liberal discovery.") (quoting *Pacitti v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999)). "[P]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Relevance itself is "construed liberally" under Rule 26(b)(1). *United States v. Dentsply Int'l, Inc.*, 2000 U.S. Dist. LEXIS 6925, at *13 (D. Del. May 10, 2000). As the United States Supreme Court has noted, relevance "encompass[es] any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Therefore, "[d]iscovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." *In re ML-Lee Acquisition Fund II*, 151 F.R.D. 37, 39 (D. Del. 1993). *See also Pennwalt Corp. v. Plough, Inc.*, 85 F.R.D. 257, 259 (D. Del. 1979) (noting that "relevancy is construed more loosely in the discovery context than at trial").

Under these standards, Westmoreland is not complying with its obligations.

I.    **WESTMORELAND HAS NOT FULFILLED ITS OBLIGATION TO PRODUCE NON-PRIVILEGED DOCUMENTS RESPONSIVE TO ENTECH'S REQUESTS FOR PRODUCTION**

A.    **Request No. 9**

Request No. 9 seeks all documents relating to any valuation of the Companies. In its response, Westmoreland states that it will produce "valuations of the Coal Companies prepared by Westmoreland or at its request in connection with the Transaction." During the meet-and-confer, counsel for Westmoreland stated that Westmoreland believed that the only valuations that have any possible relevance to this litigation are those done in connection with the purchase of the Coal Companies, and that Westmoreland would produce only the final valuations themselves, not any of the background or supporting materials that were used in preparing the valuations.

These limitations are improper because Request No. 9 seeks much more than just the final valuations themselves. It seeks all documents *relating to* any valuation, and thus it is inappropriate for Westmoreland to limit artificially the types of documents it is producing. Likewise, there is no temporal limitation on Entech's request, and thus it is inappropriate for Westmoreland to say it will produce only those valuations that were done at the time of Westmoreland's purchase of the Companies. How Westmoreland values the Coal Companies, whether at the time of the Transaction or afterward, is relevant because the value Westmoreland places on the Companies goes to one of the most basic issues in this litigation – *did Westmoreland get what it paid for*? What Westmoreland thinks the Coal Companies are worth impacts that issue. Materials relating to such valuations in Westmoreland's hands are relevant for that purpose and for determining the value Westmoreland placed on the Coal Companies and ascertaining

16

what information Westmoreland looked at in valuing the Coal Companies, what it considered important (all of which go to the issue of reliance on disputed aspects of the financial statements), and how Westmoreland accounted for assets of the Companies (which goes to the appropriateness of the accounting methods used by Entech).

### B.     Request No. 11

Request No. 11 seeks all documents relating to any work performed by KPMG with respect to the Financial Materials, the Closing Date Certificate, the Interim Financial Statements, or the Transaction Financing Agreements. In its response, Westmoreland states that it will produce non-privileged documents relating to "the Financial Materials, the Interim Financial Statements, and the Objections at issue in this proceeding." During the meet-and-confer, counsel for Entech asked counsel for Westmoreland to confirm whether Westmoreland was going to produce any documents relating to KPMG's work with respect to the Transaction Financing Agreements, since Westmoreland's response neither interposes an objection to such documents nor states that Westmoreland will produce them. Counsel for Westmoreland indicated that they were still not even sure what KPMG did with respect to the Transaction Financing Agreements (even though they have had 10 weeks since the Requests for Production were first served in which to figure that out), but stated that Westmoreland would be producing everything it gave to the banks, as long as that information had something to with "the objections at issue in this proceeding."

Westmoreland has agreed to produce only the documents it provided to the banks involved in the Transaction Financing Agreements, and only for "the objections at issue in this proceeding." This is not the same as producing all documents relating to any work

performed by KPMG relating to the Transaction Financing Agreements, and

Westmoreland's failure to produce all such non-privileged documents is improper.

Documents concerning any work by KPMG with respect to the Transaction Financing

Agreements, the Transaction or any of the financial, accounting, or tax materials touching

on the Companies, are at the very least reasonably calculated to lead to the discovery of

admissible evidence.  Westmoreland has neither produced the documents sought nor even

yet confirmed whether they exist.

> **C.    Request No. 12**

Request No. 12 seeks all documents relating to the accounting and tax treatment,

methods, or procedures used by Westmoreland with respect to the Companies from April

30, 2001 to the present day.  In its response, Westmoreland states that it will produce

documents "that relate to the Objections at issue in this proceeding and the accounting

treatment applied immediately following the Closing of the Transaction in connection

with Westmoreland's purchase price accounting."  During the meet-and-confer, when

asked to explain the basis for Westmoreland's limitations, counsel for Westmoreland

stated that Westmoreland believes that only documents relating to the accounting that

went into effect at the time Westmoreland bought the Coal Companies are possibly

relevant to this litigation, and thus Westmoreland would not produce documents relating

to the accounting for any later time periods.

One of the core issues in this litigation is whether the accounting and tax

treatments, methods, or procedures used by Entech with respect to the Coal Companies

were proper and complied with GAAP and fairly presented the financial position of the

Companies in all material respects.  The accounting and tax treatments, methods, or

procedures used by Westmoreland with respect to the Companies since the closing in many cases are likely to reflect on the propriety of the treatments, methods, or procedures used by Entech in connection with the same assets or operations, particularly where GAAP permits more than one way of accounting for an item. Indeed, Westmoreland has, by agreeing to produce some materials relating to accounting and tax treatment, methods, and procedures, conceded that the subject matter is relevant, so the only issue is whether materials relating to this subject matter from later time periods is relevant or has the potential to lead to the discovery of admissible evidence. Some of these accounting issues involve treatment of items that extend over a number of years. The requested materials are discoverable and Westmoreland should be compelled to produce them.

### D.    Request No. 15

Request No. 15 seeks all documents relating to the minutes (including drafts) of or materials presented or provided at, or notes taken by persons present at any meeting of the Westmoreland board of directors at which there was any discussion or consideration of the Transaction, the Objections, the Proof of Claim, the Indemnity Notices, the Financial Materials, the Closing Date Certificate, the Interim Financial Statements, or the Transaction Financing Agreements. In its response, Westmoreland states that it will produce non-privileged portions of board materials "that relate to the Objections at issue in this proceeding." During the meet-and-confer, counsel for Westmoreland confirmed that Westmoreland would also be producing the other materials sought by the request, but indicated that if there was a board discussion of the SPA or the Indemnity Notices (or the like) that had "nothing to do with this case" then Westmoreland would not be producing such documents. Counsel for Westmoreland also indicated that to the extent

Westmoreland would be producing any non-privileged minutes, notes, or materials, it would redact what it deemed were irrelevant items from those minutes, notes, or materials before producing them.

Neither of these limitations on production is appropriate. First, Request No. 15 seeks information concerning more than just what Westmoreland refers to as "the objections at issue in this proceeding." Despite Westmoreland's claims to the contrary, this case is about more than just the objections not resolved in the IAP. Two of Westmoreland's own counterclaims concern the Pension Transfer Dispute, which has *nothing* to do with any objection asserted by Westmoreland. *See* Second Amended Answer and Counterclaims at ¶¶ 96-106 (D.I. 16). And this request seeks documents concerning matters discussed in the First Amended Complaint, the Second Amended Answer and Counterclaims, the Reply to Counterclaims, the Scheduling Order, and the Initial Disclosures.

Second, Westmoreland is not entitled to redact what it deems to be "irrelevant" portions of responsive board materials – that is the purpose of the protective order the parties are negotiating. Indeed, Westmoreland's own document requests to Entech state that production of an entire document is the appropriate course of action in such circumstances. *See* Exhibit E, attached hereto, at Instruction E, p.7 ("Where only a portion of a document contains information responsive to the requests set forth below, produce the entire document along with all attachments, appendices, and exhibits.") If a document is relevant but contains additional information Westmoreland believes is confidential then the information can be designated as such and protected accordingly.

WP3:1106815.6                                                                                                      062207.1011

Entech has followed this approach in producing its own documents to Westmoreland and is entitled to reciprocal treatment from Westmoreland.

### E.   Request No. 16

Request No. 16 seeks all documents relating to any opinion, expression of views, advice, or other communication Westmoreland received relating to the Transaction, the Objections, the Proof of Claim, the Indemnity Notices, the Financial Materials, the Closing Date Certificate, the Interim Financial Statements, or the Transaction Financing Agreements.  In its response, Westmoreland states that it will produce non-privileged portions of these materials "that relate to the Objections at issue in this proceeding." During the meet-and-confer, counsel for Westmoreland confirmed that Westmoreland was limiting its production of documents in response to this request on the same basis that it is limiting its production of documents in response to Request No. 15.  For the same reasons outlined for Request No. 15, Westmoreland's limitations are inappropriate.

### F.   Request No. 17

Request No. 17 seeks all documents relating to any meetings or communications between Entech and Westmoreland relating to the Transaction, the Objections, the Proof of Claim, the Indemnity Notices, the Financial Materials, the Closing Date Certificate, the Interim Financial Statements, or the Transaction Financing Agreements.  In its response, Westmoreland states that it will produce non-privileged portions of these materials "that relate to the Objections at issue in this proceeding."  During the meet-and-confer, counsel for Westmoreland confirmed that Westmoreland was limiting its production of documents in response to this request on the same basis that it is limiting its

21

production of documents in response to Request No. 15. For the same reasons outlined for Request No. 15, Westmoreland's limitations here are inappropriate.

### G.    Request No. 19

Request No. 19 seeks all documents relating to the "Section 338(h)(10) Election." The Section 338(h)(10) Election is defined in the SPA as Westmoreland's election under Section 338(h)(10) of the Internal Revenue Code with respect to the purchase of the Companies' stock. In its response, Westmoreland refuses to produce any such documents on the ground that such information is irrelevant and not likely to lead to the discovery of admissible evidence. During the meet-and-confer, counsel for Westmoreland continued to take the position that documents relating to the Section 338(h)(10) Election are irrelevant to this litigation because there is no dispute that a Section 338(h)(10) election was made, and that the consequences of the election allegedly flow as a matter of law.

The Section 338(h)(10) Election is extremely important for a number of Westmoreland's accounting objections. In a Section 338(h)(10) election, a qualified stock purchase (such as the Transaction here) is for tax purposes treated as an acquisition of assets followed by a tax-free liquidation, deriving a new (and higher) basis for those assets without triggering certain tax consequences typically applicable to an asset acquisition. Ownership of the assets remains in the purchased company, but the tax basis of the purchased company's assets is adjusted to reflect the purchase price, with important tax consequences for the purchasing company. The purchaser will have a stepped-up basis in the purchased company's assets, resulting in greater tax deductions and reduced taxes in the future, and without being taxed on the sale of stock.

Over half of Westmoreland's objections relate to deferred taxes, in which Westmoreland alleges that Entech's treatment of deferred and non-deferred taxes was improper. Westmoreland, however, always planned to make the Section 338(h)(10) Election (as is reflected Sections 8.08 and 8.09 of the SPA). In other words, Westmoreland always intended to reset the Coal Companies' books, so that Entech's prior accounting for such deferred taxes could have no effect on Westmoreland. Information relating to the Section 338(h)(10) Election, therefore, relates to Westmoreland's ability to establish and quantify any damages it supposedly suffered on account of Entech's alleged errors in GAAP accounting on the deferred tax objections. Such documents will also reflect on Westmoreland's knowledge of the effects the Section 338(h)(10) Election would have on any valuation of the deferred tax assets of the Companies, and show Westmoreland did not consider the deferred tax assets to have any real value in light of its planned Section 338(h)(10) election, all of which goes to the issue of reliance.

### H.    Request No. 20

Request No. 20 seeks all documents from the files of Thomas S. Barta, Westmoreland's Controller and the individual identified by Westmoreland as having the most knowledge concerning the issues in this case, relating to the Transaction, the Objections, the Proof of Claim, the Indemnity Notices, the Financial Materials, the Closing Date Certificate, the Interim Financial Statements, or the Transaction Financing Agreements. In response, Westmoreland states that it will produce non-privileged portions of these materials "that relate to the Objections at issue in this proceeding." During the meet-and-confer, counsel for Westmoreland confirmed that Westmoreland

was limiting its production of documents in response to this request on the same basis

that it is limiting its production of documents in response to Request No. 15. For the

same reasons outlined for Request No. 15, Westmoreland's limitations here are

inappropriate.

### I.    Request No. 25

Request No. 25 seeks all organizational charts that show the personnel in

Westmoreland's Colorado Springs offices from 2000 to the present, and the personnel at

WECO or Northwestern from April 30, 2001 to the present. Such charts are routinely

sought and provided in litigation. They aid parties in understanding the chain of

command structure at the relevant entity, and provide one measure of determining where

individuals were working, what they were working on, and for whom they were working,

at a particular time. Such information may be useful as documents are being reviewed

and as witnesses are questioned at depositions.

In its response, Westmoreland states that it will only produce documents

sufficient to show the officers and directors of Westmoreland for each of the years 2001,

2002, and 2003. During the meet-and-confer, counsel for Westmoreland stated that

Westmoreland does not believe that any of the information is relevant, and that it would

continue to refuse to produce Westmoreland's organizational charts for its Colorado

Springs offices. Counsel did, however, agree to go back promptly and determine whether

Westmoreland has any organizational charts for WECO or Northwestern from April 30,

2001 to the present (Westmoreland had an obligation to make such an investigation

weeks ago, not now), and, if so, would produce them. As of the date of the filing of the

24

motion to compel, Westmoreland has neither produced such organizational charts nor confirmed whether they exist.

### J.      Request Nos. 26 and 27

Request Nos. 26 and 27 seek documents setting forth or reflecting Westmoreland's general document retention policies and those with respect to electronic mail and other electronic data, respectively, from 2000 to the present. Such requests are routine in litigation, and are particularly appropriate in situations where, as here, the party whose retention policies are sought has failed to undertake to determine whether certain documents requested even exist and there are holes in the documents produced or certain categories have not been produced at all (for example, Westmoreland has to this point not produced any electronic mail correspondence). Such policies are also relevant to determining whether a party should have retained, but did not, certain documents that were not produced. *See, e.g., Sykes v. Target Stores, Inc.*, 2002 U.S. Dist. LEXIS 6627, at *23 (N.D. Ill. April 15, 2002).

In its response, Westmoreland refuses to produce any such documents on the ground that such information is irrelevant and not likely to lead to the discovery of admissible evidence. During the meet-and-confer, counsel for Westmoreland stated that Westmoreland did not believe such information was relevant but that they would locate the information and produce it – but only if Entech produced its own policies. It is not appropriate, however, for Westmoreland to attempt to tie its obligation to produce these materials to a reciprocal production of materials by Entech, in part because that is not how discovery is supposed to proceed, and particularly because Westmoreland chose not to ask for such materials from Entech. Should Westmoreland serve Entech with a

document request seeking such information during the discovery period, Entech will

certainly comply with its obligations under the Federal Rules of Civil Procedure.  In the

meantime, however, Westmoreland should be ordered to produce the retention policies.

### K.   Other Concerns With Westmoreland's Document Production

In addition to the specific concerns raised with respect to the Requests for

Production discussed above, the documents actually produced by Westmoreland raise

additional questions and concerns.  Despite having had access to reams of information

about the Companies during its due diligence and despite the fact that Westmoreland

succeeded to all of the corporate and financial records of the Companies when it acquired

them, Westmoreland has produced only 12,000 pages of documents.  Given the caliber of

Westmoreland's representatives in the Transaction, including its executives as well as its

financial and legal advisors, it strains credulity to think that somehow, in a complex

commercial transaction involving the $138 million stock purchase of six coal companies,

the people at Westmoreland managed to retain only a few of their Transaction-related

documents and the financial materials for the Companies.

### II.   WESTMORELAND HAS NOT FULFILLED ITS OBLIGATION TO RESPOND TO CERTAIN OF ENTECH'S INTERROGATORIES

#### A.   Interrogatory No. 6

Interrogatory No. 6 seeks, among other things, the identity of anyone have

knowledge of facts supporting Westmoreland's contention in paragraph 103 of its

counterclaims (relating to the Pension Transfer Dispute) that Entech "improperly

excluded non-vested benefits from the transfer amount."

In its response, Westmoreland did not identify any individuals.  If Westmoreland

does not have anyone who can testify as the non-vested benefits issue, of course, it will

not be able to meet its evidentiary burden.  During the meet-and-confer, counsel for

Westmoreland stated that they did not believe that there is anyone currently at

Westmoreland who has knowledge of the information, but that it was possible that Paul

Durham (former Westmoreland in-house counsel) and David LaSeur (of Towers Perrin)

have such information but that such individuals were not identified because counsel could

not confirm that belief before Westmoreland's responses to the Interrogatories were due

(even though more than ten weeks have passed since they first became aware that Entech

was seeking such information).  Counsel agreed to confirm that belief and update the

response to Interrogatory No. 6 accordingly, but has failed to do so.  If Westmoreland

provides a sufficient response before this motion to compel is resolved, Entech will

promptly notify the Court that the matter has been resolved.

### B.    Interrogatory No. 17

Interrogatory No. 17 seeks a listing of all meetings of Westmoreland's board of

directors, and all persons present at such meeting, at which there was any discussion or

consideration of the Transaction, the Objections, the Proof of Claim, the Indemnity

Notices, the Financial Materials, the Closing Date Certificate, the Interim Financial

Statements, or the Transaction Financing Agreements.  In its response, Westmoreland

states that it will produce documents sufficient to show the date and attendees of any

meeting of the Westmoreland board "at which the Objections at issue in this proceeding

were discussed."  Information concerning the Transaction, the Proof of Claim, the

Indemnity Notices, the Financial Materials, the Interim Financial Statements, and the

Transaction Financing Agreements – not just the "Objections at issue in this proceeding"

– are discoverable because they relate either to the very transaction on which the parties'

claims are based, or the supporting materials and documents related thereto, or identified in the pleadings (including the Scheduling Order and the parties' Rule 26(a)(1) Initial Disclosures). Entech is entitled to this basic factual information concerning board meetings at which these matters were discussed.

### C.    Interrogatory No. 18

Interrogatory No. 18 seeks the identity of any person who provided any opinion, expression of views, advice, or other communication, whether written or oral, concerning the Transaction, the Objections, the Proof of Claim, the Indemnity Notices, the Financial Materials, the Closing Date Certificate, the Interim Financial Statements, or the Transaction Financing Agreements. In its response, Westmoreland states that it has received a fairness opinion from Rothschild Inc. and will produce a copy of that opinion. During the meet-and-confer, counsel for Westmoreland stated that they were not sure if anyone else rendered an opinion, expression of views, advice, or other communication (but did not believe so), and that they would confirm this (although, once again, such confirmation should have been done sometime in the preceding ten weeks since the Interrogatories were served). Counsel also indicated that even if Westmoreland received additional advice it would not identify and disclose all such advice to the extent they related to an issue that Westmoreland thinks has nothing to do with this case.

The interrogatory seeks information concerning matters discussed in the First Amended Complaint, the Second Amended Answer and Counterclaims, the Reply to Counterclaims, the Scheduling Order, and the Initial Disclosures. As noted several times above, it is improper for Westmoreland to make unilateral determinations as to what does or does not have something to do with this case, especially when its assertion that this

28

case deals with nothing more than the remaining objections is belied by its own pleadings (for example, the Pension Transfer Dispute).

### D.    Interrogatory No. 20

Interrogatory No. 20 seeks the identity of all third-persons to whom any disclosures were made by Westmoreland in which Westmoreland included, referred to, or incorporated the Financial Materials, the Closing Date Certificate, the Interim Financial Statements, or any information contained therein. In response, Westmoreland states that "it will produce all non-privileged communications with third-parties concerning the Objections at issue in this proceeding." As with its response to Interrogatory No. 18, it is inappropriate for Westmoreland to make unilateral determinations as to what does or does not have something to do with this case, particularly when its own pleadings show that the line it is now attempting to draw is indefensible. Third parties (such as financing entities) were important to Westmoreland's ability to enter into the Transaction, and Entech is entitled to know to whom Westmoreland disclosed information about the financial documents and materials that form the very basis of the claims against Entech.

$$\star \qquad \star \qquad \star$$

**CONCLUSION**

For all of the foregoing reasons, Entech respectfully requests that its Motion to Compel be granted.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Christian Douglas Wright*

Robert S. Brady (No. 2847)
John T. Dorsey (No. 2988)
Christian Douglas Wright (No. 3554)
Matthew B. McGuire (No. 4366)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6600
cwright@ycst.com

-and-

WINSTON & STRAWN LLP
C. MacNeil Mitchell
Piero A. Tozzi
200 Park Avenue
New York, NY  10166-4193
(212) 294-6700

Rolf S. Woolner
333 South Grand Avenue
Los Angeles, CA  90071-1543
(213) 615-1700

Co-counsel to the Plaintiff

DATED:  April 29, 2005

30

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2005, I caused to be electronically filed a true and correct copy of *Opening Brief in Support of Plaintif Entech LLC's Motion to Compel* with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Laurie Selber Silverstein, Esquire
> Potter Anderson & Corroon LLP
> Hercules Plaza
> 1313 North Market Street
> Wilmington, DE 19801

I further certify that on April 29, 2005, I caused a copy of the *Opening Brief in Support of Plaintif Entech LLC's Motion to Compel* to be served by hand-delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY FEDEX**

> John G. Hutchinson, Esquire
> Sidley Austin Brown & Wood LLP
> 787 Seventh Avenue
> New York, NY 10019

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Christian Douglas Wright (No. 3554)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
cwright@ycst.com

*Attorneys for Entech LLC*