# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ) <br> ) <br> TOUCH AMERICA HOLDINGS, INC., et al., ) <br> ) <br> Debtors. ) <br> ) | Chapter 11 <br><br> Bk. No. 03-11915 (KJC) <br><br> Jointly Administered |
| ENTECH LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> OFFICIAL COMMITTEE OF UNSECURED ) <br> CREDITORS, ) <br> ) <br> Plaintiff-Intervenor, ) <br> ) <br> v. ) <br> ) <br> WESTMORELAND COAL COMPANY, ) <br> a Delaware corporation, and ) <br> WESTMORELAND MINING LLC, ) <br> a Delaware limited liability company, ) <br> ) <br> Defendants. ) <br> ) | Adv. No. 04-52935 (KJC) <br><br><br><br><br><br><br> C.A. No. 04-1336-SLR |

## PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS DIRECTED TO DEFENDANTS

Pursuant to Federal Rule of Procedure 34, plaintiff Entech LLC hereby requests that defendants Westmoreland Coal Company and Westmoreland Mining LLC produce for inspection and copying the documents described below, at the offices of Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, DE 19899-0391, within 30 days of the date hereof.

## INSTRUCTIONS

1. A request for a document shall be deemed to include a request for the original and final versions of the document, all drafts, alterations, modifications, changes and amendments thereto, as well as all non-identical copies or drafts of such documents, including any copy bearing non-identical markings or notations of any kind, as well as and all transmittal sheets, cover letters, exhibits, enclosures or attachments to the document.

2. Any document described herein is to be produced as it is kept in the ordinary course of business, in its original file folder, with all labels or similar markings intact, and with the name of the Person from whose files it was produced. Documents stored electronically shall be produced in electronic format as stored and/or copied exactly onto medium such as diskettes, "Zip" disks, CD-ROM, DVD-ROM, or the like, in addition to being printed out for purposes of production.

3. Each request herein should be construed independently and not with reference to any other request for the purpose of limitation.

4. If it is not possible to produce any document called for by this Request, or if any part of this Request is objected to, the reasons for the failure to produce the documents or the objection should be stated specifically as to all grounds.

5. If a document responsive to any request is no longer in your possession, custody or control, state what disposition was made of the document and the date of such disposition, and identify all Persons having knowledge of the document's contents.

6. If a document responsive to any request is no longer in your possession, but a copy of said document has been maintained by your agent, advisor or consultant (such as, but not limited to, any of your accountants, auditors, attorneys, financial advisors, or experts), include such document in your production.

WP3:1084130.1

062207.1011

7. If any document responsive to any request has been destroyed, set forth the content of said document, the location of any copies of said document, the date of such destruction and the name of the Person who destroyed the document or ordered or authorized such destruction.

8. If you claim any form of privilege or protection or other reason, whether based on statute or otherwise, as a ground for not producing requested documents, furnish a list identifying each document for which the privilege or protection is claimed, together with the following information:

    (a) type of document(s) (*e.g.*, memorandum, letter);

    (b) date of the document(s);

    (c) length of the document(s);

    (d) author or sender of document(s);

    (e) addressee and all other Persons to whom copies of the document(s) were furnished, together with their job titles;

    (f) general subject matter of the document(s);

    (g) basis for withholding the document(s); and

    (h) the specific Request to which such document(s) is (are) responsive.

9. When one writing is responsive to more than one specific request, only one identical copy of the writing need be produced.

10. This request is continuing and requires further and supplemental production by Defendants as and whenever Defendants acquire or make additional document between the time of the initial production hereunder and the time of the trial in this action, in accordance with Federal Rule of Civil Procedure 26(e), on the dates set forth in the Scheduling Order governing this litigation. If any such additional documents or any portion thereof are withheld from production

upon a claim of privilege or for any other reason, you are requested to promptly to serve upon the undersigned counsel a written identification of each such document or portion thereof, setting forth the information described in Instruction No. 8, *supra*.

## DEFINITIONS

Notwithstanding anything else to the contrary herein, each word, term or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. For purposes of these Requests, the following definitions will apply, regardless of whether the defined word is capitalized or not:

A. "$5 Million Adjustment Agreement" means the letter agreement, dated April 25, 2001, concerning a deferral of $5 million of the purchase price for the transaction contemplated by the Stock Purchase Agreement.

B. "Adverse Consequences" has the meaning set forth in Section 12.01 of the Stock Purchase Agreement.

C. The words "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories information that might otherwise be construed to be outside its scope; the singular shall include the plural and the plural shall include the singular except as the context may otherwise dictate; the term "any" means "any and all" and the term "all" means "any and all"; the past tense shall include the present tense, and vice versa; and the word "including" means "including without limitation."

D. "Answer" means the answer set forth in the Second Amended Answer and Counterclaims filed by Defendants on January 18, 2005.

E. "Boards of Directors" means the boards of directors of Westmoreland Coal and Westmoreland Mining, jointly or separately as the context may require.

F.  "Closing Date Certificate" means the Closing Date Certificate provided by Entech to Westmoreland on June 29, 2001, as supplemented on July 1, 2001 and July 16, 2001.

G.  "Coal Companies" collectively means Basin Resources, Inc., Horizon Coal Services, Inc., North Central Energy Company, Northwestern Resources Co., and Western Energy Company (including its subsidiary Western SynCoal LLC).

H.  "Communication" means any manner or means of disclosure, transfer, exchange or conveyance of information, including, but not limited to, any conversation, discussion, letter, memorandum, facsimile transmission, note, meeting, electronic mail, or other transfer of information, whether oral or written, or by any other means and includes any document that abstracts, digests, transcribes or records any communication.

I.  "Complaint" means the First Amended Complaint in this action.

J.  "Counterclaims" means the counterclaims asserted in the Second Amended Answer and Counterclaims filed by Defendants on January 18, 2005.

K.  "Defendants" shall jointly mean Westmoreland Coal and Westmoreland Mining.

L.  "Document" shall have the broadest meaning possible under Federal Rules of Civil Procedure 26 and 34. Further, the word "document" is used in the broad sense and means written, typed, printed, recorded or graphic matter, however produced or reproduced of any kind and description, and whether an original, master, duplicate or copy, including but not limited to, papers, notes of conversations, contracts, electronic mail, computer files, agreements, drawings, telegrams, tape recordings, communications of any kind whatsoever (including inter-office and intra-office memoranda), reports, studies, working papers, corporate records, minutes of meetings (including meetings of the Boards of Directors or committees thereof), notebooks, bank deposit slips, bank checks, canceled checks, diaries, diary entries, appointment books, desk calendars, photographs,

5

transcriptions or sound recordings of any type of personal or telephone conversations or negotiations, meetings or conferences, or things similar to any of the foregoing, and include any data, information or statistics contained within any data storage modules, tapes, discs or other memory device or other information retrievable from storage systems, including but not limited to computer generated reports and print-outs. The word "document" also includes data compilations from which information can be obtained, and translated, if necessary, through detection devices in a reasonably usable form. If any document has been modified by the addition of notations or otherwise, or has been prepared in multiple copies which are not identical, each modification copy or non-identical copy is a separate "document."

M. "Entech" means Entech LLC, a Delaware limited liability company, the plaintiff in this action, and the successor of Entech, Inc.

N. "Financial Materials" means any statements of operation and any financial or accounting information, statements, balance sheets, and reports relating to the Coal Companies, which were provided, exchanged, reviewed, collected, or otherwise utilized in connection with the Transaction or the preparation of the Objections, the Proof of Claim, or the Indemnity Notices.

O. "Guiding Principles Agreement" means the agreement titled Guiding Principles for Calculation of Net Asset Value and Net Revenue Amount, dated April 25, 1001.

P. "Indemnity Notices" jointly means the Indemnity Notice of Adverse Consequences, dated October 26, 2001, submitted by Westmoreland Coal to Entech, and the Indemnity Notice of Adverse Consequences, dated October 26, 2001, submitted by Westmoreland Mining to Entech.

Q. "Initial Objections" means the objections to the Closing Date Certificate submitted by Westmoreland to Entech on July 27, 2001.

R.  "Interim Financial Statements" has the meaning set forth in Section 12.01 of the Stock Purchase Agreement.

S.  "KPMG" means KPMG LLP, and any and all of its predecessors, subsidiaries, divisions, departments and affiliates, and their respective officers, directors, agents, employees, attorneys and/or other representatives.

T.  "November 2001 Objections" means the revised objections to the Closing Date Certificate submitted by Westmoreland to Entech in November 2001.

U.  "Objections" means the objections to the Closing Date Certificate originally submitted by Westmoreland to Entech on July 27, 2001, as subsequently amended and revised (including but not limited to the September 2001 Objections and the November 2001 Objections).

V.  "Pension Plan Action" means the action filed by Defendants in the Supreme Court of the State of New York, County of New York concerning the transfer of certain assets from the Montana Power Company Pension Plan, and captioned as *Westmoreland Coal Company and Westmoreland Mining, LLC v. Entech, LLC*, Index No. 604133/2002.

W.  "Person" means any individual, natural person, firm, partnership, association, corporation, limited liability company, joint venture, or any other legal, business or governmental entity of any type whatsoever.

X.  "Proof of Claim" means the Proof of Claim filed by Defendants on December 10, 2003, in the Chapter 11 proceeding *In re Touch America Holdings, Inc., et al.*, Case No. 03-11915 (KJC), in the United States Bankruptcy Court for the District of Delaware, but excluding those portions of the Proof of Claim relating to the *McGreevey* Litigation (as that term is used in the Proof of Claim).

Y. "Relate to" or "relating to" mean concerning, regarding, referring to, discussing, supporting, constituting, comprising, containing, evidencing, setting forth, showing, disclosing, describing, explaining, summarizing, reflecting or mentioning, directly or indirectly, in whole or in part.

Z. "Reply to Counterclaims" means the Reply to the counterclaims asserted in Defendants' Second Amended Answer and Counterclaims, filed by Entech on February 7, 2005.

AA. "Requests" means this Plaintiff's First Set of Requests for Production of Documents and Things Directed to Defendants.

BB. "Section 338(h)(10) Election" has the meaning set forth in Section 8.09 of the Stock Purchase Agreement.

CC. "September 2001 Objections" means the revised objections to the Closing Date Certificate submitted by Westmoreland to Entech in September 2001.

DD. "Stock Purchase Agreement" means the Stock Purchase Agreement, dated as of September 15, 2000, by and between Westmoreland Coal and Entech, Inc.

EE. "Transaction" means the transaction contemplated by the Stock Purchase Agreement, the Guiding Principles Agreement, the $5 Million Adjustment Agreement, and any documents and agreements related thereto.

FF. "Transaction Financing Agreements" means the agreements filed as Exhibits 99.2, 99.3, 99.4, 99.5, 99.6, 99.7, 99.8, 99.9, 99.10, and 99.11 to the Form 8-K filed by Westmoreland Coal on May 15, 2001.

GG. "Westmoreland Coal" means Westmoreland Coal Company, a Delaware corporation and a defendant in this action, and any and all of its predecessors, subsidiaries, divisions,

departments and affiliates, and their respective officers, directors, agents, employees, attorneys and/or other representatives.

HH. "Westmoreland Mining" means Westmoreland Mining LLC, a Delaware limited liability company and a defendant in this action, and any and all of its predecessors, subsidiaries, divisions, departments and affiliates, and their respective officers, directors, agents, employees, attorneys and/or other representatives.

II. "You" or "your" means Defendants, jointly.

## SPECIFIC REQUESTS

1. All documents relating to each representation and warranty in the Stock Purchase Agreement that Defendants contend is false or was breached by Entech.

2. All documents relating to the Transaction, including but not limited to all documents relating to the negotiation of the Transaction and all documents relating to the due diligence performed by Defendants in connection with the Transaction (whether such due diligence was performed prior to the execution of the Stock Purchase Agreement or up through to the Closing Date).

3. All documents relating to the Objections, including but not limited to all documents relating to the preparation of the Objections and all documents relied upon or referred to in preparing the Objections.

4. All documents relating to the Proof of Claim, including but not limited to all documents relating to the preparation of the Proof of Claim and all documents relied upon or referred to in preparing the Proof of Claim.

5.  All documents relating to the Indemnity Notices, including but not limited to all documents relating to the preparation of the Indemnity Notices and all documents relied upon or referred to in preparing the Indemnity Notices.

6.  All documents relating to the Financial Materials, including but not limited to all documents relating to Defendants' evaluation of the Financial Materials, the accuracy of the Financial Materials, or the facts underlying any purported inaccuracies in the Financial Materials.

7.  All documents relating to the Closing Date Certificate, including but not limited to all documents relating to Defendants' evaluation of the Closing Date Certificate, the accuracy of the Closing Date Certificate, or the facts underlying any purported inaccuracies in the Closing Date Certificate.

8.  All documents relating to the Interim Financial Statements, including but not limited to all documents relating to Defendants' evaluation of the Interim Financial Statements, the accuracy of the Interim Financial Statements, Defendants' reliance on the Interim Financial Statements, or the facts underlying any purported inaccuracies in the Interim Financial Statements.

9.  All documents relating to any valuation of the Coal Companies, whether such valuation is directed to any of the Coal Companies separately (including any subsidiaries thereof) or to the Coal Companies as a group.

10. All documents relating to the accounting and tax treatment, methods, or procedures used with respect to the preparation or evaluation of the Financial Materials, the Closing Date Certificate, or the Interim Financial Statements.

11. All documents relating to any work performed by KPMG with respect to the Financial Materials, the Closing Date Certificate, the Interim Financial Statements, or the Transaction Financing Agreements.

12. All documents relating to the accounting and tax treatment, methods, or procedures used by Defendants with respect to the Coal Companies from April 30, 2001 to the present day, including but not limited to any management representation letters, internal workpapers related to Defendants' audited financial statements, and tax returns and related workpapers.

13. All documents relating to Defendants' disclosures to third Persons (including, but not limited to, Persons providing banking or financing advice or services to Defendants) in which Defendants have included, referred to, or incorporated, in whole or in part, the Financial Materials, the Closing Date Certificate, the Interim Financial Statements, or any information contained therein.

14. All documents relating to any requests for information, documents, or materials received by Defendants from any of the banks which are or were parties to the Transaction Financing Agreements (or any of their successors or assigns), which in any way relate to the Transaction or to the Financial Materials, the Closing Date Certificate, the Interim Financial Statements, or any information contained therein.

15. All documents relating to (a) the minutes of, including but not limited to drafts of minutes of, or (b) materials presented or provided at, or notes taken by Persons present at, any meeting of the Boards of Directors at which there was any discussion or consideration of the Transaction (including the Stock Purchase Agreement, the Guiding Principles Agreement, and the $5 Million Adjustment Agreement), the Objections, the Proof of Claim, the Indemnity Notices, the Financial Materials, the Closing Date Certificate, the Interim Financial Statements, or the Transaction Financing Agreements.

WP3:1084130.1    062207.1011

16. All documents relating to any opinion, expression of views, advice or other communication, whether written or oral, prepared or provided by or directed to any Person, including any officer, director, employee, agent or advisor (including investment bankers, financial advisors and/or accountants) of Defendants, relating to the Transaction (including the Stock Purchase Agreement, the Guiding Principles Agreement, and the $5 Million Adjustment Agreement), the Objections, the Proof of Claim, the Indemnity Notices, the Financial Materials, the Closing Date Certificate, the Interim Financial Statements, or the Transaction Financing Agreements.

17. All documents relating to any meetings or communications between Defendants and Entech, including but not limited to the November 5, 2001 meeting in Denver, Colorado, relating to any of the Transaction (including the Stock Purchase Agreement, the Guiding Principles Agreement, and the $5 Million Adjustment Agreement), the Objections, the Proof of Claim, the Indemnity Notices, the Financial Materials, the Closing Date Certificate, or the Interim Financial Statements.

18. All documents relating to the pension-related issues set forth in Defendants' Counterclaims, including but not limited to IRS Form 5310-A (and any drafts thereof), actuarial reports, any correspondence with the Northwestern Resources and Western Energy Pension Plan or with the trustee thereof or any actuary, consultant, or other advisor with respect thereto, and all documents produced by Defendants in the Pension Plan Action.

19. All documents relating to the Section 338(h)(10) Election, including but not limited to any related purchase accounting documents.

20.     All documents from the files of Thomas S. Barta, Westmoreland Coal's Controller (including but not limited to notes, reports, memoranda to file, electronic mail, phone logs, and records of communications) relating to the Transaction (including the Stock Purchase Agreement, the Guiding Principles Agreement, and the $5 Million Adjustment Agreement), the Objections, the Proof of Claim, the Indemnity Notices, the Financial Materials, the Closing Date Certificate, the Interim Financial Statements, or the Transaction Financing Agreements.

21.     All documents relating to the changes and revisions between the Initial Objections and the September 2001 Objections, including but not limited to the reasons for them.

22.     All documents relating to the changes and revisions between the September 2001 Objections and the November 2001 Objections, including but not limited to the reasons for them.

23.     All documents relating to the events described in and the claims, defenses, and allegations of any of the Complaint, the Answer, the Counterclaims, and the Reply to Counterclaims.

24.     All documents relating to the amount and computation of any damages or Adverse Consequences allegedly suffered by Defendants on account of any alleged act, omission, error, breach, or failure by Entech.

25.     All organization charts that show the personnel in Defendants' offices in Colorado Springs, Colorado, from 2000 to the present, and the personnel at Western Energy Company or Northwestern Resources Company from April 30, 2001 to the present.

26.     All documents setting forth or reflecting Defendants' document retention policies, from 2000 to the present.

27.     All documents setting forth or reflecting Defendants' retention policies concerning electronic mail and other electronic data and information, from 2000 to the present.

28. All documents upon which Defendants intend to rely at trial.

29. All documents relied upon or referred to in responding to these Requests.

30. All documents relied upon or referred to in responding to Plaintiffs' First Set of Interrogatories Directed to Defendants, served contemporaneously with this Request.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Christian Douglas Wright*
Robert S. Brady (No. 2847)
John T. Dorsey (No. 2988)
Christian Douglas Wright (No. 3554)
Edmon L. Morton (No. 3856)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6600

-and-

WINSTON & STRAWN LLP
David Neier
C. MacNeil Mitchell
Piero A. Tozzi
200 Park Avenue
New York, NY  10166-4193
(212) 294-6700

Co-counsel to the Plaintiff

DATED: February 10, 2005

14

WP3:1084130 1                                                                                                   062207 1011

## CERTIFICATE OF SERVICE

I, Christian Douglas Wright, hereby certify that copies of the foregoing *Plaintiff's First Set Of Requests For Production Of Documents And Things Directed To Defendants* were caused to be served on February 10, 2005 upon the following counsel of record in the manner indicated:

### BY HAND DELIVERY

Laurie Selber Silverstein, Esquire
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street
Wilmington, DE 19801

### BY FEDERAL EXPRESS

John G. Hutchinson, Esquire
Sidley Austin Brown & Wood LLP
787 Seventh Avenue
New York, NY 10019

Christian Douglas Wright (#3554)