# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| TOUCH AMERICA HOLDINGS, INC., et al., | Bk. No. 03-11915 (KJC) |
| Debtors. | Jointly Administered |
| ENTECH LLC, | Adv. No. 04-52935 (KJC) |
| Plaintiff, | |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS, | |
| Plaintiff-Intervenor, | |
| v. | C.A. No. 04-1336-SLR |
| WESTMORELAND COAL COMPANY, a Delaware corporation, and WESTMORELAND MINING LLC, a Delaware limited liability company, | |
| Defendants. | |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES DIRECTED TO DEFENDANTS

Pursuant to Federal Rules of Civil Procedure 26 and 33, plaintiff Entech LLC hereby propounds the following interrogatories, which shall be answered separately in writing and under oath by defendants Westmoreland Coal Company and Westmoreland Mining LLC, within 30 days of the day hereof.

## INSTRUCTIONS

1. The answer to each and every Interrogatory propounded herein should include an identification of each and every document and/or communication that supports, underlies or was used in forming the answer to the Interrogatory.

2. Whenever an Interrogatory calls for the identification of a document or documents, the document or documents to be so identified may be produced at the offices of plaintiff's undersigned counsel for inspection and copying in lieu of identification.

3. Any document required to be identified in response to these Interrogatories which defendants claims to be protected by the attorney-client, work product or other privilege shall be listed and identified with an appropriate explanation for the basis of the privilege or protection claimed.

4. These Interrogatories are continuing interrogatories, the answers to which are to be kept current.

## DEFINITIONS

Notwithstanding anything else to the contrary herein, each word, term or phrase used in these Interrogatories is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. For purposes of these Interrogatories, the following definitions will apply, regardless of whether the defined word is capitalized or not:

A. "$5 Million Adjustment Agreement" means the letter agreement, dated April 25, 2001, concerning a deferral of $5 million of the purchase price for the transaction contemplated by the Stock Purchase Agreement.

B. "Adverse Consequences" has the meaning set forth in Section 12.01 of the Stock Purchase Agreement.

C. The words "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories information that might otherwise be construed to be outside its scope; the singular shall include the plural and the plural shall include the singular except as the context may otherwise dictate; the term "any" means "any and all" and the term "all" means "any and all"; the past tense shall include the present tense, and vice versa; and the word "including" means "including without limitation."

D. "Boards of Directors" means the boards of directors of Westmoreland Coal and Westmoreland Mining, jointly or separately as the context may require.

E. "Closing Date Certificate" means the Closing Date Certificate provided by Entech to Westmoreland on June 29, 2001, as supplemented on July 1, 2001 and July 16, 2001.

F. "Coal Companies" collectively means Basin Resources, Inc., Horizon Coal Services, Inc., North Central Energy Company, Northwestern Resources Co., and Western Energy Company (including its subsidiary Western SynCoal LLC).

G. "Communication" means any manner or means of disclosure, transfer, exchange or conveyance of information, including, but not limited to, any conversation, discussion, letter, memorandum, facsimile transmission, note, meeting, electronic mail, or other transfer of information, whether oral or written, or by any other means and includes any document that abstracts, digests, transcribes or records any communication.

H. "Counterclaims" means the counterclaims asserted in the Second Amended Answer and Counterclaims filed by Defendants on January 18, 2005.

I. "Defendants" jointly means Westmoreland Coal and Westmoreland Mining.

J. "Document" shall have the broadest meaning possible under Federal Rules of Civil Procedure 26 and 34. Further, the word "document" is used in the broad sense and means written,

typed, printed, recorded or graphic matter, however produced or reproduced of any kind and description, and whether an original, master, duplicate or copy, including but not limited to, papers, notes of conversations, contracts, electronic mail, computer files, agreements, drawings, telegrams, tape recordings, communications of any kind whatsoever (including inter-office and intra-office memoranda), reports, studies, working papers, corporate records, minutes of meetings (including meetings of the Boards of Directors or committees thereof), notebooks, bank deposit slips, bank checks, canceled checks, diaries, diary entries, appointment books, desk calendars, photographs, transcriptions or sound recordings of any type of personal or telephone conversations or negotiations, meetings or conferences, or things similar to any of the foregoing, and include any data, information or statistics contained within any data storage modules, tapes, discs or other memory device or other information retrievable from storage systems, including but not limited to computer generated reports and print-outs. The word "document" also includes data compilations from which information can be obtained, and translated, if necessary, through detection devices in a reasonably usable form. If any document has been modified by the addition of notations or otherwise, or has been prepared in multiple copies which are not identical, each modification copy or non-identical copy is a separate "document."

K.    "Entech" means Entech LLC, a Delaware limited liability company, the plaintiff in this action, and the successor of Entech, Inc.

L.    "Financial Materials" means any statements of operation and any financial or accounting information, statements, balance sheets, and reports relating to the Coal Companies, which were provided, exchanged, reviewed, collected, or otherwise utilized in connection with the Transaction or the preparation of the Objections, the Proof of Claim, or the Indemnity Notices.

M.  "Guiding Principles Agreement" means the agreement titled Guiding Principles for Calculation of Net Asset Value and Net Revenue Amount, dated April 25, 1001.

N.  "Identify" means the following:

(a)  In reference to a natural Person, means to state his or her full name, his or her full title, his or her full business and resident addresses, his or her business occupation, and his or her employer;

(b)  In reference to a partnership, corporation or other form of entity or organization, means to state its full name and the full address of its main office;

(c)  In reference to a document, means to state with respect to such documents, the title and type of document, author's name, all individuals who participated or were consulted in the preparation of the document (identifying each individual, as defined above), each recipient's name, date of preparation, a summary of the contents, present custodian and location, title, and identification number of the file in which the document is kept; and

(d)  In reference to a communication, means to state with respect to such communication a description of the substance of the communication, including the date (or best approximation of the date) of the communication, the identification of each and every Person known and/or believed to have participated in or witnessed the communication, and the identification of any document which recorded, summarized or referred or replied to the communication.

O.  "Indemnity Notices" jointly means the Indemnity Notice of Adverse Consequences, dated October 26, 2001, submitted by Westmoreland Coal to Entech, and the Indemnity Notice of Adverse Consequences, dated October 26, 2001, submitted by Westmoreland Mining to Entech.

P.  "Interim Financial Statements" means the interim financial statements attached to the Stock Purchase Agreement.

Q. "Interrogatories" means this First Set of Interrogatories Directed to Defendants.

R. "November 2001 Objections" means the revised objections to the Closing Date Certificate submitted by Westmoreland to Entech in November 2001.

S. "Objections" means the objections to the Closing Date Certificate originally submitted by Westmoreland to Entech on July 27, 2001, as subsequently amended and revised (including but not limited to the September 2001 Objections and the November 2001 Objections).

T. "Pension Plan Action" means the action filed by Defendants in the Supreme Court of the State of New York, County of New York concerning the transfer of certain assets from the Montana Power Company Pension Plan, and captioned as *Westmoreland Coal Company and Westmoreland Mining, LLC v. Entech, LLC*, Index No. 604133/2002.

U. "Person" means any individual, natural person, firm, partnership, association, corporation, limited liability company, joint venture, or any other legal, business or governmental entity of any type whatsoever.

V. "Proof of Claim" means the Proof of Claim filed by Defendants on December 10, 2003, in the Chapter 11 proceeding *In re Touch America Holdings, Inc., et al.*, Case No. 03-11915 (KJC), in the United States Bankruptcy Court for the District of Delaware, but excluding those portions of the Proof of Claim relating to the *McGreevey* Litigation (as that term is used in the Proof of Claim).

W. "Relate to" or "relating to" mean concerning, regarding, referring to, discussing, supporting, constituting, comprising, containing, evidencing, setting forth, showing, disclosing, describing, explaining, summarizing, reflecting or mentioning, directly or indirectly, in whole or in part.

WP3:1084129.1

062207.1011

X. "Requests" means this Plaintiff's First Set of Requests for Production of Documents and Things Directed to Defendants.

Y. "September 2001 Objections" means the revised objections to the Closing Date Certificate submitted by Westmoreland to Entech in September 2001.

Z. "State the basis" means:

(a) State with specificity all of the underlying facts (rather than ultimate facts or conclusions of fact or law) upon which the allegation is based;

(b) State all sources of Defendants' information and belief as to such facts;

(c) Identify each Person having personal knowledge of such facts;

(d) Identify each document evidencing such facts; and

(e) State the legal basis upon which the assertion is based.

AA. "Stock Purchase Agreement" means the Stock Purchase Agreement, dated as of September 15, 2000, by and between Westmoreland Coal and Entech, Inc.

BB. "Transaction" means the transaction contemplated by the Stock Purchase Agreement, the Guiding Principles Agreement, the $5 Million Adjustment Agreement, and any documents and agreements related thereto.

CC. "Transaction Financing Agreements" means the agreements filed as Exhibits 99.2, 99.3, 99.4, 99.5, 99.6, 99.7, 99.8, 99.9, 99.10, and 99.11 to the Form 8-K filed by Westmoreland Coal on May 15, 2001.

DD. "Westmoreland Coal" means Westmoreland Coal Company, a Delaware corporation and a defendant in this action, and any and all of its predecessors, subsidiaries, divisions, departments and affiliates, and their respective officers, directors, agents, employees, attorneys and/or other representatives.

EE. "Westmoreland Mining" means Westmoreland Mining LLC, a Delaware limited liability company and a defendant in this action, and any and all of its predecessors, subsidiaries, divisions, departments and affiliates, and their respective officers, directors, agents, employees, attorneys and/or other representatives.

FF. "You" or "your" means Defendants, jointly.

## INTERROGATORIES

1. Identify each Person interviewed by or on Defendants' behalf and for each such Person state the date of the interview, the identity of each Person who has a summary, including, but not limited to, a summary (whether written, audio, video or otherwise) of the interview, the identity of the Person(s) conducting the interview, whether the Person(s) conducting the interview took notes, and present whereabouts of such notes.

2. Identify all Persons from whom statements have been procured in regard to the facts alleged in the pleadings and give the date of each statement, the identity of the Person(s) taking such statement, whether such statement was written or recorded, and the identity of Persons who presently have a copy of such statement.

3. With respect to each representation and warranty in the Stock Purchase Agreement that Defendants contend was false or was breached by Entech, identify each such representation and warranty, how it is false or was allegedly breached by Entech, all Persons with knowledge of how it is false or was allegedly breached, and all documents and communications which relate to how it is false or was allegedly breached.

4. Identify all alleged misstatements of asset values of the Coal Companies as alleged in Paragraph 94 of the Counterclaims, and for each such alleged misstatement state the basis for your

8

belief that it is a misstatement, and identify all Persons with knowledge of facts relating to the alleged misstatement and all documents and communications relating to the alleged misstatement.

5. Identify all facts that support your allegation that "the value of the accrued benefits on a termination basis must include an increase due to the Load Factor" as set forth in Paragraph 98 of the Counterclaims, and for each such fact identify all Persons with knowledge of that fact and all documents and communications relating to that fact.

6. Identify all facts that support your contention that Entech "improperly excluded non-vested benefits from the transfer amount" as set forth in Paragraph 103 of the Counterclaims, and for each such fact identify all Persons with knowledge of that fact and all documents and communications relating to that fact.

7. Identify the amount and computation of any damages or Adverse Consequences allegedly suffered by Defendants on account of any alleged act, omission, error, breach, or failure by Entech, and for each category of damages or Adverse Consequences identify all Persons with knowledge of the amount and computation of any such damages or Adverse Consequences, and all documents and communications relating to such damages or Adverse Consequences and the computation thereof.

8. Identify each financial statement that Defendants contend was not prepared in accordance with GAAP, or which does not fairly present in all material respects the consolidated financial condition and statement of operations of the Coal Companies on the dates indicated, and for each such financial statement identify all Persons with knowledge of the facts supporting your allegations and all documents and communications relating to those allegations.

9. Identify all Persons involved in the negotiation of the Transaction and state the nature of their involvement.

10. Identify all Persons involved in any due diligence in connection with the Transaction on your behalf (whether such due diligence occurred prior to the execution of the Stock Purchase Agreement or up through to the Closing Date) and state the nature of their involvement.

11. Identify all Persons who prepared the Objections or provided information in preparing the Objections, and for each such Person state what information and/or documents they provided and/or reviewed in preparing the Objections.

12. Identify all Persons who prepared the Proof of Claim or provided information in preparing the Proof of Claim, and for each such Person state what information and/or documents they provided and/or reviewed in preparing the Proof of Claim.

13. Identify all Persons who prepared the Indemnity Notices or provided information in preparing the Indemnity Notices, and for each such Person state what information and/or documents they provided and/or reviewed in preparing the Indemnity Notices.

14. Identify all alleged inaccuracies in the Closing Date Certificate, and for each alleged inaccuracy identify all Persons with knowledge of that alleged inaccuracy and all documents and communications relating to that alleged inaccuracy.

15. Identify all alleged inaccuracies in the Interim Financial Statements, and for each such alleged inaccuracy identify all Persons with knowledge of the alleged inaccuracy and all documents and communications relating to the alleged inaccuracy.

16. Identify all Persons with any knowledge of, and all documents and communications which relate to, the pension-related issues set forth in the Counterclaims.

17. Identify any meeting of the Boards of Directors, and all Persons present (whether in Person, by telephone or any other means) at such meeting, at which there was any discussion or consideration of the Transaction (including the Stock Purchase Agreement, the Guiding Principles

Agreement, and the $5 Million Adjustment Agreement), the Objections, the Proof of Claim, the Indemnity Notices, the Financial Materials, the Closing Date Certificate, the Interim Financial Statements, or the Transaction Financing Agreements.

18. Identify any Person, including any officer, director, employee, agent or advisor (including investment bankers, financial advisors and/or accountants), who provided any opinion, expression of views, advice or other communication, whether written or oral, concerning the Transaction (including the Stock Purchase Agreement, the Guiding Principles Agreement, and the $5 Million Adjustment Agreement), the Objections, the Proof of Claim, the Indemnity Notices, the Financial Materials, the Closing Date Certificate, the Interim Financial Statements, or the Transaction Financing Agreements.

19. Identify all Persons retained by Defendants (including investment bankers, financial advisors and/or accountants) in connection with providing any advice or counsel relating to the Transaction (including the Stock Purchase Agreement, the Guiding Principles Agreement, and the $5 Million Adjustment Agreement), the Objections, the Proof of Claim, the Indemnity Notices, the Financial Materials, the Closing Date Certificate, the Interim Financial Statements, or the Transaction Financing Agreements, and for each such Person identified state the nature of their retention and any advice or counsel provided.

20. Identify all third-Persons to whom any disclosures were made by Defendants (including, but not limited to, Persons providing banking or financing advice or services to Defendants) in which Defendants have included, referred to, or incorporated, in whole or in part, the Financial Materials, the Closing Date Certificate, the Interim Financial Statements, or any information contained therein.

21. Identify all Persons who provided any information in connection with your preparation of your responses to these Interrogatories and for each such Person state the nature of the information provided.

22. Identify all documents reviewed by you in preparation of your responses to these Interrogatories.

                        YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Christian Douglas Wright*

Robert S. Brady (No. 2847)
John T. Dorsey (No. 2988)
Christian Douglas Wright (No. 3554)
Edmon L. Morton (No. 3856)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600

-and-

WINSTON & STRAWN LLP
David Neier
C. MacNeil Mitchell
Piero A. Tozzi
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700

Co-counsel to the Plaintiff

DATED: February 10, 2005

12

WP3:1084129.1                                                       062207.1011

## CERTIFICATE OF SERVICE

I, Christian Douglas Wright, hereby certify that copies of the foregoing *Plaintiff's First Set Of Interrogatories Directed To Defendants* were caused to be served on February 10, 2005 upon the following counsel of record in the manner indicated:

### BY HAND DELIVERY

Laurie Selber Silverstein, Esquire
Potter Anderson & Corroon LLP
Hercules Plaza
1313 North Market Street
Wilmington, DE 19801

### BY FEDERAL EXPRESS

John G. Hutchinson, Esquire
Sidley Austin Brown & Wood LLP
787 Seventh Avenue
New York, NY 10019

*Christian Douglas Wright*
Christian Douglas Wright (#3554)