# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                        :

In re                       :    Chapter 11
                       :    Case No. 03-11915 (KJC)

TOUCH AMERICA HOLDINGS, INC., et al.,   :
                       :    Jointly Administered

           Debtors.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ENTECH LLC,              :
                       :

          Plaintiff,     :    Adversary No.:  04-52935(KJC)
                       :

      -- vs. --      :
                       :    C.A. 04-1336-SLR

WESTMORELAND COAL COMPANY, a   :
Delaware Corporation, and        :
WESTMORELAND MINING LLC, a Delaware   :
Limited Liability Company,      :
                       :

          Defendants.    :
                       :
                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## RESPONSES AND OBJECTIONS OF DEFENDANTS WESTMORELAND COAL COMPANY AND WESTMORELAND MINING LLC TO PLAINTIFF'S FIRST SET OF INTERROGATORIES DIRECTED TO DEFENDANTS

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Rule 26.1 of the Local Rules of Civil Practice and Procedure of the United States District Court of the District of Delaware (the "Local Rules"), Westmoreland Coal Company and Westmoreland Mining, LLC (collectively, "Westmoreland") through their attorneys, respond and object to the Plaintiff's First Set of Interrogatories Directed to Defendants (the "Interrogatories") of plaintiff, Entech LLC ("Entech") as follows:

## GENERAL OBJECTIONS

1.    Westmoreland objects to the Interrogatories to the extent that they seek the production of documents or information subject to the attorney client privilege, the work product doctrine or any other applicable privilege or immunity from disclosure.

2.    Westmoreland objects to the Interrogatories to the extent that they purport to require Westmoreland to disclose confidential information in advance of the entry by the Court of a valid protective order to preserve the confidentiality of the confidential and proprietary documents sought by the Interrogatories.

3.    The objection, failure to object or an agreement to produce responsive documents or information does not constitute a representation by Westmoreland that any such responsive documents or information exist or are within its possession, custody or control.

4.    Westmoreland objects to the Interrogatories and to each and every specific interrogatory set forth therein to the extent that they imply the existence of facts or circumstances that do not or did not exist, and to the extent that it states or assumes legal conclusions.  In responding to the Interrogatories, Westmoreland does not admit the factual or legal premise underlying any specific request contained therein.

5.    Westmoreland objects to Instruction N of the Interrogatories to the extent that (i) it purports to require Westmoreland to identify the natural Persons by stating their "full business and resident addresses" and "business occupation" and "employer", and (ii) it purports to require Westmoreland to identify documents by stating "all individuals who participated or were consulted in the preparation of the document" and "a summary of the contents, present custodian and location, title and identification number of the file in which the document is kept," on the grounds that its application to the Interrogatories causes them to be overly broad, unduly

burdensome and to seek information that is neither relevant to the claims and defenses of the parties to this action nor reasonably calculated to lead to the discovery of admissible evidence. In responding to the Interrogatories, Westmoreland will identify natural persons by their full names, present job titles and present business addresses, if known, or last known job titles and home addresses, and Westmoreland will produce non-privileged documents that it is asked to identify and/or summarize, provided such documents are not subject to an outstanding objection.

6.    Westmoreland objects to Definition R of the Interrogatories on the grounds that the parties have agreed in a so-ordered stipulation that certain of the objections to the Closing Date Certificate submitted by Westmoreland to Entech on July 27, 2001 and subsequently revised in September and November 2001, would be resolved exclusively in an independent accounting proceeding and that those objections already have been so resolved and therefore the application of Definition R to the Interrogatories causes them to be overly broad and unduly burdensome and to seek information that is neither relevant to the claims and defenses of the parties to this action nor reasonably calculated to lead to the discovery of admissible evidence.

7.    Westmoreland objects to Definition S of the Interrogatories on the grounds that the parties have agreed in a so-ordered stipulation that certain of the objections to the Closing Date Certificate submitted by Westmoreland to Entech on July 27, 2001 and subsequently revised in September and November 2001, would be resolved exclusively in an independent accounting proceeding and that those objections already have been so resolved and therefore the application of Definition S to the Interrogatories causes them to be overly broad and unduly burdensome and to seek information that is neither relevant to the claims and defenses of the parties to this action nor reasonably calculated to lead to the discovery of admissible evidence.

8.    Westmoreland objects to Definition Y of the Interrogatories on the grounds that the parties have agreed in a so-ordered stipulation that certain of the objections to the Closing Date Certificate submitted by Westmoreland to Entech on July 27, 2001 and subsequently revised in September and November 2001, would be resolved exclusively in an independent accounting proceeding and that those objections already have been so resolved and therefore the application of Definition Y to the Interrogatories causes them to be overly broad and unduly burdensome and to seek information that is neither relevant to the claims and defenses of the parties to this action nor reasonably calculated to lead to the discovery of admissible evidence.

9.    In responding to the Interrogatories, Westmoreland does not in any way waive or intend to waive, but rather intends to preserve and is preserving:

a.    all objections as to competence, relevance, materiality, admissibility in evidence or other use of the Interrogatories or any portions thereof or subject matter thereof, or responses or objections by Westmoreland thereto, or any documents or information produced pursuant thereto, including but not limited to, motions or the trial of this action;

b.    all objections as to vagueness, ambiguity and undue burden;

c.    all rights to object on any ground to the use of any of said documents, information, requests, responses, or objections, or the subject matter thereof, in these or any other subsequent proceedings;

d.    all rights to object on any ground to any request for further production or responses to these or any other requests for documents or information, or any other discovery requests in, or relating to, this action; and

e.    all rights to move for a protective order.

10.    Westmoreland's responses to the Interrogatories are based on the best information presently available to Westmoreland. Westmoreland reserves the right to amend or supplement its responses if it obtains other or additional information.

## SPECIFIC RESPONSES AND OBJECTIONS

**Interrogatory No. 1:**  Identify each Person interviewed by or on Defendants' behalf and for each such Person state the date of the interview, the identity of each Person who has a summary, including, but not limited to, a summary (whether written, audio, video or otherwise) of the interview, the identity of the Person(s) conducting the interview, whether the Person(s) conducting the interview took notes, and present whereabouts of such notes.

**Response:**    Westmoreland objects to Interrogatory No. 1 (i) to the extent that it seeks information concerning each Person interviewed "on Defendants' behalf" on the grounds that it is vague and ambiguous and fails to describe the information sought with the required degree of specificity; (ii) to the extent it seeks information concerning internal discussions on the grounds that it is overly broad and unduly burdensome; (iii) to the extent that it seeks information concerning privileged interviews conducted by outside counsel in connection with, or following, the commencement of litigation between the parties on the grounds that such information is protected by the work product doctrine; and (iv) to the extent that it seeks information concerning any Objections that are not at issue in this proceeding on the grounds that the parties have stipulated and agreed that certain of the Objections would be resolved in a separate independent accountant proceeding, such Objections were so resolved and therefore Interrogatory No. 1 is overly broad, unduly burdensome and seeks information that is neither relevant to the claims and defenses of the parties to this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections and the General Objections, in response to Interrogatory No. 1 Westmoreland identifies the following persons from whom non-privileged statements relevant to the claims and defenses of the parties were

procured by Thomas S. Barta, Controller, Westmoreland Coal Company, 2 N. Cascade Avenue, 14th Floor, Colorado Springs, CO 80903,  and states that each such interview took place between April 2001 and July 2001:

| Name | Job Title and/or Business Address | Home Address |
|------|-----------------------------------|--------------|
| Shaun Flynn | Accounting Supervisor<br>Western Energy Co.<br>P.O. Box 99<br>Colstrip, MT 59323 | |
| Mark Murchison | Former Accounting Supervisor<br>Texas Westmoreland Coal Co. | 3500 Carter Creek Parkway<br>Bryan, TX 77802 |
| Leo Doran | Business Manager<br>Western Energy Co.<br>P.O. Box 99<br>Colstrip, MT 59323 | |
| Floyd Walters | Former Director, Administration<br>Texas Westmoreland Coal Co. | 6661 Stanford Ranch Road<br>Suite F-112<br>Rocklin, CA 95677 |
| Linda Nguyen | Controller<br>Westmoreland Mining, LLC<br>P.O. Box 7137<br>490 North 31st Street, Suite 307<br>Billings, MT 59103 | |
| Amy Barnes | Business Manager<br>Texas Westmoreland Coal Co.<br>P.O. Box 915<br>12420 FM North<br>Jewett, TX 75846 | |
| Joel Trouart | Vice President – Engineering<br>Texas Westmoreland Coal Co.<br>P.O. Box 915<br>12420 FM 39 North<br>Jewett, TX 75846 | |
| Gayle Reising | Senior Manager – Tax<br>KPMG LLP<br>707 17th Street<br>Denver, CO 80202 | |
| David LaSueur | Principal<br>Towers Perrin<br>Park Central – Tower 1<br>1515 Arapahoe Street, Suite 1600<br>Denver, CO 80202 | |

| Name | Job Title and/or Business Address | Home Address |
|------|-----------------------------------|--------------|
| Eric Sock | Consultant<br>Towers Perrin<br>Park Central – Tower 1<br>1515 Arapahoe Street, Suite 1600<br>Denver, CO 80202 | |
| Jean Moore | Principal<br>Towers Perrin<br>Park Central – Tower 1<br>1515 Arapahoe Street, Suite 1600<br>Denver, CO 80202 | |

Westmoreland states that it will produce any non-privileged notes taken during, or summaries of, the interviews with the individuals listed above that are relevant to the claims and defenses of the parties to this action.

**Interrogatory No. 2:** Identify all Persons from whom statements have been procured in regard to the facts alleged in the pleadings and give the date of each statement, the identify of Person(s) taking such statement, whether such statement was written or recorded, the identity of Persons who presently have a copy of such statement.

**Response:**

Westmoreland objects to Interrogatory No. 2 (i) to the extent that it seeks information concerning the "facts alleged in the pleadings" on the grounds that it is overly broad and unduly burdensome and seeks information that is neither relevant to the claims and defenses of the parties to this action nor likely to lead to the discovery of admissible evidence, and (ii) to the extent that it seeks information concerning privileged statements procured by outside counsel in connection with, or following, the commencement of litigation between the parties on the grounds that such information is protected by the work product doctrine. Subject to the General Objections, in response to Interrogatory No. 2 Westmoreland identifies the following individuals from whom non-privileged statements concerning facts relevant to the claims and defenses of the parties were procured by Thomas S. Barta during the period April 2001 to July 2001:

| Name | Job Title and/or Business Address | Home Address |
|---|---|---|
| Shaun Flynn | Accounting Supervisor<br>Western Energy Co.<br>P.O. Box 99<br>Colstrip, MT 59323 | |
| Mark Murchison | Former Accounting Supervisor<br>Texas Westmoreland Coal Co. | 3500 Carter Creek Parkway<br>Bryan, TX 77802 |
| Leo Doran | Business Manager<br>Western Energy Co.<br>P.O. Box 99<br>Colstrip, MT 59323 | |
| Floyd Walters | Former Director, Administration<br>Texas Westmoreland Coal Co. | 6661 Stanford Ranch Road<br>Suite F-112<br>Rocklin, CA 95677 |
| Linda Nguyen | Controller<br>Westmoreland Mining, LLC<br>P.O. Box 7137<br>490 North 31st Street, Suite 307<br>Billings, MT 59103 | |
| Amy Barnes | Business Manager<br>Texas Westmoreland Coal Co.<br>P.O. Box 915<br>12420 FM North<br>Jewett, TX 75846 | |
| Joel Trouart | Vice President – Engineering<br>Texas Westmoreland Coal Co.<br>P.O. Box 915<br>12420 FM 39 North<br>Jewett, TX 75846 | |
| Gayle Reising | Senior Manager – Tax<br>KPMG LLP<br>707 17th Street<br>Denver, CO 80202 | |
| David LaSueur | Principal<br>Towers Perrin<br>Park Central – Tower 1<br>1515 Arapahoe Street, Suite 1600<br>Denver, CO 80202 | |
| Eric Sock | Consultant<br>Towers Perrin<br>Park Central – Tower 1<br>1515 Arapahoe Street, Suite 1600<br>Denver, CO 80202 | |

| Name | Job Title and/or Business Address | Home Address |
|------|-----------------------------------|--------------|
| Jean Moore | Principal<br>Towers Perrin<br>Park Central – Tower 1<br>1515 Arapahoe Street, Suite 1600<br>Denver, CO 80202 | |

Westmoreland states that it will produce any non-privileged notes taken during, or summaries of, the interviews with the individuals listed above that are relevant to the claims and defenses of the parties to this action.

**Interrogatory No. 3:** With respect to each representation and warranty in the Stock Purchase Agreement that Defendants contend was false or was breached by Entech, identify each such representation and warranty, how it is false or was allegedly breached by Entech, all Persons with knowledge of how it is false or was allegedly breached, and all documents and communications which relate to how it is false or was allegedly breached.

**Response:**

Subject to the General Objections, in response to Interrogatory No. 3 Westmoreland states that Entech breached the representation and warranty that the Interim Financial Statements were prepared in accordance with GAAP and fairly present in all material respects the consolidated financial condition and statement of operations of the Companies and their consolidated subsidiaries contained in Section 2.08 of the SPA. The various ways in which this representation and warranty was breached by Entech are described below.

At the time of the Transaction, a quantity of unused slurry inventory which proved to be unsaleable had been on hand at Western Energy Company since 1997. In accordance with GAAP, this inventory should have been written off as unsaleable. The unsaleable slurry inventory is treated as a $163,106 asset in the Interim Financial Statements. Westmoreland identifies Thomas S. Barta and Sean Flynn as individuals with knowledge of the falsity of the representation and warranty contained in Section 2.08 of the SPA as it pertains to

the accounting treatment of such slurry inventory. Had Entech's accounting been correct with respect to this inventory, Westmoreland would have had $163,106 more in cash than actually proved to be the case.

The Interim Financial Statements improperly capitalize $1,864,012.00 worth of exploration costs incurred during mine development and reserve delineation phases at Western Energy Company before the existence of a commercially mineable coal deposit had been determined. Under GAAP, such costs should have been expensed as they were incurred because the recoverability of capitalized costs under GAAP requires the existence of a commercially mineable coal deposit. Westmoreland identifies Thomas S. Barta and Sean Flynn as individuals with knowledge of the falsity of the representation and warranty contained in Section 2.08 of the SPA as it pertains to the accounting treatment of such exploration costs.

The Interim Financial Statements improperly capitalize $2,428,175.00 worth of exploration costs incurred during mine development and reserve delineation phases at Northwestern Resources Co. before the existence of a commercially mineable coal deposit had been determined. Under GAAP, such costs should have been expensed as they were incurred because the recoverability of capitalized costs under GAAP requires the existence of a commercially mineable coal deposit. Westmoreland identifies Thomas S. Barta and Amy Barnes as individuals with knowledge of the falsity of the representation and warranty contained in Section 2.08 of the SPA as it pertains to the accounting treatment of such exploration costs.

The Interim Financial Statements improperly capitalize $59,899 worth of costs incurred prior to 1995 relating to the Dew Property at Northwestern Resources Co. The Dew Property has never been included in Northwestern Resources Co.'s mine plan, nor is it permitted for mine development. Under GAAP, such costs should have been expensed as they were

incurred because the capitalization of such costs under GAAP requires that they be recoverable through future operations. Westmoreland identifies Thomas S. Barta, Amy Barnes, and Joel Trouart as individuals with knowledge of the falsity of the representation and warranty contained in Section 2.08 of the SPA as it pertains to the accounting treatment of costs relating to the Dew Property that were incurred before 1995.

The Interim Financial Statements improperly treat $121,828 in advanced royalties relating to the Dew Property at Northwestern Resources Co. as assets. The Dew Property has never been included in Northwestern Resources Co.'s mine plan, nor is it permitted for mine development. Under GAAP, such advanced royalties should have been expensed as they were incurred because the capitalization of such advanced royalties under GAAP requires that they be recoverable through future operations. Westmoreland identifies Thomas S. Barta, Amy Barnes, and Joel Trouart as individuals with knowledge of the falsity of the representation and warranty contained in Section 2.08 of the SPA as it pertains to the accounting treatment of advance royalties relating to the Dew Property that were incurred before 1995.

The Interim Financial Statements improperly defer $1,538,290.00 worth of Area C overburden removal costs for the Rosebud mine owned and operated by Western Energy Company. Since July 1, 2000, such overburden costs have been reimbursed as incurred and immediately accounted for as revenue. Accordingly, under the matching principle integral to GAAP, the Area C overburden removal costs should have been expensed as incurred after July 1, 2000. Westmoreland identifies Thomas S. Barta, Leo Doran and Sean Flynn as individuals with knowledge of the falsity of the representation and warranty contained in Section 2.08 of the SPA as it pertains to the accounting treatment of Area C overburden removal costs for the Rosebud mine.

The Interim Financial Statements include an overstated receivable for base reclamation costs incurred at the Jewett mine at Northwestern Resources Co. Pursuant to a supply agreement between Northwestern Resources Co. and Reliant Energy Inc., Reliant Energy Inc. reimbursed Northwestern Resources Co. for base reclamation costs incurred before July 1, 2002. However, pursuant to an August 2, 1999 amendment to the supply agreement, the parties agreed that, following July 1, 2002, Reliant Energy Inc. would no longer be required to reimburse Northwestern Resources Co. for such costs. Accordingly, under GAAP, the base reclamation costs incurred after July 1, 2002, should not have been treated as a receivable in the Interim Financial Statements. The amount of base reclamation costs that was improperly treated as a receivable in the Interim Financial Statements is $1,667,846.00. Westmoreland identifies Thomas S. Barta, Amy Barnes and Joel Trouart as individuals with knowledge of the falsity of the representation and warranty contained in Section 2.08 of the SPA as it pertains to the accounting treatment of base reclamation costs incurred after July 1, 2002 at the Jewett mine.

The Interim Financial Statements include an overstated receivable for final reclamation costs that would be incurred at the Jewett mine at Northwestern Resources Co. after July 1, 2002. Pursuant to a supply agreement between Northwestern Resources Co. and Reliant Energy Inc., Reliant Energy Inc. reimbursed Northwestern Resources Co. for final reclamation costs incurred before July 1, 2002. However, pursuant to an August 2, 1999 amendment to the supply agreement, the parties agreed that, Reliant Energy Inc. would no longer be required to reimburse Northwestern Resources company for final reclamation costs during the period July 1, 2002 through August 2015. Accordingly, under GAAP, any final reclamation costs incurred after July 1, 2002 but before August 2015, should not have been treated as a receivable in the Interim Financial Statements. The amount of final reclamation costs that was improperly treated

as a receivable in the Interim Financial Statements is $12,499,409.00. Westmoreland identifies Thomas S. Barta, Amy Barnes and Joel Trouart as individuals with knowledge of the falsity of the representation and warranty contained in Section 2.08 of the SPA as it pertains to the accounting treatment of final reclamation costs incurred after July 1, 2002 and before August 2015 at the Jewett mine.

The Interim Financial Statements include a misstated liability for final reclamation activities at the Jewett mine at Northwestern Resources Co. Pursuant to the August 2, 1999 amendment to the supply agreement between Reliant Energy Inc. and Northwestern Resources Co., certain final reclamation activities are the responsibility of Northwestern Resources Co. The liability recorded in the Interim Financial Statements was misstated by $3,964,315.00. Westmoreland identifies Thomas S. Barta, Amy Barnes and Joel Trouart as individuals with knowledge of the falsity of the representation and warranty contained in Section 2.08 of the SPA as it pertains to the accounting treatment of costs for final reclamation activities at the Jewett mine.

In violation of GAAP, the Interim Financial Statements include the following deferred tax assets, but do not include, as they must, any corresponding liabilities or allowances:

| Company | Description of Deferred Tax Asset | Amount |
| --- | --- | --- |
| Western Energy Company | A/P Entech-Pensions | $477,922.00 |
| Western Energy Company | Long-term debt-Entech ESOP | $181,091.00 |
| Western Energy Company | Deferred MPC/ENT Foundation | $ 11,373.00 |
| Northwestern Resources Co. | Long-term debt-Incentive Stock | $875,428.00 |
| Northwestern Resources Co. | Texas Franchise Tax Deferred | $110,138.00 |
| Basin | State Corporate License Tax | $104,183.00 |
| Syncoal | State Corporate License Tax | $173,060.00 |
| North Central Energy Co. | State Corporate License Tax | $ 42,155.00 |
| Horizon | State Corporate License Tax | $288,968.00 |

Accordingly, such deferred taxes should not have been included as assets in the Interim Financial Statements. Westmoreland identifies Thomas S. Barta and Gayle Reising as individuals with knowledge of the falsity of the representation and warranty contained in Section 2.08 of the SPA as it pertains to the treatment of the above-listed deferred tax assets.

The Interim Financial Statements contain a number of entries about which Westmoreland has sought and been denied information necessary to evaluate whether such entries comply with GAAP. Accordingly, Westmoreland states that it is not presently able to state with certainty that such entries do not comply with GAAP in violation of the representation and warranty contained in Section 2.08 of the SPA, only that it has been denied access necessary to make this evaluation. With respect to the entries listed in Chart A below, Westmoreland has received inadequate explanations as to the unexpected variances from the normal timing differences for assets and liabilities of this type.

**Chart A:**

| Company | Description of Entry | Amount |
|---|---|---|
| Basin Resources, Inc. | Vacation Liability | $ 60,907.00 |
| Western Energy Company | Deferred reclamation | $978,607.00 |
| Western Energy Company | Deferred post retirement and post employment benefits | $204,301.00 |
| Northwestern Resources Co. | Other deferred credits | $800,808.00 |
| Northwestern Resources Co. | Deferred revenue | $184,443.00 |
| Basin Resources, Inc. | Accrued maintenance and post employment benefits | $ 55,843.00 |
| North Central Energy Co. | Provision for operating losses | $ 68,535.00 |
| North Central Energy Co. | Deferred revenue | $405,878.00 |
| Horizon Coal Services, Inc. | Other current liabilities, LT debt-incentive stock, deferred post employment benefits and deferred pension | $ 99,084.00 |

Second, with respect to the entries listed in Chart B below, Westmoreland has received inadequate explanations as to the substantiation for the income tax treatment of such entries:

**Chart B:**

| Company | Description of Deferred Tax Asset | Amount |
|---|---|---|
| Western Energy Company | Other taxes payable | $3,856,319.00 |
| Northwestern Resources Co. | Advance royalties | $4,458,991.00 |
| Basin Resources, Inc. | Plant | $2,416,619.00 |
| Horizon Coal Services, Inc. | Plant | $ 215,621.00 |

Westmoreland identifies Thomas S. Barta and Gayle Reising as individuals with information concerning the need for additional information to determine if the above-listed entries comply with GAAP.

The Interim Financial Statements understate Western Energy Company's post retirement medical benefits under FAS 106 by approximately $175,000.00. The methods used by Entech to compute this obligation did not conform to proper accounting standards or accepted actuarial methodologies. To arrive at a claims cost assumption, Entech used a blended population of active and retiree claims where only retiree claims should have been used. If proper methodology had been used, a more accurate and higher cost assumption would have resulted. Westmoreland identifies Jean Moore and Eric Sock as individuals with knowledge of the falsity of the representation and warranty contained in Section 2.08 of the SPA as it pertains to the treatment of Western Energy's Post-Medical Retirement Benefits.

Westmoreland states that it will produce non-privileged documents that set forth the basis for Westmoreland's contention that the accounting discussed above was not in compliance with GAAP and therefore did not fairly present in all material respects the consolidated financial condition and statement of operations of the Companies and their consolidated subsidiaries in further response to Interrogatory No. 3.

**Interrogatory No. 4:** Identify all alleged misstatements of asset values of the Coal Companies as alleged in Paragraph 94 of the Counterclaims, and for each such alleged misstatement state the basis for your belief that it is a misstatement, and identify all Persons with knowledge of facts

relating to the alleged misstatement and all documents and communications relating to the alleged misstatement.

**Response:**

   Subject to the General Objections, in response to Interrogatory No. 4

Westmoreland states that each of the accounting errors identified in Westmoreland's response to

Interrogatory No. 3 above resulted in the misstatement of asset values of the Coal Companies

and incorporates by reference that response herein.

**Interrogatory No. 5:**  Identify all facts that support your allegation that "the value of the accrued benefits on a termination basis must include an increase due to the Load Factor" as set forth in Paragraph 98 of the Counterclaims, and for each such fact identify all Persons with knowledge of that fact and all documents and communications relating to that fact.

**Response:**

   Subject to the General Objections, in response to Interrogatory No. 5

Westmoreland states that, pursuant to Section 5.04(g) of the SPA, the portion of assets in the

MPC Pension Plan that related to the Coal Companies was to be transferred to the Westmoreland

Pension Plan.  The parties agreed in the SPA that the amount transferred would equal the

aggregate present value of the relevant accrued benefits determined "on a termination basis"

within the meaning of Section 1.414(l)-1(b)(5) of the Treasury Regulations.  Section 1.414(l)-

1(b)(5) provides that "benefits on a termination basis means the benefits that would be payable

from the plan in accordance with relevant regulations of the Pension Benefit Guaranty

Corporation ("PBGC") "if the plan terminated."  Section 4044.52 of the PBGC Regulations

states that the amount of a plan's liabilities on termination must be increased, or loaded, by an

expense factor.  Thus, the SPA's requirement that the value of accrued benefits be calculated on

a termination basis clearly required the inclusion of the PBGC expense factor in the calculation.

Further answering, Westmoreland identifies the following individuals with

knowledge as to the language quoted from the allegation of paragraph 94 of the Counterclaims

above:

| Name | Job Title and/or Business Address | Home Address |
|------|-----------------------------------|--------------|
| Paul W. Durham | Former Assistant General Counsel Westmoreland Coal Company | 112 East First, #2 Tucson, AZ 85708 |
| David LaSueur | Principal Towers Perrin Park Central – Tower 1 1515 Arapahoe Street, Suite 1600 Denver, CO 80202 | |
| Catherine Cole | Principal Towers Perrin Park Central – Tower 1 1515 Arapahoe Street, Suite 1600 Denver, CO 80202 | |

Westmoreland states that it will produce non-privileged documents that set forth

the basis for the allegations of paragraph 98 of the Counterclaims in further response to

Interrogatory No. 5.

**Interrogatory No. 6:**  Identify all facts that support your contention that Entech "improperly excluded non-vested benefits from the transfer amount" as set forth in Paragraph 103 of the Counterclaims, and for each such fact identify all Persons with knowledge of that fact and all documents and communications relating to that fact.

**Response:**

Subject to the General Objections, in response to Interrogatory No. 6

Westmoreland states that Section 5.04(g) of the SPA required Entech to transfer an amount from

the MPC Plan to the Westmoreland Plan equal to the value of accrued benefits on a termination

basis.  At the time of the Transaction, the MPC Plan did not have sufficient assets to satisfy all of

the plan's liabilities for benefits on a termination basis.  Under the applicable provisions of the

Employee Retirement Income Security Act of 1974 ("ERISA") and the PBGC Regulations, as

long as the MPC Plan was underfunded in this manner, it could spin off assets equal to the value

of vested benefits (at the time, $16,972,616), but not the non-vested benefits (at the time,

$225,415). However, because the SPA contemplates that the full termination value of accrued

benefits must be transferred and contains no reference to funding requirements or ERISA

limitations, the $225,415 shortfall that could not be transferred directly from the MPC Plan due

to underfunding, should have been transferred outside the plan.

Westmoreland states that it will produce non-privileged documents that set forth

the basis for the allegations of paragraph 103 of the Counterclaims in further response to

Interrogatory No. 6.

**Interrogatory No. 7:** Identify the amount and computation of any damages or Adverse
Consequences allegedly suffered by Defendants on account of any alleged act, omission, error,
breach, or failure by Entech, and for each category of damages or Adverse Consequences
identify all Persons with knowledge of the amount and computation of any such damages or
Adverse Consequences, and all documents and communications relating to such damages or
Adverse Consequences and the computation thereof.

**Response:**

Subject to the General Objections, in response to Interrogatory No. 7

Westmoreland states as follows:

The amount of damages Westmoreland has sustained as a result of Entech's

breach of the Stock Purchase Agreement is equal to the value of the accounting errors set forth in

the Objections that are at issue in this proceeding. With respect to any amounts that improperly

were treated as receivables in the Interim Financial Statements, Westmoreland has been damaged

because such amounts, if proper receivables, would have been converted to cash. However,

because such amounts were improperly accounted for as receivables, they later had to be written

off in accordance with GAAP and, as a result, Westmoreland had far less cash on hand following

the Transaction than, according to the Interim Financial Statements, it should have had on hand.

For example, Entech improperly overstated a base reclamation receivable by $1,667,846.00 and overstated a final reclamation receivable by $12,499,409.00 for Northwestern Resources Co. in the Interim Financial Statements. Thus, Entech overstated the expected cash flow for Northwestern Resources Co. by a total of $14,167,255.00. Because Entech also misstated the liability for final reclamation activities at Northwestern Resources Co. in the Interim Financial Statements, a total of $10,202,940.00 had to be written off of Northwestern Resources Co.'s books following the Transaction.

Westmoreland states that it will produce non-privileged documents that set forth the basis of Westmoreland's claim that it was damaged as a result of Entech's breach of Section 2.08 of the SPA in further response to Interrogatory No. 7.

**Interrogatory No. 8:** Identify each financial statement that Defendants contend was not prepared in accordance with GAAP, or which does not fairly present in all material respects the consolidated financial condition and statement of operations of the Coal Companies on the dates indicated, and for each such financial statement identify all Persons with knowledge of the facts supporting your allegations and all documents and communications relating to those allegations.

**Response:**

Subject to the General Objections, in response to Interrogatory No. 8 Westmoreland states each individual balance sheet and profit and loss statement for the individual Coal Companies as well as the consolidated balance sheet and consolidated profit and loss statement for the Coal Companies that together comprise the Interim Financial Statements were not prepared in accordance with GAAP and did not fairly present in all material respects the financial condition and statement of operations of the Coal Companies on the dates indicated therein. Further answering, Westmoreland incorporates its response to Interrogatory No. 3 herein.

**Interrogatory No. 9:** Identify all Persons involved in the negotiation of the Transaction and state the nature of their involvement.

**Response:**

Westmoreland objects to Interrogatory No. 9 (i) to the extent that it asks

Westmoreland to "state the nature" of "involvement" of certain individuals in the negotiation of

the Transaction on the grounds that it is vague and ambiguous, and (ii) to the extent that it seeks

information concerning individuals involved in the negotiation of the Transaction who were not

employed or retained by Westmoreland on the grounds that such information is equally or more

readily available to Entech than it is to Westmoreland and therefore it is unduly burdensome.

Subject to the foregoing objections and the General Objections, in response to Interrogatory No.

9 Westmoreland identifies the following individuals who participated in the negotiation of the

Transaction on behalf of Westmoreland:

| Name | Job Title and/or Business Address | Home Address |
|---|---|---|
| Robert J. Jaeger | Former Senior Vice President, Finance and Development Westmoreland Coal Company | 1815 Presidential Heights Colorado Springs, CO 80906 |
| Thomas G. Durham | Vice President – Coal Operations Westmoreland Coal Company 2 N. Cascade Avenue Colorado Springs, CO 80906 | |
| Todd A. Myers | Vice President – Coal Operations Westmoreland Coal Company 2 N. Cascade Avenue Colorado Springs, CO 80906 | |
| Paul W. Durham | Former Assistant General Counsel Westmoreland Coal Company | 112 East First Street, #2 Tucson, Arizona 85705 |

**Interrogatory No. 10:** Identify all Persons involved in any due diligence in connection with the Transaction on your behalf (whether such due diligence occurred prior to the execution of the Stock Purchase Agreement or up through to the Closing Date) and state the nature of their involvement.

**Response:**

        Westmoreland objects to Interrogatory No. 10 to the extent that it asks

Westmoreland to "state the nature" of "involvement" of certain individuals in due diligence in

connection with the Transaction on the grounds that it is vague and ambiguous.  Subject to the

foregoing objection and the General Objections, in response to Interrogatory No. 10

Westmoreland identifies the following individuals who participated in due diligence in

connection with the Transaction on Westmoreland's behalf:

| Name | Job Title and/or Business Address | Home Address |
|------|-----------------------------------|--------------|
| Robert J. Jaeger | Former Senior Vice President, Finance and Development Westmoreland Coal Company | 1815 Presidential Heights Colorado Springs, CO 80906 |
| Thomas G. Durham | Vice President – Coal Operations Westmoreland Coal Company 2 N. Cascade Avenue Colorado Springs, CO 80906 | |
| Todd A. Myers | Vice President – Coal Operations Westmoreland Coal Company 2 N. Cascade Avenue Colorado Springs, CO 80906 | |
| Paul W. Durham | Former Assistant General Counsel Westmoreland Coal Company | 112 East First Street, #2 Tucson, Arizona 85705 |
| Doug Kathol | Vice President, Development Westmoreland Coal Company 2 N. Cascade Avenue Colorado Springs, CO 80906 | |
| Dean Jacot | Independent Consultant to Westmoreland | 4672 Old Pond Drive Plano, TX 75024 |
| Kenneth Ball | Independent Consultant to Westmoreland | 4770 Tanglewood Trail Boulder, CO 80301 |

**Interrogatory No. 11:**  Identify all Persons who prepared the Objections or provided
information in preparing the Objections, and for each such Person state what information and/or
documents they provided and/or reviewed in preparing the Objections.

**Response:**

Westmoreland objects to Interrogatory No. 11 to the extent that it seeks information about Objections that are not at issue in this proceeding on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the claims and defenses of the parties to this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections and the General Objections, in response to Interrogatory No. 11 Westmoreland identifies the following individuals as having prepared or provided information that was used to prepare the Objections set forth below that are at issue in this proceeding:

Objection No. 6 (improper accounting treatment of slurry inventory at Western Energy Company): Thomas S. Barta, Sean Flynn.

Objection No. 8 (improper accounting treatment of exploration costs at Western Energy Company): Thomas S. Barta, Sean Flynn.

Objection No. 9 (improper accounting treatment for exploration costs at Northwestern Resources Co.): Thomas S. Barta, Mark Murchison, Amy Barnes.

Objection No. 10 (improper accounting treatment for costs incurred at the Dew Property): Thomas S. Barta, Mark Murchison, Amy Barnes, Joel Trouart.

Objection No. 11 (improper accounting treatment for advanced royalties at the Dew Property): Thomas S. Barta, Mark Murchison, Amy Barnes, Joel Trouart.

Objection No. 12 (improper accounting treatment for Area C overburden removal costs at Western Energy Company): Thomas S. Barta, Leo Doran, Sean Flynn.

Objection Nos. 13-15 (improper accounting treatment for reclamation costs at Northwestern Resources Co.): Thomas S. Barta, Mark Murchison, Amy Barnes, Joel Trouart.

Objection Nos. 19a – 19c, and 20a-s (improper/questionable accounting treatment for various deferred tax assets):   Thomas S. Barta, Gayle Reising.

Objection No. 23a (improper calculation of FAS 106 obligation for Western Energy Company):  David LaSueur, Eric Sock, Jean Moore.

**Interrogatory No. 12:**  Identify all Persons who prepared the Proof of Claim or provided information in preparing the Proof of Claim, and for each such Person state what information and/or documents they provided and/or reviewed in preparing the Proof of Claim.

**Response:**

Westmoreland objects to Interrogatory No. 12 to the extent that it seeks information about Objections that are not at issue in this proceeding on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the claims and defenses of the parties to this action nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to the foregoing objections and the General Objections, in response to Interrogatory No. 12 Westmoreland states that the Proof of Claim, insofar as it relates to the Objections at issue in this proceeding, was prepared using information provided by the individuals listed in Westmoreland's response to Interrogatory No. 11.  Further answering, Westmoreland states that the following individuals were involved in the preparation of the Proof of Claim on behalf of Westmoreland:

| Name | Job Title and/or Business Address | Home Address |
|------|-----------------------------------|--------------|
| W. Michael Lepchitz | General Counsel<br>Westmoreland Coal Company<br>2 N. Cascade Avenue, 14th Floor<br>Colorado Springs, CO 80903 | |
| Thomas Pitts | Retired Member<br>Sidley Austin Brown & Wood LLP | 185 Oakland Avenue<br>Cranston, RI 02910 |

Westmoreland states that it will produce non-privileged documents that were used to prepare the Proof of Claim insofar as it relates to the Objections at issue in this proceeding in further response to Interrogatory No. 12.

**Interrogatory No. 13:**  Identify all Persons who prepared the Indemnity Notices or provided information in preparing the Indemnity Notices, and for each such Person state what information and/or documents they provided and/or reviewed in preparing the Indemnity Notices.

**Response:**

Westmoreland objects to Interrogatory No. 13 to the extent that it seeks information about Objections that are not at issue in this proceeding on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the claims and defenses of the parties to this action nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to the foregoing objections and the General Objections, in response to Interrogatory No. 13 Westmoreland states that the Indemnity Notices, insofar as they relate to the Objections at issue in this proceeding, were prepared using information provided by the individuals listed in Westmoreland's response to Interrogatory No. 11.  Further answering, Westmoreland states that the following individuals were involved in the preparation of the Indemnity Notices on behalf of Westmoreland:

| Name | Job Title and/or Business Address | Home Address |
|------|-----------------------------------|--------------|
| Thomas S. Barta | Controller<br>Westmoreland Coal Company<br>2 N. Cascade Avenue, 14th Floor<br>Colorado Springs, CO 80903 | |
| John G. Hutchinson | Member<br>Sidley Austin Brown & Wood LLP<br>787 Seventh Avenue<br>New York, NY 10019 | |

24

Westmoreland states that it will produce non-privileged documents that were used to prepare the Indemnity Notices insofar as they relate to the Objections at issue in this proceeding in further response to Interrogatory No. 13.

**Interrogatory No. 14:**  Identify all alleged inaccuracies in the Closing Date Certificate, and for each alleged inaccuracy identify all Persons with knowledge of that alleged inaccuracy and all documents and communications relating to that alleged inaccuracy.

**Response:**

Westmoreland objects to Interrogatory No. 14 to the extent that it seeks information concerning "all alleged inaccuracies in the Closing Date Certificate" on the ground that all inaccuracies in the Closing Date Certificate that resulted from changes from accounting treatment in the Interim Financial Statements already have been resolved by an independent accountant.

**Interrogatory No. 15:**  Identify all alleged inaccuracies in the Interim Financial Statements, and for each such alleged inaccuracy identify all Persons with knowledge of the alleged inaccuracy and all documents and communications relating to the alleged inaccuracy.

**Response:**

Westmoreland objects to Interrogatory No. 15 to the extent that it seeks information about Objections that are not at issue in this proceeding on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the claims and defenses of the parties to this action nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to the foregoing objections and the General Objections, in response to Interrogatory No. 15 Westmoreland incorporates its responses to Interrogatory No. 3 above herein.

**Interrogatory No. 16:**  Identify all Persons with any knowledge of, and all documents and communications which relate to, the pension-related issues set forth in the Counterclaims.

**Response**:

Subject to the General Objections, in response to Interrogatory No. 16

Westmoreland identifies the following individuals with knowledge of the pension-related issues

set forth in the Counterclaims:

| Name | Job Title and/or Business Address | Home Address |
|---|---|---|
| Paul W. Durham | Former Assistant General Counsel Westmoreland Coal Company | 112 East First, #2 Tucson, AZ 85708 |
| David LaSueur | Principal Towers Perrin Park Central – Tower 1 1515 Arapahoe Street, Suite 1600 Denver, CO 80202 | |
| Catherine Cole | Principal Towers Perrin Park Central – Tower 1 1515 Arapahoe Street, Suite 1600 Denver, CO 80202 | |

Westmoreland states that it will produce any non-privileged documents that

concern the pension-related issues set forth in the Counterclaims in further response to

Interrogatory No. 16.

**Interrogatory No. 17**: Identify any meeting of the Boards of Directors, and all Persons present (whether in Person, by telephone or any other means) at such meeting, at which there was any discussion or consideration of the Transaction (including the Stock Purchase Agreement, the Guiding Principles Agreement, and the $5 Million Adjustment Agreement), the Objections, the Proof of Claim, the Indemnity Notices, the Financial Materials, the Closing Date Certificate, the Interim Financial Statements, or the Transaction Financing Agreements.

**Response:**

Westmoreland objects to Interrogatory No. 17 to the extent that it seeks information about Objections that are not at issue in this proceeding, the Guiding Principles Agreement, the $5 Million Adjustment Agreement or the Closing Date Certificate on the grounds that the parties stipulated and agreed that these matters would be resolved exclusively in a separate independent accountant proceeding, such matters were so resolved and therefore it is overly broad, unduly burdensome and seeks information that is neither relevant to the claims and defenses of the parties to this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections and the General Objections, in response to Interrogatory No. 17 Westmoreland states that it will produce documents sufficient to show the date and attendees of any meeting of the Boards of Directors at which the Objections at issue in this proceeding were discussed.

**Interrogatory No. 18:** Identify any Person, including any officer, director, employee, agent or advisor (including investment bankers, financial advisors and/or accountants), who provided any opinion, expression of views, advice or other communication, whether written or oral, concerning the Transaction (including the Stock Purchase Agreement, the Guiding Principles Agreement, and the $5 Million Adjustment Agreement), the Objections, the Proof of Claim, the Indemnity Notices, the Financial Materials, the Closing Date Certificate, the Interim Financial Statements, or the Transaction Financing Agreements.

**Response:**

Westmoreland objects to Interrogatory No. 18 (i) to the extent that it seeks information concerning "any opinion, expression of views, advice or other communication, whether written or oral concerning the Transaction," on the ground that it is overly broad and unduly burdensome, and (ii) to the extent that it seeks information about Objections that are not at issue in this proceeding, the Guiding Principles Agreement, the $5 Million Adjustment Agreement or the Closing Date Certificate on the grounds that the parties stipulated and agreed

that these matters would be resolved exclusively in a separate independent accountant proceeding, such matters were so resolved and therefore it is overly broad, unduly burdensome and seeks information that is neither relevant to the claims and defenses of the parties to this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections and the General Objections, in response to Interrogatory No. 18 Westmoreland states that it received a fairness opinion concerning the Transaction from Rothschild Inc., 1251 Avenue of the Americas, New York, New York 10020, and that it will produce a copy of that fairness opinion.

**Interrogatory No. 19:** Identify all Persons retained by Defendants (including investment bankers, financial advisors and/or accountants) in connection with providing any advice or counsel relating to the Transaction (including the Stock Purchase Agreement, the Guiding Principles Agreement, and the $5 Million Adjustment Agreement), the Objections, the Proof of Claim, the Indemnity Notices, the Financial Materials, the Closing Date Certificate, the Interim Financial Statements, or the Transaction Financing Agreements, and for each Person Identified state the nature of their retention and any advice or counsel provided.

**Response:**

Westmoreland objects to Interrogatory No. 19 to the extent that it seeks information about Objections that are not at issue in this proceeding, the Guiding Principles Agreement, the $5 Million Adjustment Agreement or the Closing Date Certificate on the grounds that the parties stipulated and agreed that these matters would be resolved exclusively in a separate independent accountant proceeding, such matters were so resolved and therefore it is overly broad, unduly burdensome and seeks information that is neither relevant to the claims and defenses of the parties to this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections and the General Objections, in response to Interrogatory No. 19 Westmoreland identifies Rothschild and Norwest Corporation,

136 East South Temple, 12th Floor, Salt Lake City, Utah 84111, as companies that Westmoreland

retained to assist it with the Transaction.

**Interrogatory No. 20:** Identify all third-Persons to whom any disclosures were made by Defendants (including, but not limited to, Persons providing banking or financing advice or services to Defendants) in which Defendants have included, referred to, or incorporated, in whole or in part, the Financial Materials, the Closing Date Certificate, the Interim Financial Statements, or any information contained therein.

**Response:**

Westmoreland objects to Interrogatory No. 20 to the extent that it seeks

information concerning disclosures "in which Defendants have included, referred to, or

incorporated in whole or in part, the Financial Materials, the Closing Date Certificate, the

Interim Financial Statements or any information contained therein," on the grounds that it is

overly broad and unduly burdensome and seeks information that it neither relevant to the claims

and defenses of the parties to this action nor reasonably calculated to lead to the discovery of

admissible evidence.  Subject to the foregoing objections and the General Objections, in

response to Interrogatory No. 20 Westmoreland states that it will produce all non-privileged

communications with third-parties concerning the Objections at issue in this proceeding.

**Interrogatory No. 21:** Identify all Persons who provided any information in connection with your preparation of your responses to these Interrogatories and for each such Person state the nature of the information provided.

**Response:**

Subject to the foregoing objections and the General Objections, in response to

Interrogatory No. 21 Westmoreland states that it received information that was used to prepare

its responses to Interrogatory Nos. 1-8, 11, 15 and 16 from Thomas S. Barta, information that

was used to prepare its responses to Interrogatory Nos. 9-10, 12-13, and 17-20 from W. Michael

Lepchitz.

**Interrogatory No. 22:**  Identify all documents reviewed by you in preparation of your responses to these Interrogatories.

**Response:**

        Westmoreland objects to Interrogatory No. 22 to the extent that it seeks documents that Westmoreland "reviewed" to prepare its responses to the Interrogatories but which yielded no information that was used to prepare those responses on the grounds that it is overly broad, unduly burdensome and seeks information that is neither relevant to the claims and defenses of the parties to this action nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections and the General Objections, in response to Interrogatory No. 22 Westmoreland will produce copies of documents that it used to prepare its responses to the Interrogatories.

POTTER ANDERSON & CORROON LLP

By: *Rebecca S. Beste*
        Laurie Selber Silverstein (No. 2396)
        Rebecca S. Beste (No. 4154)
        1313 N. Market Street
        Hercules Plaza, 6th Floor
        Wilmington, Delaware 19801
        (302) 984-6000
        (302) 658-1192 (Fax)

Wilmington, Delaware
Dated: March 23, 2005

                – and –

SIDLEY AUSTIN BROWN & WOOD LLP
John G. Hutchinson
Lee S. Attanasio
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
(212) 839-5599 (Fax)

*Attorneys for Defendants and Counterclaim Plaintiffs Westmoreland Coal Company and Westmoreland Mining, LLC*

675312

30

MAR-23-2005-WED 03:35 PM   WESTMORELAND COAL      FAX No. 719 448 5824          P. 002

## VERIFICATION

W. Michael Lepchitz, being duly sworn, states as follows:

I am General Counsel of Westmoreland Coal Company. I am authorized by

Westmoreland Coal Company and Westmoreland Mining LLC to make this verification for and

on their behalf.

I have read the foregoing Responses and Objections of Defendants Westmoreland

Coal Company and Westmoreland Mining LLC to Plaintiff's First Set Of Interrogatories

Directed to Defendants (the "Interrogatory Responses") and know its contents. The

Interrogatory Responses are true and correct.

_____
W. Michael Lepchitz

STATE OF COLORADO
COUNTY OF EL PASO
Subscribed and sworn to before me
this 23rd day of March 2005

_____
Notary Public

My Commission Expires: 7-22-2008

## CERTIFICATE OF SERVICE

I, Rebecca S. Beste, herby certify that I am not less than 18 years of age and that

on this 23rd day of March 2005, I caused to be served a true and correct copy of the foregoing

**Responses and Objections of Defendants Westmoreland Coal Company and Westmoreland**

**Mining LLC to Plaintiff's First Set of Interrogatories Directed to Defendants** to be delivered

to the following in the manner indicated:

### By Hand Delivery

Edmon L. Morton, Esquire
Young, Conaway, Stargatt & Taylor
The Brandywine Bldg.
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899

Neil B. Glassman, Esquire
Charlene Davis, Esquire
Steven M. Yoder, Esquire
Christopher A. Ward, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

### By U.S. Mail, First Class, Postage Prepaid

David Neier, Esquire
C. MacNeil Mitchell, Esquire
Piero Tozzi, Esquire
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193

Under penalty of perjury, I declare that the foregoing is true and correct.

Rebecca S. Beste

PAC675314