# EXHIBIT E

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                           :
In re                                      :   Chapter 11
                                           :   Case No. 03-11915 (KJC)
TOUCH AMERICA HOLDINGS, INC., et al.,      :
                                           :   Jointly Administered
                 Debtors.                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                           :
ENTECH LLC,                                :
                                           :
                 Plaintiff,                :
                                           :
         -- vs. --                         :   C.A. 04-1336-SLR
                                           :
WESTMORELAND COAL COMPANY, a               :
Delaware Corporation, and                  :
WESTMORELAND MINING LLC, a Delaware        :
Limited Liability Company,                 :
                                           :
                 Defendants.               :
                                           :
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

## DEFENDANT'S FIRST REQUEST TO PLAINTIFF ENTECH LLC FOR THE PRODUCTION OF DOCUMENT FROM DEFENDANTS WESTMORELAND COAL <u>COMPANY AND WESTMORLAND MINING LLC</u>

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, and the Local Rules of this Court, Westmoreland Coal Company and Westmoreland Mining, LLC (collectively, "Westmoreland") hereby request that plaintiff Entech LLC ("Entech") produce for inspection and copying the documents described below, in accordance with the definitions and instructions set forth herein, at the offices of Potter Anderson & Corroon LLP, Hercules Plaza, 1313 North Market Street, Wilmington, DE, 19801, within 30 days of the date hereof.

## DEFINITIONS

A.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests all documents that may otherwise be construed to be outside their scope.

B.    "Basin" means Basin Resources, Inc., a Colorado Corporation.

C.    "Closing Date Certificate" means the certificate Entech furnished to Westmoreland pursuant to the SPA on June 29, 2001, as supplemented thereafter, that purports to set forth the aggregate value of the net assets of the Companies on April 30, 2001 and the net revenues of the Companies between January 1, 2001 and April 30, 2001.

D.    "Companies" means Basin Resources, Inc., Horizon Coal Services, Inc., North Central Energy Company, Northwestern Resources Co., Western SynCoal LLC and Western Energy Company.

E.    "Concerning" means, directly or indirectly, relating to, describing, evidencing, recording, or constituting.

F.    "Document" means all written or graphic matter or any other means of preserving thought or expression of every type and description regardless of origin or location, whether written, recorded, transcribed, taped, punched, filmed, microfilmed, or in any other way produced, reproduced or recorded, including, without limitation, originals, drafts, computer-sorted and computer-retrievable information, copies or duplicates that are marked with any notation or annotation, copies or duplicates that differ in any way from the original, correspondence, memoranda, reports, notes, minutes, contracts, agreements, books, records, checks, vouchers, invoices, purchase orders, ledgers, diaries, logs, calendar notes, computer printouts, computer disks, card files, lists of persons attending meetings or conferences, sketches,

2

diagrams, calculations, evaluations, analyses, directions, work papers, press clippings, sworn or

unsworn statements of employees, requisitions, manuals or guidelines, audit work papers,

financial analyses, tables of organizations, charts, graphs, indices, advertisements or other

promotional materials, audited and unaudited financial statements, trade letters, trade

publications, newspapers or newsletters, diagrams, photographs, e-mail, electronic or mechanical

records, telegrams, telecopies, audiotapes, and all other receptacles or repositories housing or

containing such documents, and all other media used to record, in any form, information. A

draft, annotated or otherwise non-identical copy is a separate document within the meaning of

this term. "Document" expressly includes all Electronic Data stored on any Electronic Media.

G.      "Draft" means any earlier, preliminary, preparatory, or tentative version of all or

part of a document, whether or not such draft was superseded by a later draft or final document

and whether or not the terms of the draft are the same as or different from the terms of the final

document.

H.      "Electronic Data" means the original (or identical duplicate when the original is

not available), and any non-identical copies (whether non-identical because of notes made on

copies or attached comments, annotations, marks, transmission notations, or highlighting of any

kind) of writings of every kind and description whether inscribed by mechanical, facsimile,

electronic, magnetic, digital, or other means. "Electronic Data" includes, by way of example and

not by limitation, computer programs (whether private, commercial or work-in-progress),

programming notes or instructions, activity listings of electronic mail receipts and/or

transmittals, output resulting from the use of any software program, including word processing

documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, and any

all miscellaneous files and/or file fragments, regardless of the media on which they reside and

regardless of whether said Electronic Data consists in an active file, deleted file or file fragment. "Electronic Data" includes but is not limited to any and all items stored on computer memories, hard disks, diskettes and cartridges, network drives, network memory storage, archived tapes and cartridges, backup tapes, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, and any other vehicle used for digital data storage and/or transmittal.

      I.      "Electronic Media" means any magnetic or other storage media device used to record Electronic Data. Electronic Media devices may include, but are not limited to, computer memories, hard disks, diskettes and cartridges, network drives, network memory storage, archived tapes and cartridges, backup tapes, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, and any other vehicle used for digital data storage and/or transmittal.

      J.      "Entech," "you" or "your" shall mean Entech, LLC, and its current and former corporate parents, divisions, subsidiaries, affiliates, principals, officers, directors, employees, agents, representatives, independent consultants, and other persons or entities acting on their behalf or under its control, including without limitation, Entech, Inc., the Montana Power Company, Touch America, Inc. and/or Touch America Holdings, and/or any of their affiliates, officers, directors, employees, agents, representatives, independent consultants, and other persons or entities acting on their behalf or under their control.

      K.      "Horizon" means Horizon Coal Services, Inc., a Montana Corporation.

      L.      "Initial Transfer" means the transfer of approximately $15,316,723 in May 2001 from the MPC Pension Plan to the Westmoreland Plans.

M.    "Interim Financial Statements" means each and all of the unaudited balance sheet of the Companies on a consolidated basis as of July 31, 2000, the unaudited balance sheet of the Companies on a consolidated basis as of December 31, 1999, and the related unaudited consolidated statement of operations for the Companies for the fiscal years of 1997, 1998 and 1999.

N.    "Load Factor" means the expense load assumption as defined in Pension Benefit Guaranty Corporation Regulation Part 4044, Appendix C.

O.    "MPC Pension Plan" means the Montana Power Company Pension Plan and/or "Seller's Pension Plan" (as that term is defined in the SPA) and its current and former corporate parents, divisions, subsidiaries, affiliates, principals, officers, directors, employees, agents, representatives, independent consultants, and other persons or entities acting on their behalf or under its control.

P.    "NCE" means North Central Energy Company, a Colorado corporation.

Q.    "NWR" means Northwestern Resources Co., a Montana corporation.

R.    "Outstanding Objection" means one of the following numbered objections to the Closing Date Certificate transmitted from Westmoreland to Entech on November 15, 2001: 6, 8, 9, 10, 11, 12, 13, 14, 15, 19a-c, 20a-s and 23a (collectively, the "Outstanding Objections").

S.    "SPA" means the document entitled "Stock Purchase Agreement dated as of September 15, 2000 by and between Westmoreland Coal Company and Entech, Inc. with respect to all outstanding capital stock of Basin Resources, Inc., Horizon Coal Services, Inc., North Central Energy Company, Northwestern Resources Co. and Western Energy Company."

T.    "True-Up Payment" means the transfer of assets from the MPC Pension Plan to the Westmoreland Plans on or about February 1, 2002.

U.    "WECO" means Western Energy Company, a Montana Corporation.

V.    "Westmoreland" means Westmoreland Coal Company, Westmoreland Mining, LLC and its current and former corporate parents, divisions, subsidiaries, affiliates, principals, officers, directors, employees, agents, representatives, independent consultants, and other persons or entities acting on their behalf or under its control.

W.    "Westmoreland Plans" means the Northwestern Resources and Western Energy Pension Plan and/or "Purchaser's Pension Plan" (as that term is defined in the SPA).

## INSTRUCTIONS

A.    The definitions, instructions, and rules of construction set forth in Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of Procedure of the United States District Court for the District of Delaware, are incorporated herein by reference.

B.    This document request requires the production of all documents called for herein that you created or originated, or that came into your possession, custody, or control from all files or other sources that contain responsive documents, wherever located and whether active, in storage, or otherwise.

C.    Unless specified otherwise, all documents requested are for the period from January 1, 1995 through and including the present.

D.    The obligation to produce the documents requested below is of a continuing nature; your responses to these document requests are to be supplemented to the full extent required by Rule 26(e) of the Federal Rules of Civil Procedure and if at any time you acquire possession, custody, or control of any additional documents specified below, such documents are to be furnished promptly to counsel for Westmoreland.

6

E.    Where only a portion of a document contains information responsive to the requests set forth below, produce the entire document along with all attachments, appendices, and exhibits.

F.    If any document is withheld in whole under a claim of attorney-client privilege or any other applicable privilege or immunity from disclosure provide the following information:

a)    The date of the document;

b)    The name and title of the person who sent, authored, prepared, signed, or originated the document, or of the person who knows about the information contained therein;

c)    The name and title of the recipient or recipients of the document;

d)    All persons to whom copies of the document were furnished, along with such persons' job titles or positions;

e)    A description of the subject matter or nature of the document sufficient to assess whether the assertion of privilege is valid;

f)    The specific basis upon which the privilege is claimed; and

g)    With respect to any claim of privilege relating to an attorney, or advice or work product of an attorney, the identity of the attorney involved.

G.    If any document is withheld in part under a claim of attorney-client privilege or any other applicable privilege or immunity from disclosure, produce so much of the document as is not subject to the possible claim of privilege or immunity from disclosure indicating clearly on the face of the document where material contained in the document has been redacted or deleted and provide the following information:

a)    A description of the subject matter or nature of the document sufficient to assess whether the assertion of privilege is valid;

b)    The specific basis upon which the privilege is claimed; and

c)    With respect to any claim of privilege relating to an attorney, or advice or work product of an attorney, the identity of the attorney involved.

H.    All documents shall be produced as they are kept in the usual course of business with any identifying labels, file markings, or similar identifying features.  If there are no documents responsive to a category specified below, Plaintiff shall so state in a writing produced at the time and place that documents are demanded to be produced by this request.

I.    If any document requested herein has been lost, discarded, or destroyed, identify the document so lost, discarded, or destroyed in a writing (produced at the time and place that documents are demanded to be produced by this request) as completely as possible, together with the following information:  the date the document was lost, discarded or destroyed; the manner in which the document was lost, discarded or destroyed, the reason that the document was lost, discarded or destroyed; the identity of the person who authorized the disposal of the document; and the identity of the person who actually disposed of the document.

## DOCUMENTS REQUESTED

1.    All documents concerning the Interim Financial Statements, including, without limitation, all contracts, financial entries, schedules, correspondence, memoranda and any other documents supporting each and every one of the entries in the Interim Financial Statements.

2.    All documents concerning the entries in the Interim Financial Statements that are the subject of the Outstanding Objections.

3.      All documents concerning each and every one of the Outstanding Objections, including, without limitation, any and all documents generated as a result of the assertion of the Outstanding Objections or as a result of inquiries made by Entech concerning the subject matter of the Outstanding Objections.

4.      All documents concerning Entech's representation and warranty in the SPA that the Interim Financial Statements, as defined herein, were prepared in accordance with GAAP, and that the Interim Financial Statements "fairly present in all material respects the consolidated financial condition and statement of operations" of the Companies on the dates indicated.

5.      All documents concerning the accounting that is the subject of one or more of the Outstanding Objections, including, without limitation, communications between David Smith and any other Entech employee, and communications between PricewaterhouseCoopers LLP and Entech.

6.      All documents, regardless of date, concerning the accounting that is the subject of Outstanding Objection No. 6, including, without limitation, documents concerning (i) the saleability of the WECO coal slurry inventory at issue, (ii) any attempts to sell such inventory, (iii) any consideration given at any time to writing off such inventory, (iv) the treatment of such coal slurry inventory as a $163,106 asset in the Interim Financial Statements, and (v) any evaluation of Westmoreland's inquiries about, or objections to, the inclusion of such inventory as an asset in the Closing Date Certificate and/or the Interim Financial Statements.

7.      All documents, regardless of date, concerning the accounting that is the subject of Outstanding Objection No. 8, including, without limitation, documents concerning (i) any consideration given at any time to expensing the exploration costs at issue or writing off the capitalized exploration costs at issue, (ii) the existence or non-existence of a commercially

mineable deposit for which such exploration costs were incurred by WECO, and the existence or

non-existence of a commercially mineable deposit as of the date of each of the Interim Financial

Statements, (iii) any consideration given at any time by WECO or Entech as to whether or not

there were commercially mineable deposits as of the date of the Interim Financial Statements to

support maintaining such exploration costs as an asset in the Interim Financial Statements, and

(iv) any evaluation of Westmoreland's inquiries about, or objections to, the inclusion of such

exploration costs as an asset in the Closing Date Certificate and/or the Interim Financial

Statements.

      8.    All documents, regardless of date, concerning the accounting that is the subject of

Outstanding Objection No. 9, including, without limitation, documents concerning (i) any

consideration given at any time to expensing the exploration costs at issue or writing off the

capitalized exploration costs at issue, (ii) the existence or non-existence of a commercially

mineable deposit for which such exploration costs were incurred by NWR, and the existence or

non-existence of a commercially mineable deposit as of the date of each of the Interim Financial

Statements, (iii) any consideration given at any time by NWR or Entech to whether or not there

were commercially mineable deposits as of the date of the Interim Financial Statements to

support maintaining such exploration costs as an asset in the Interim Financial Statements, and

(iv) any evaluation of Westmoreland's inquiries about, or objections to, the inclusion of such

exploration costs as an asset in the Closing Date Certificate and/or the Interim Financial

Statements.

      9.    All documents, regardless of date, concerning the accounting that is the subject of

Outstanding Objection No. 10, including, without limitation, documents concerning (i) the

inclusion or exclusion of the Dew Property in the life-of-mine plan of NWR in 2000 or 2001, (ii)

any consideration given at any time to expensing the capitalized costs relating to the Dew

Property or writing off the capitalized costs at issue, and (iii) any evaluation of Westmoreland's

inquiries about, or objections to, the inclusion of such capitalized costs as an asset in the Closing

Date Certificate and/or the Interim Financial Statements.

      10.    All documents concerning the accounting that is the subject of Outstanding

Objection No. 11, including, without limitation, documents concerning (i) the recoverability of

the advance royalties at issue, (ii) any consideration given at any time to writing off the advance

royalties associated with the Dew Property, and (iii) any evaluation of Westmoreland's inquiries

about, or objections to, the inclusion of the advance royalties as an asset in the Closing Date

Certificate and/or the Interim Financial Statements.

      11.    All documents, regardless of date, concerning the accounting that is the subject of

Outstanding Objection No. 12, including, without limitation, documents concerning (i) the

decision, effective July 1, 2000, to reimburse overburden removal costs for Area C of the

Rosebud Mine at WECO as they were incurred, (ii) any consideration given at any time to the

discontinuance of deferring overburden removal costs in Area C, (iii) any recommendations

concerning the accounting treatment of Area C Overburden Removal costs made by WECO

accounting staff to MPC and/or Entech, (iv) any assessment of whether the accounting at issue

conforms with the matching principle under GAAP, and (v) any evaluation of Westmoreland's

inquiries about, or objections to, the inclusion of the overburden removal costs at issue as an

asset in the Closing Date Certificate and/or the Interim Financial Statements..

      12.    All documents from January 1, 1999 to the present concerning the impact of the

August 2, 1999 amendment to the Lignite Supply Agreement between NWR and Reliant Energy

Inc. on the obligation of Reliant Energy Inc. to reimburse for base reclamation costs incurred in

connection with the Jewett Mine after July 1, 2002 and final reclamation activities prior to mine closure incurred in connection with the Jewett Mine after July 1, 2002.

13.     All documents, regardless of date, concerning the accounting that is the subject of Outstanding Objections Nos. 13-15, including, without limitation, documents concerning (i) any consideration given at any time to writing off certain base and/or final reclamation receivables from Reliant for reclamation costs to be paid by NWR after July 1, 2002, (ii) any recommendations concerning the accounting treatment of these reclamation receivables made by NWR accounting staff to MPC and/or Entech in light of the August 2, 1999 amendment to the Lignite Supply Agreement, and (iii) any evaluation of Westmoreland's inquiries about, or objections to, the inclusion of the reclamation receivables at issue as an asset in the Closing Date Certificate and/or the Interim Financial Statements.

14.     All documents, regardless of date, concerning the accounting that is the subject of Outstanding Objection No. 19a, including, without limitation, documents concerning (i) the treatment in the Interim Financial Statements of the amount of $477,922 for "A/P Entech Pension" as a deferred tax asset, (ii) the absence of a corresponding deferred tax liability, and (iii) any evaluation of Westmoreland's inquiries about, or objections to, the inclusion of this amount as an asset in the Closing Date Certificate and/or the Interim Financial Statements.

15.     All documents, regardless of date, concerning the accounting that is the subject of Outstanding Objection No. 19b, including, without limitation, documents concerning (i) the treatment in the Interim Financial Statements of $3,856,319 for "Other Taxes Payable" for WECO as a deferred tax asset, and (ii) any evaluation of Westmoreland's inquiries about, or objections to, the inclusion of this amount as an asset in the Closing Date Certificate and/or the Interim Financial Statements.

16.     All documents, regardless of date, concerning the accounting that is the subject of Outstanding Objection No. 19c, including, without limitation, documents concerning (i) the treatment in the Interim Financial Statements of the amount of $60,907 for "Vacation Liability" for Basin as a deferred tax asset, and (ii) any evaluation of Westmoreland's inquiries about, or objections to, the inclusion of this amount as an asset in the Closing Date Certificate and/or the Interim Financial Statements.

17.     All documents, regardless of date, concerning the accounting that is the subject of Outstanding Objection No. 20a, including, without limitation, documents concerning (i) the treatment in the Interim Financial Statements of the amount of $181,091 for "Long-Term Debt Entech Employee Stock Ownership Plan" as a deferred tax asset, (ii) the absence of a corresponding deferred tax liability, and (iii) any evaluation of Westmoreland's inquiries about, or objections to, the inclusion of this amount as an asset in the Closing Date Certificate and/or the Interim Financial Statements.

18.     All documents, regardless of date, concerning the accounting that is the subject of Outstanding Objection No. 20b, including, without limitation, documents concerning (i) the difference between the amount of $978,607 for "Deferred Reclamation" at WECO recorded in the Interim Financial Statements and the corresponding obligation recorded on the Balance Sheet, and (ii) any evaluation of Westmoreland's inquiries about, or objections to, the inclusion of this amount as an asset in the Closing Date Certificate and/or the Interim Financial Statements.

19.     All documents, regardless of date, concerning the accounting that is the subject of Outstanding Objection No. 20c, including, without limitation, documents concerning (i) the difference between the amount of $204,301 for "Deferred Post Retirement and Post Employment

Benefits" at WECO recorded in the Interim Financial Statements and the corresponding obligation recorded on the Balance Sheet, and (ii) any evaluation of Westmoreland's inquiries about, or objections to, the inclusion of this amount as an asset in the Closing Date Certificate and/or the Interim Financial Statements.

20.     All documents, regardless of date, concerning the accounting that is the subject of Outstanding Objection No. 20d, including, without limitation, documents concerning (i) the treatment in the Interim Financial Statements of the amount of $11,373 for "Deferred MPC/ENT Foundation" as a deferred tax asset, (ii) the absence of a corresponding deferred tax liability, and (iii) any evaluation of Westmoreland's inquiries about, or objections to, the inclusion of this amount as an asset in the Closing Date Certificate and/or the Interim Financial Statements.

21.     All documents, regardless of date, concerning the accounting that is the subject of Outstanding Objection No. 20e, including, without limitation, documents concerning (i) the treatment in the Interim Financial Statements of the amount of $875,428 for "Long-Term Debt – Incentive Stock" as a deferred tax asset, (ii) the absence of a corresponding deferred tax liability, and (iii) any evaluation of Westmoreland's inquiries about, or objections to, the inclusion of this amount as an asset in the Closing Date Certificate and/or the Interim Financial Statements.

22.     All documents, regardless of date, concerning the accounting that is the subject of Outstanding Objection No. 20f, including without limitation, documents concerning (i) the difference between the amount of $800,808 for "Other Deferred Credits" at NWR recorded in the Interim Financial Statements and the corresponding obligation recorded on the Balance Sheet, and (ii) any evaluation of Westmoreland's inquiries about, or objections to, the inclusion of this amount as an asset in the Closing Date Certificate and/or the Interim Financial Statements.

23.     All documents concerning the accounting that is the subject of Outstanding

Objection No. 20g, including, without limitation, documents concerning (i) the treatment in the

Interim Financial Statements of the amount of $110,138 for "Texas Franchise Tax Deferred" as a

deferred tax asset, (ii) the absence of a corresponding deferred tax liability, and (iii) any

evaluation of Westmoreland's inquiries about, or objections to, the inclusion of this amount as an

asset in the Closing Date Certificate and/or the Interim Financial Statements.

24.     All documents concerning the accounting that is the subject of Outstanding

Objection No. 20h, including, without limitation, documents concerning (i) the tax basis reported

by Entech for the $4,458,991 for "Advance Royalties" at NWR contained in the Interim

Financial Statements, (ii) the tax basis reported by Entech for the related deferred tax asset, and

(iii) any evaluation of Westmoreland's inquiries about, or objections to, the inclusion of this

amount as an asset in the Closing Date Certificate and/or the Interim Financial Statements.

25.     All documents concerning the accounting that is the subject of Outstanding

Objection No. 20i, including, without limitation, documents concerning (i) the difference

between the amount of $184,443 for "Deferred Revenue" at NWR recorded in the Interim

Financial Statements and the corresponding obligation recorded on the Balance Sheet, and (ii)

any evaluation of Westmoreland's inquiries about, or objections to, the inclusion of this amount

as an asset in the Closing Date Certificate and/or the Interim Financial Statements.

26.     All documents concerning the accounting that is the subject of Outstanding

Objection No. 20j, including, without limitation, documents concerning (i) the treatment in the

Interim Financial Statements of the amount of $2,416,619 for "Plant" at Basin as a deferred tax

asset; (ii) the book value of this asset, and (iii) any evaluation of Westmoreland's inquiries about,

or objections to, the inclusion of this amount as an asset in Closing Date Certificate and/or the Interim Financial Statements.

27.    All documents concerning the accounting that is the subject of Outstanding Objection No. 20k, including, without limitation, documents concerning (i) the treatment in the Interim Financial Statements of the amount of $55,843 for "Account Maintenance and Post Employment Benefits" at Basin as a deferred tax asset, (ii) the book value of this asset, (iii) the timing of deductions  after April 30, 2001 for account maintenance and post employment benefits at Basin, and (iv) any evaluation of Westmoreland's inquiries about, or objections to, the inclusion of this amount as an asset in the Closing Date Certificate and/or the Interim Financial Statements.

28.    All documents concerning the accounting that is the subject of Outstanding Objection No. 20l, including, without limitation, documents concerning (i) the treatment in the Interim Financial Statements of the amount of $104,183 for "State Corporate License Tax" at Basin as a deferred tax asset, (ii) the absence in the Closing Date Certificate of a corresponding deferred tax liability, and (iii) any evaluation of Westmoreland's inquiries about, or objections to, the inclusion of this amount as an asset in the Closing Date Certificate and/or the Interim Financial Statements.

29.    All documents concerning the accounting that is the subject of Outstanding Objection No. 20m, including, without limitation, documents concerning (i) the treatment in the Interim Financial Statements of the amount of $173,060 for "State Corporate License Tax" at Syncoal as a deferred tax asset, (ii) the absence in the Closing Date Certificate of a corresponding deferred tax liability, and (iii) any evaluation of Westmoreland's inquiries about,

or objections to, the inclusion of this amount as an asset in the Closing Date Certificate and/or the Interim Financial Statements.

30.    All documents concerning the accounting that is the subject of Outstanding Objection No. 20n, including, without limitation, documents concerning (i) the difference between the amount of $68,535 for "Future Operating Losses" at NCE recorded in the Interim Financial Statements and the corresponding obligation recorded on the Balance Sheet, and (ii) any evaluation of Westmoreland's inquiries about, or objections to, the inclusion of this amount as an asset in the Closing Date Certificate and/or the Interim Financial Statements.

31.    All documents concerning the accounting that is the subject of Outstanding Objection No. 20o, including, without limitation, documents concerning (i) the treatment in the Interim Financial Statements of the amount of $405,878 for "Deferred Revenue" at NCE as a deferred tax asset, (ii) the book value of this asset, (iii) the timing of deductions after April 30, 2001 for deferred revenue at NCE, and (iv) any evaluation of Westmoreland's inquiries about, or objections to, the inclusion of this amount as an asset in the Closing Date Certificate and/or the Interim Financial Statements.

32.    All documents concerning the accounting that is the subject of Outstanding Objection No. 20p, including, without limitation, documents concerning (i) the treatment in the Interim Financial Statements of the amount of $42,155 for "State Corporate License Tax" at NCE as a deferred tax asset, (ii) the absence of a corresponding deferred tax liability, and (iii) any evaluation of Westmoreland's inquiries about, or objections to, the inclusion of this amount as an asset in the Closing Date Certificate and/or the Interim Financial Statements.

33.    All documents concerning the accounting that is the subject of Outstanding Objection No. 20q, including, without limitation, documents concerning (i) the treatment in the

Interim Financial Statements of the amount of $288,968 for "State Corporate License Tax" at

Horizon as a deferred tax asset, (ii) the absence of a corresponding deferred tax liability, and (iii)

any evaluation of Westmoreland's inquiries about, or objections to, the inclusion of this amount

as an asset in the Closing Date Certificate and/or the Interim Financial Statements.

34.     All documents concerning the accounting that is the subject of Outstanding

Objection No. 20r, including, without limitation, documents concerning (i) the treatment in the

Interim Financial Statements of the amount of $99,084 for "Other Current Liabilities," "LT

Debt- Incent. Stock," "Deferred Post Employment Benefits" and "Deferred Pension" for Horizon

as a deferred tax asset, (ii) the book value of such asset, (iii) the timing of deductions after April

30, 2001 for other current liabilities, LT debt incent stock, deferred post employment benefits

and deferred pension at Horizon, and (iv) any evaluation of Westmoreland's inquiries about, or

objections to, the inclusion of this amount as an asset in the Closing Date Certificate and/or the

Interim Financial Statements.

35.     All documents concerning the accounting that is the subject of Outstanding

Objection No. 20s, including, without limitation, documents concerning (i) the tax accounting

treatment in the Interim Financial Statements of the amount of $215,621 for "Plant" for Horizon,

and (ii) any evaluation of Westmoreland's inquiries about, or objections to, the inclusion of this

amount as an asset in the Closing Date Certificate and/or the Interim Financial Statements.

36.     All documents concerning the accounting that is the subject of Outstanding

Objection No. 23a, including, without limitation, documents concerning (i) the calculation of the

value of WECO's SFAS 106 obligation, (ii) the methodology used for measuring historical

claims experience, (iii) all communications with any actuaries and/or consultants utilized by

WECO in connection with this calculation, and (iv) any evaluation of Westmoreland's inquiries

about, or objections to, the inclusion of this amount as an asset in the Closing Date Certificate and/or the Interim Financial Statements.

37.    All documents concerning the Initial Transfer, including, without limitation, documents concerning the calculation of the Initial Transfer and all supporting materials for those calculations.

38.    All documents concerning the True-Up Payment, including, without limitation, documents concerning the calculation of the True-Up Payment and all supporting materials for those calculations.

39.    All documents concerning the inclusion or non-inclusion of the Load Factor in the Initial Transfer and/or the True-Up Payment, including, without limitation, all communications with any consultants.

40.    All documents concerning Section 5.04(g) of the SPA, including, without limitation, documents concerning (i) Entech's responsibilities under Section 5.04(g) of the SPA; (ii) the proper treatment of non-vested benefits under Section 5.04(g) of the SPA; and (iii) the requirement under Section 5.04(g) of the SPA that the amount transferred to Westmoreland pursuant to that provision equal the value of accrued benefits of employees under the MPC Pension Plan as of April 30, 2001.

41.    For each person you intend to call as an expert witness at trial:  (i) copies of all documents relied upon by such person in the course of formulating his or her opinions; (ii) copies of all documents provided to such person whether or not actually relied upon in formulating his or her opinions; (iii) a list of the publications authored by such person within the last 5 years; (iv) a list of all actions in which such person has offered expert testimony within the last 5 years; (v) a copy of the person's current *curriculum vitae*.

42.    To the extent not sought by the document requests above, any documents upon which you intend to rely in the prosecution or defense of this action.

43.    All documents supporting any of Entech's allegations in its Reply to Westmoreland's Second Amended Counterclaims, and in its First Amended Complaint.

44.    For the period 1997 through the present, all documents concerning any accounting errors in any Entech financial statements, or in any financial statements including Entech's assets and liabilities and balance sheet.

45.    For the period 1997 through the present, Entech's tax returns, or the tax returns of any entity that encompasses Entech's income and/or losses.

46.    The personnel files for David S. Smith, Kenneth J. Palagi and Jerrold P. Pederson.

47.    All documents concerning any attempts to sell the Companies, including, without limitation, all other offers for the Companies.

48.    All documents relating to any work performed by PricewaterhouseCoopers LLC with respect to any of the Interim Financial Statements, or with respect to the subject matter of, or accounting reflected in, any of the Outstanding Objections.

49.    All documents relating to the accounting and tax treatment, methods, or

procedures used with respect to the preparation or evaluation of the Interim Financial Statements.

Dated: Wilmington, Delaware
February 25, 2005

**POTTER ANDERSON & CORROON** LLP

By: _Rebecca S. Beste_

Laurie Selber Silverstein (No. 2396)
Elihu E. Allinson (No. 3476)
Rebecca S. Beste (No. 4154)
Hercules Plaza
1313 N. Market Street
Wilmington, Delaware 19801
(302) 984-6000
(302) 658-1192 (Fax)

- and –

**SIDLEY AUSTIN BROWN & WOOD** LLP
John G. Hutchinson
Lee S. Attanasio
Elizabeth Zito
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
(212) 839-5599 (Fax)

*Attorneys for Defendants and Counterclaim*
*    Plaintiffs Westmoreland Coal Company and*
*    Westmoreland Mining, LLC*

*PA&C 671635*

21

## CERTIFICATE OF SERVICE

I, Rebecca S. Beste, herby certify that I am not less than 18 years of age and that on this 25th day of February 2005, I caused to be served a true and correct copy of the foregoing **Defendant's First Request to Plaintiff Entech LLC for the Production of Document from Defendants Westmoreland Coal Company and Westmoreland Mining LLC** to be delivered to the following in the manner indicated:

### By Hand Delivery

Edmon L. Morton, Esquire
Young, Conaway, Stargatt & Taylor
The Brandywine Bldg.
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899

Neil B. Glassman, Esquire
Charlene Davis, Esquire
Steven M. Yoder, Esquire
Christopher A. Ward, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE  19801

### By U.S. Mail, First Class, Postage Prepaid

David Neier, Esquire
C. MacNeil Mitchell, Esquire
Piero Tozzi, Esquire
Winston & Strawn LLP
200 Park Avenue
New York, NY  10166-4193

Under penalty of perjury, I declare that the foregoing is true and correct.

*Rebecca S. Beste*
Rebecca S. Beste

PAC 671677

1