## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------x
                                          :
In reply to:                              :      Chapter 11
                                          :      Case No. 03-11915 (KJC)
TOUCH AMERICA HOLDINGS, INC., et al.,     :
                                          :      Jointly Administered
                    Debtors.              :
-----------------------------------------------------------x
                                          :
ENTECH LLC,                               :
                                          :
                    Plaintiff,            :      Adversary No. 04-52935 (KJC)
                                          :
        -- vs. --                         :
                                          :      C.A. 04-1336-SLR
WESTMORELAND COAL COMPANY, a              :
Delaware Corporation, and                 :
WESTMORELAND MINING LLC, a Delaware       :
Limited Liability Company,                :
                                          :
                    Defendants.           :
                                          :
                                          :
-----------------------------------------------------------x
```

## NOTICE OF DEPOSITION

To:   YOUNG CONAWAY STARGATT & TAYLOR, LLP
      Christian Douglas Wright
      The Brandywine Building
      1000 West Street, 17th Floor
      Wilmington, DE  19899-0391
      (302) 571-6600
      *Attorneys for Plaintiff Entech LLC*

      PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, defendants Westmoreland Coal Company, a Delaware Corporation, and

Westmoreland Mining LLC, a Delaware Limited Liability Company, by their attorneys, Sidley

Austin Brown & Wood LLP and Potter Anderson & Corroon LLP, will take the deposition upon

oral examination of plaintiff Entech LLC on the topics set forth in Schedule A hereto,

commencing at 10:00 a.m. on June 15, 2005 at the offices of Potter Anderson & Corroon LLP,

Hercules Plaza, 1313 N. Market Street, Wilmington, Delaware 19801, before a person authorized

by law to administer oaths.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Entech LLC shall

designate one or more officers, directors, or managing agents, or other person who consent to

testify on its behalf, to testify on the topics set forth in Schedule A.

Dated: May 10, 2005

POTTER ANDERSON & CORROON LLP

By: *Rebecca S. Beste*
Laurie Selber Silverstein (No. 2396)
Rebecca S. Beste (No. 4154)
Hercules Plaza
1313 N. Market Street
Wilmington, Delaware  19801
(302) 984-6000
(302) 658-1192 (Fax)

– and –

SIDLEY AUSTIN BROWN & WOOD LLP
John G. Hutchinson
Lee S. Attanasio
787 Seventh Avenue
New York, New York  10019
(212) 839-5300
(212) 839-5599 (Fax)

*Attorneys for Defendants and Counterclaim
Plaintiffs Westmoreland Coal Company and
Westmoreland Mining, LLC*

## SCHEDULE A

## DEFINITIONS

A.      "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests all topics that may otherwise be construed to be outside their scope.

B.      "Balance Sheet" means the unaudited consolidated balance sheet as of July 31, 2000 provided by Entech to Westmoreland as part of the Interim Financial Statements.

C.      "Basin" means Basin Resources, Inc., a Colorado Corporation.

D.      "Companies" means Basin Resources, Inc., Horizon Coal Services, Inc., North Central Energy Company, Northwestern Resources Co. and Western Energy Company.

E.      "Concerning" means, directly or indirectly, relating to, describing, evidencing, recording, or constituting.

F.      "Entech," "you" or "your" shall mean Entech, LLC, and its current and former corporate parents, divisions, subsidiaries, affiliates, principals, officers, directors, employees, agents, representatives, independent consultants, and other persons or entities acting on their behalf or under its control, including without limitation, Entech, Inc., the Montana Power Company, Touch America, Inc. and/or Touch America Holdings.

G.      "Horizon" means Horizon Coal Services, Inc., a Montana Corporation.

H.      "Initial Transfer" means the transfer of approximately $15,316,723 in May 2001 from the MPC Pension Plan to the Westmoreland Plans.

I.      "Interim Financial Statements" means each and all of the unaudited balance sheet of the Companies on a consolidated basis as of July 31, 2000, the unaudited balance sheet of the Companies on a consolidated basis as of December 31, 1999, and the related unaudited

consolidated statement of operations for the Companies for the fiscal years of 1997, 1998 and 1999.

      J.    "Load Factor" means the expense load assumption as defined in Pension Benefit Guaranty Corporation Regulation Part 4044, Appendix C.

      K.    "MPC Pension Plan" means the Montana Power Company Pension Plan and/or "Seller's Pension Plan" (as that term is defined in the SPA) and its current and former corporate parents, divisions, subsidiaries, affiliates, principals, officers, directors, employees, agents, representatives, independent consultants, and other persons or entities acting on their behalf or under its control.

      L.    "NCE" means North Central Energy Company, a Colorado corporation.

      M.    "NWR" means Northwestern Resources Co., a Montana corporation.

      N.    "Outstanding Objection" means one of the following numbered objections to the Closing Date Certificate transmitted from Westmoreland to Entech on November 15, 2001:  6, 8, 9, 10, 11, 12, 13, 14,. 15, 19a-c, 20a-s and 23a (collectively, the "Outstanding Objections").

      O.    "SPA" means the document entitled "Stock Purchase Agreement dated as of September 15, 2000 by and between Westmoreland Coal Company and Entech, Inc. with respect to all outstanding capital stock of Basin Resources, Inc., Horizon Coal Services, Inc., North Central Energy Company, Northwestern Resources Co. and Western Energy Company."

      P.    "True-Up Payment" means the transfer of assets from the MPC Pension Plan to the Westmoreland Plans on or about February 1, 2002.

      Q.    "WECO" means Western Energy Company, a Montana Corporation.

      R.    "Westmoreland" means Westmoreland Coal Company, Westmoreland Mining, LLC and its current and former corporate parents, divisions, subsidiaries, affiliates, principals,

officers, directors, employees, agents, representatives, independent consultants, and other persons or entities acting on their behalf or under its control.

S.      "Westmoreland Plans" means the Northwestern Resources and Western Energy Pension Plan and/or "Purchaser's Pension Plan" (as that term is defined in the SPA).

## TOPICS

1.      The Interim Financial Statements.

2.      Entech's representation and warranty in the SPA that the Interim Financial Statements were prepared in accordance with GAAP.

3.      Entech's representation and warranty in the SPA that the Interim Financial Statements "fairly present in all material respects the consolidated financial condition and statement of operations" of the Companies on the dates indicated.

4.      The preparation of the Interim Financial Statements.

5.      Internal communications concerning the accounting that is the subject of one or more of the Outstanding Objections, including without limitation, communications between David Smith and any other Entech employee.

6.      Communications between PricewaterhouseCoopers LLP and Entech concerning the accounting that is the subject of one or more of the Outstanding Objections.

7.      Any request for an audit or management representation letter on any issue that is the subject of one or more of the Outstanding Objections, and, if no audit or management representation letter was issued, the reasons for the denial of such request.

8.      The accounting that is the subject of Outstanding Objection No. 6, including without limitation, (i) the saleability of the WECO coal slurry inventory at issue, (ii) any attempts to sell such inventory, (iii) any suggestion that such inventory be written off, and (iv)

the treatment of such coal slurry inventory as a $163,106 asset in the Interim Financial Statements.

9.      The accounting that is the subject of Outstanding Objection No. 8, including without limitation, (i) any suggestion that the exploration costs at issue should have been expensed as incurred; (ii) the existence of a commercially mineable deposit for which such exploration costs were incurred by WECO, (iii) the proper treatment of such exploration costs under GAAP, and (iv) the capitalization of $1,864,012 in such exploration costs in the Interim Financial Statements.

10.     The accounting that is the subject of Outstanding Objection No. 9, including without limitation, (i) any suggestion that the exploration costs at issue should have been expensed as incurred; (ii) the existence of a commercially mineable deposit for which such exploration costs were incurred by NWR, (iii) the proper treatment of such exploration costs under GAAP, and (iv) the capitalization of $2,428,175 in such exploration costs in the Interim Financial Statements.

11.     The accounting that is the subject of Outstanding Objection No. 10, including without limitation, (i) the inclusion or exclusion of the Dew Property in the life-of-mine plan of NWR in 2000 or 2001, (ii) any suggestion that costs relating to the Dew Property should have been expensed as incurred, (iii) the recoverability of such costs under GAAP and (iv) the capitalization of $59,899 in such costs in the Interim Financial Statements.

12.     The accounting that is the subject of Outstanding Objection No. 11, including without limitation, (i) the recoverability of the advanced royalties at issue under GAAP and (ii) the capitalization of $121,828 in such advance royalties in the Interim Financial Statements.

13.     The accounting that is the subject of Outstanding Objection No. 12, including without limitation, (i) the decision, effective July 1, 2000 to reimburse overburden removal costs for Area C of the Rosebud Mine at WECO as they were incurred, (ii) the continuation of deferred stripping costs for overburden removal in Area C after July 1, 2000, (iii) any recommendations concerning the accounting treatment of Area C Overburden Removal costs made by WECO accounting staff to MPC, and (iv) any assessment of whether the accounting at issue conforms with the matching principle under GAAP.

14.     The impact of the August 2, 1999 amendment to the Lignite Supply Agreement between NWR and Reliant Energy Inc. on the obligation of Reliant Energy Inc. to pay for reclamation costs incurred in connection with the Jewett Mine.

15.     The accounting that is the subject of Outstanding Objection No. 13, including without limitation, (i) the amount of reclamation costs that Reliant Energy Inc. will pay to NWR for reclamation conducted by NWR prior to July 2002, (ii) any projections of the amount of reclamation costs prepared by NWR's engineering staff that will be incurred prior to July 2002, and (iii) the treatment of such costs as receivables under GAAP.

16.     The accounting that is the subject of Outstanding Objection No. 14.

17.     The accounting that is the subject of Outstanding Objection No. 15.

18.     The calculation in the Interim Financial Statements of a liability for final reclamation activities at the Jewett Mine in the amount of $16,213,988.

19.     The accounting that is the subject of Outstanding Objection No. 19a, including without limitation, (i) the treatment in the Interim Financial Statements of the amount of $477,922 for "A/P Entech Pension" as a deferred tax asset, and (ii) the absence in the Interim Financial Statements of a corresponding deferred tax liability.

5

20.    The accounting that is the subject of Outstanding Objection No. 19b, including without limitation, the treatment in the Interim Financial Statements of $3,856,319 for "Other Taxes Payable" for WECO as a deferred tax asset.

21.    The accounting that is the subject of Outstanding Objection No. 19c, including without limitation, (i) the treatment in the Interim Financial Statements of the amount of $60,907 for "Vacation Liability" for Basin as a deferred tax asset and (ii) the timing of deductions after April 30, 2001 for vacation liability at Basin.

22.    The accounting that is the subject of Outstanding Objection No. 20a, including without limitation, (i) the treatment in the Interim Financial Statements of the amount of $181,091 for "Long-Term Debt Entech Employee Stock Ownership Plan" as a deferred tax asset, and (ii) the absence in the Interim Financial Statements of a corresponding deferred tax liability.

23.    The accounting that is the subject of Outstanding Objection No. 20b, including without limitation, the difference between the amount of $978,607 for "Deferred Reclamation" at WECO recorded in the Interim Financial Statements and the corresponding obligation recorded on the Balance Sheet.

24.    The accounting that is the subject of Outstanding Objection No. 20c, including without limitation, the difference between the amount of $204,301 for "Deferred Post Retirement and Post Employment Benefits" at WECO recorded in the Interim Financial Statements and the corresponding obligation recorded on the Balance Sheet.

25.    The accounting that is the subject of Outstanding Objection No. 20d, including without limitation, (i) the treatment in the Interim Financial Statements of the amount of $11,373 for "Deferred MPC/ENT Foundation" as a deferred tax asset, and (ii) the absence in the Interim Financial Statements of a corresponding deferred tax liability.

26.    The accounting that is the subject of Outstanding Objection No. 20e, including without limitation, (i) the treatment in the Interim Financial Statements of the amount of $875,428 for "Long-Term Debt – Incentive Stock" as a deferred tax asset, and (ii) the absence in the Interim Financial Statements of a corresponding deferred tax liability.

27.    The accounting that is the subject of Outstanding Objection No. 20f, including without limitation, the difference between the amount of $800,808 for "Other Deferred Credits" at NWR recorded in the Interim Financial Statements and the corresponding obligation recorded on the Balance Sheet.

28.    The accounting that is the subject of Outstanding Objection No. 20g, including without limitation, (i) the treatment in the Interim Financial Statements of the amount of $110,138 for "Texas Franchise Tax Deferred" as a deferred tax asset, and (ii) the absence in the Interim Financial Statements of a corresponding deferred tax liability.

29.    The accounting that is the subject of Outstanding Objection No. 20h, including without limitation, (i) the tax basis reported by Entech for the $4,458,991 for "Advance Royalties" at NWR contained in the Interim Financial Statements, and (ii) the tax basis reported by Entech for the related deferred tax asset.

30.    The accounting that is the subject of Outstanding Objection No. 20i, including without limitation, the difference between the amount of $184,443 for "Deferred Revenue" at NWR recorded in the Interim Financial Statements and the corresponding obligation recorded on the Balance Sheet.

31.    The accounting that is the subject of Outstanding Objection No. 20j, including without limitation, (i) the treatment in the Interim Financial Statements of the amount of $2,416,619 for "Plant" at Basin as a deferred tax asset; and (ii) the book value of this asset..

32.     The accounting that is the subject of Outstanding Objection No. 20k, including without limitation, (i) the treatment in the Interim Financial Statements of the amount of $55,843 for "Account Maintenance and Post Employment Benefits" at Basin as a deferred tax asset, (ii) the book value of this asset, and (iii) the timing of deductions after April 30, 2001 for account maintenance and post employment benefits at Basin.

33.     The accounting that is the subject of Outstanding Objection No. 20l, including without limitation, (i) the treatment in the Interim Financial Statements of the amount of $104,183 for "State Corporate License Tax" at Basin as a deferred tax asset, and (ii) the absence in the Interim Financial Statements of a corresponding deferred tax liability.

34.     The accounting that is the subject of Outstanding Objection No. 20m, including without limitation, (i) the treatment in the Interim Financial Statements of the amount of $173,060 for "State Corporate License Tax" at Syncoal as a deferred tax asset, and (ii) the absence in the Interim Financial Statements of a corresponding deferred tax liability.

35.     The accounting that is the subject of Outstanding Objection No. 20n, including without limitation, the difference between the amount of $68,535 for "Future Operating Losses" at NCE recorded in the Interim Financial Statements and the corresponding obligation recorded on the Balance Sheet.

36.     The accounting that is the subject of Outstanding Objection No. 20o, including without limitation, (i) the treatment in the Interim Financial Statements of the amount of $405,878 for "Deferred Revenue" at NCE as a deferred tax asset, (ii) the book value of this asset, and (iii) the timing of deductions after April 30, 2001 for deferred revenue at NCE.

37.     The accounting that is the subject of Outstanding Objection No. 20p, including without limitation, (i) the treatment in the Interim Financial Statements of the amount of $42,155

8

for "State Corporate License Tax" at NCE as a deferred tax asset, and (ii) the absence in the Interim Financial Statements of a corresponding deferred tax liability.

38.    The accounting that is the subject of Outstanding Objection No. 20q, including without limitation, (i) the treatment in the Interim Financial Statements of the amount of $288,968 for "State Corporate License Tax" at Horizon as a deferred tax asset, and (ii) the absence in the Interim Financial Statements of a corresponding deferred tax liability.

39.    The accounting that is the subject of Outstanding Objection No. 20r, including without limitation, (i) the treatment in the Interim Financial Statements of the amount of $99,084 for "Other Current Liabilities," "LT Debt- Incent. Stock," "Deferred Post Employment Benefits" and "Deferred Pension" for Horizon as a deferred tax asset, (ii) the book value of such asset, and (iii) the timing of deductions after April 30, 2001 for other current liabilities, LT debt incent. stock, deferred post employment benefits and deferred pension at Horizon.

40.    The accounting that is the subject of Outstanding Objection No. 20s, including without limitation, the tax accounting treatment in the Interim Financial Statements of the amount of $215,621 for "Plant" for Horizon.

41.    The accounting that is the subject of Outstanding Objection No. 23a, including without limitation, (i) the calculation of the value of WECO's SFAS 106 obligation and (ii) the methodology used for measuring historical claims experience.

42.    The Initial Transfer, including without limitation, the calculation of the Initial Transfer.

43.    The True-Up Payment, including without limitation, the calculation of the True-Up Payment.

9

44.    The inclusion or non-inclusion of the Load Factor in the Initial Transfer and/or the True-Up Payment.

45.    Section 5.04(g) of the SPA, including without limitation, (i) Entech's responsibilities under Section 5.04(g) of the SPA; (ii) the proper treatment of non-vested benefits under Section 5.04(g) of the SPA; and (iii) the requirement under Section 5.04(g) of the SPA that the amount transferred to Westmoreland pursuant to that provision equal the value of accrued benefits of employees under the MPC Pension Plan as of April 30, 2001.