**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : | Case No. 03-11915 (KJC) |
| TOUCH AMERICA HOLDINGS, INC., et al., | : |  |
|  | : | Jointly Administered |
| Debtors. | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| ENTECH LLC, | : |  |
|  | : |  |
| Plaintiff, | : | Adversary No.:  04-52935(KJC) |
|  | : |  |
| -- vs. -- | : |  |
|  | : | C.A. 04-1336-SLR |
| WESTMORELAND COAL COMPANY, a | : |  |
| Delaware Corporation, and | : |  |
| WESTMORELAND MINING LLC, a Delaware | : |  |
| Limited Liability Company, | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW OF DEFENDANTS WESTMORELAND COAL
COMPANY AND WESTMORELAND MINING LLC IN OPPOSITION TO
PLAINTIFF ENTECH LLC'S MOTION TO COMPEL**

POTTER ANDERSON & CORROON
LLP
Laurie Selber Silverstein (DE No. 2396)
Rebecca S. Beste (DE No. 4154)
Hercules Plaza
1313 N. Market Street
Wilmington, Delaware  19801
(302) 984-6000
(302) 658-1192 (Fax)

SIDLEY AUSTIN BROWN & WOOD
LLP
John G. Hutchinson
Lee S. Attanasio
787 Seventh Avenue
New York, New York  10019
(212) 839-5300
(212) 839-5599 (Fax)

*Attorneys for Defendants and Counterclaim Plaintiffs
Westmoreland Coal Company and Westmoreland Mining LLC*

Date:  May 17, 2005

Table of Contents

Page

PRELIMINARY STATEMENT ..................................................................... 1

BACKGROUND ......................................................................................... 2

    A.    The Transaction ............................................................. 2

    B.    The Prior Proceedings Between The Parties............................. 5

    C.    The Independent Accountant Proceeding ............................... 7

    D.    The Instant Matter........................................................... 7

    E.    Settlement Negotiations .................................................. 8

ARGUMENT ............................................................................................ 9

I.    In Light Of Their Own Conduct During Discovery, Entech's Motion To Compel Is Particularly Inappropriate. ........................................ 9

    A.    Entech's Discovery Requests Are Admittedly Overbroad ............ 9

    B.    Entech's Objections To Westmoreland's Requests ................... 9

    C.    Entech's Document Production ........................................... 10

    D.    Entech's Subpoenas ...................................................... 12

    E.    Entech's Expression Of Concern With Westmoreland's Objections Is Recent ............................................................................ 13

II.    Entech's Motion To Compel Seeks Documents That Either Already Have Been Produced Or Are Neither Relevant To The Claims Or Defenses Of The Parties Nor Likely To Lead To The Production Of Admissible Evidence................... 14

    A.    Request No. 9.............................................................. 14

    B.    Request No. 11............................................................ 16

    C.    Request No. 12............................................................ 16

    D.    Request No. 15............................................................ 16

    E.    Request No. 16............................................................ 16

    F.    Request No. 17............................................................ 16

G.     Request No. 19 ............................................................................................ 16

H.    Request No. 25 ............................................................................................ 16

I.     Request Nos. 26 And 27 ............................................................................. 16

III.    Entech's Premature Motion To Compel With Respect To Westmoreland's
Interrogatory Responses Has Been Resolved. .................................................... 16

A.    Interrogatory No. 6 ..................................................................................... 16

B.    Interrogatory No. 17 ................................................................................... 17

C.    Interrogatory No. 18 ................................................................................... 17

D.    Interrogatory No. 20 ................................................................................... 17

CONCLUSION ................................................................................................................ 18

Table of Authorities

Page

## CASES

Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc.,
        339 F.3d 180 (3d Cir. 2003)...........................................................................1

Spencer v. Steinman,
        179 F.R.D. 484 (E.D. Pa. 1998) .....................................................................13

Cootes Drive LLC v. Internet Law Library, Inc.,
        No. 01 CIV. 0877 (RLC), 2002 WL. 424647 (S.D.N.Y. Mar. 19, 2002).........................12

United States v. Dentsply International, Inc., No. Civ. A. 99-5 MMS,
        2000 WL. 654286 (D. Del. May 10, 2000)................................................14, 15

## STATUTES AND RULES

Fed. R. Civ. P. 45(b)(1)....................................................................................12

Westmoreland Coal Company and Westmoreland Mining LLC (collectively, "Westmoreland") respectfully submit this Memorandum of Law in Opposition to Plaintiff Entech LLC's Motion to Compel.

## PRELIMINARY STATEMENT

"Zealous advocacy on behalf of one's client does not excuse a belligerent and uncompromising approach to the discovery process." Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc., 339 F.3d 180, 182 (3d Cir. 2003). Although Entech would have this Court believe otherwise, Westmoreland has consistently attempted to facilitate discovery in this case without resorting to motion practice.

Entech has raced to involve this Court in thirteen purported discovery "disputes," twelve of which have now been resolved, and would have been resolved if further discussions had taken place before the motion was filed.[1] However, because one of Entech's discovery requests that forms the basis for its motion (Document Request No. 9) is demonstrably overbroad and designed to seek documents that are not remotely relevant to this case or reasonably calculated to lead to the discovery of any admissible evidence, Westmoreland opposes Entech's motion to compel with respect to that request.

The sole extant dispute between the parties at this juncture is the scope of Westmoreland's production of documents in response to Request No. 9 of Entech's document requests, which seeks documents concerning valuations of coal companies that Westmoreland purchased from Entech in 2001 ("the Coal Companies"). These

---

[1]     This motion should never have been brought. At the time it was filed, Westmoreland had made clear that it was considering its responses to Entech's discovery issues, and the parties were still in discussions with one another.

documents have no bearing whatsoever on the propriety of Entech's accounting – the critical issue in this case – nor are they reasonably calculated to lead to the discovery of admissible evidence. Simply put, the value of the Coal Companies either before or after they were sold, is wholly irrelevant. Nevertheless, in an effort to resolve this last-remaining dispute, Westmoreland has offered to produce documents concerning valuations prepared by or on behalf of Westmoreland at or before the time that the sale closed in 2001. Entech has been unwilling to accept this compromise and insists, based on a mistaken assertion of what this case is really about, that it is entitled to documents concerning *any* valuations of the Coal Companies prepared at *any time after the sale closed*, including up until the present.

Entech has no affirmative claims for recovery in this proceeding. Whatever entitlement it has to monetary relief already has been adjudicated. This case is about Entech's accounting in financial statements Entech supplied to Westmoreland before the transaction closed on April 30, 2001. The discovery Entech seeks on the sole remaining issue in dispute should not be permitted.

## BACKGROUND

Entech's motion contains a number of inaccuracies that necessitate the following detailed recitation of the background facts of this case.

### A.    *The Transaction*

In early 2000, the parties engaged in negotiations in furtherance of a transaction (the "Transaction") whereby Westmoreland purchased from Entech all of the

2

outstanding capital stock of several coal mining companies (the "Companies") owned by Entech.[2]

Prior to the closing, Entech provided Westmoreland with the unaudited balance sheet of the Companies on a consolidated basis as of July 31, 2000, the unaudited balance sheet of the Companies on a consolidated basis as of December 31, 1999, and the related unaudited consolidated statement of operations for the Companies for the fiscal years of 1997, 1998 and 1999 (collectively, the "Interim Financial Statements"). The Interim Financial Statements reflected that the consolidated net asset value of the Companies (the "Net Asset Value") was $97,120,000.00.

In September 2000, the parties entered into a Stock Purchase Agreement (the "SPA"). In Section 2.08 of the SPA Entech represented and warranted that the Interim Financial Statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"). In Section 10.01 of the SPA, Entech agreed that it would indemnify Westmoreland for any Adverse Consequences sustained by Westmoreland if any of Entech's representations and warranties proved false.

The SPA required Entech to provide Westmoreland with a Closing Date Certificate (the "CDC") that reflected the Net Asset Value of the Companies on April 30, 2001. Section 1.04 of the SPA provides for a post-closing adjustment of the purchase price based on the difference between the Net Asset Value of the Companies reflected in the Interim Financial Statements ($97,120,000) and the Net Asset Value of the

---

[2]     The Companies include Northwestern Resources Co. ("NWR"), Western Energy Company ("WECO") and its wholly-owned subsidiary, Western Syncoal LLC ("Syncoal"), Basin Resources, Inc. ("Basin"), Horizon Coal Services, Inc. ("Horizon") and North Central Energy Company ("NCE").

Companies reflected in the CDC.  If the Net Asset Value of the Companies on the closing date was, as the parties expected it would be, less than $97,120,000, Entech owed Westmoreland the deficiency.  If the Net Asset Value of the Companies exceeded $97,120,000, Westmoreland owed Entech the surplus.  The CDC also set forth the net revenue for the Companies for the period January 1, 2001 to April 30, 2001.  Under the SPA, Westmoreland was entitled to keep the entire net revenue amount.

The SPA provided that Westmoreland would pay $138,000,000 on the date that the Transaction closed, in this case April 30, 2001.  An agreement between the parties on April 25, 2001 (the "$5 Million Agreement"), reduced the amount due from Westmoreland at closing to $133,000,000.  As set forth in the $5 Million Agreement, the parties expected five days before the closing that "the combined total of the Net Asset Value and the Net Revenue Amount" would be "at least $5,000,000" in Westmoreland's favor.  (A true and correct copy of the April 25, 2001 agreement is attached hereto as Exhibit 1.)  In other words, both Entech and Westmoreland expected that Entech would owe Westmoreland a purchase price adjustment after the transaction closed.  On its face, the April 25, 2001 agreement makes clear that it was entered into because it was expected that Entech would owe Westmoreland money after the closing, not, as Entech contends, because Westmoreland was having "issues with its financing."  (Opening Brief in Support of Plaintiff Entech LLC's Motion to Compel ("Pl. Br.") at 6.)

Entech provided the CDC to Westmoreland on June 29, 2001.  Contrary to the parties' agreed-upon expectations, the CDC reported that a purchase price adjustment of $9,009,175.27 in Entech's favor was warranted.[3]

---

[3]    This figure is calculated by subtracting the net revenue amount reported in the CDC from the difference between the Net Asset Values reported in the CDC and

4

Westmoreland served its initial objections to the CDC on July 27, 2001. Certain of the objections contained therein were lodged because Entech had not provided Westmoreland with adequate information to assess certain of the entries in the CDC and it was necessary for Westmoreland to preserve any objections that it might have relating to those entries. As information became available, Westmoreland was able to refine its objections to the CDC. On November 5, 2001, Westmoreland delivered to Entech its final set of objections to the CDC (the "Objections") which demonstrate that Entech owes Westmoreland a purchase price adjustment of $30,335,019.[4]

Under Section 5.04(g) of the SPA, Entech was required to transfer to the NWR and WECO pension plans (the "New Plan") assets and/or cash from Entech's pension plan "that equal the aggregate present value" of the accrued benefits of employees under the MPC Plan as of April 30, 2001 "on a termination basis." Although Entech did transfer certain sums to the New Plan, it did not transfer the entire amount required by the SPA. Entech failed to transfer approximately $490,000 that is clearly required to be transferred under Section 5.04(g).

**B.    *The Prior Proceedings Between The Parties***

The issues that this Court will ultimately need to resolve are a subset of the issues initially in dispute between the parties. This case will be heard after several

---

the Interim Financial Statements and adding the $5,000,000.00 deferred payment of the purchase price and estimated interest in the amount of $153,319.60: ($107,358,895.55- $97,120,000.00) - $6,386,039.88 + 5,000,000 + $153,319.60 = $9,009,175.27.

[4]    The SPA provided for a 15-day period following the delivery of objections to the CDC for the parties to try to agree to a purchase price adjustment. By mutual agreement, the parties extended this deadline in an effort to resolve their differences, but were unable to do so.

years of judicial and non-judicial proceedings that have fully and finally resolved many of the disagreements between the parties. These prior proceedings have substantially narrowed the scope of the parties' disputes and the subject matter of this case.

The SPA contains an alternative dispute resolution provision that provides for certain disputes related to the purchase price adjustment provision to be decided by a nationally-recognized independent accountant. Because the parties could not agree on the applicability of this provision to their disputes, they litigated the issue in New York State court. The New York State Court of Appeals held that the parties' disputes relating to changes occurring after July 31, 2000 date of the Interim Financial Statements should be resolved by an independent accountant and those relating to the Interim Financial Statements should be resolved in Court. The Court of Appeals remanded the case back to the trial court to issue a written opinion that set forth where each of the outstanding disputes between the parties should be resolved. However, before the trial court could issue its opinion, the New York proceedings were stayed as a result of Entech's bankruptcy filing.

On or about March 5, 2004, Entech commenced this action against Westmoreland. After Westmoreland filed a motion to stay or, in the alternative, dismiss, the parties executed a stipulation (the "Stipulation") in which they agreed to resolve certain itemized disputes in the independent accountant proceeding and to resolve the remainder of their disputes (those disputes relating to the preparation of the Interim Financial Statements) in this proceeding. (A true and correct copy of the Stipulation is attached hereto as Exhibit 2.) The parties also agreed in the Stipulation that Entech could not seek to execute on any recovery Entech obtained in the independent accountant

proceeding, if any, unless and until this action was concluded, and Westmoreland had any

opportunity to setoff any recovery it obtained in this case.

### C.    *The Independent Accountant Proceeding*

The independent accountant proceeding finally concluded with a written

decision dated November 30, 2004.  In that decision, the independent accountant upheld

the vast majority of Westmoreland's objections to the CDC, in the approximate amount

of $1,685,000.00.  On the eve of the commencement of that proceeding, Entech conceded

the propriety of Westmoreland's objections with respect to an additional *$2,850,000.00*.

Thus, the independent accountant proceeding revealed that, with respect to the CDC

alone (changes that had occurred since the Interim Financial Statements had been

provided to Westmoreland), Entech had made more than $4.5 million worth of

accounting errors.

### D.    *The Instant Matter*

On or about November 10, 2004, Entech amended its complaint in this

action. [5]  In this proceeding, Entech is seeking recovery of amounts allegedly owed to it

under the CDC (approximately $6,900,000.00).  However, those amounts already have

been determined by the independent accountant and, pursuant to the Stipulation, will not

be decided, and cannot be decided, here.  Accordingly, Entech has no affirmative claim

for monetary recovery to be litigated in this Court, and whatever money it believes it is

---

[5]    The sole reason that the caption of this case names Entech as the plaintiff is
because mid-way through the state court proceedings in which Westmoreland was
the plaintiff, Entech declared bankruptcy and commenced a duplicative adversary
proceeding against Westmoreland in the Delaware Bankruptcy Court.  To
facilitate withdrawing the reference to the Bankruptcy Court by this Court, the
parties agreed to retain the caption from the adversary proceeding.

entitled to arises under the CDC, and all issues under the CDC have been fully and finally litigated.[6]

By contrast, Westmoreland's claims for indemnification arising out of Entech's breach of the representation and warranty contained in Section 2.08 of the SPA and breach of Section 5.04(g) of the SPA have never been addressed in another tribunal, much less decided. Westmoreland has asserted counterclaims in this proceeding seeking indemnification in the amount of $39,900,000.00 for breach of Section 2.08 of the SPA, two breach of contract claims totaling $489,415.00 seeking recovery of the pension plan assets that Entech did not transfer to Westmoreland pursuant to the SPA, and a claim for setoff against any recoveries that must be paid to Entech as a result of the independent accountant's findings. It is those claims, and not Entech's claim for turnover, that should dictate the scope of relevant discovery in this action.

### E.    *Settlement Negotiations*

The parties have devoted time and effort to trying to settle this case. As a result, both sides have only started producing documents within the past month, and are not yet finished. Although Entech's production has been made at a more rapid pace, as set forth below, that has not been without cost to Westmoreland. As a result, the parties are currently contemplating seeking an extension of the June 2005 fact discovery cut-off

---

[6]    Currently, Entech asserts two claims for breach of contract, a claim for turnover of the amounts that Entech claims are due to it under the CDC, and a claim for breach of the covenant of good faith and fair dealing; each of these claims has been determined in the Independent Accountant Proceeding. Entech is also pursuing statutory and equitable subordination remedies in its Complaint in the event an affirmative payment is found to be owed to Westmoreland. It's entitlement to invoke such remedies, and it has none, is a legal question. Entech has also objected to Westmoreland's proof of claim.

previously set by the Court, because by all accounts, document production has been voluminous and more time consuming than initially envisioned.

## ARGUMENT

**I.     In Light of Their Own Conduct During Discovery, Entech's Motion to Compel Is Particularly Inappropriate.**

### A.      *Entech's Discovery Requests Are Admittedly Overbroad*

The fact that Entech now contends that Westmoreland's initial production of documents contained documents that are "virtually all irrelevant to any of the issues in this litigation" establishes that not even Entech believes that its document requests were tailored to seek documents relevant to this case.  (Pl. Br. at 13.)  Contrary to Entech's view, these documents, many of which were documents that Entech provided to Westmoreland in due diligence were in fact "called for by the Request for Production." (Pl. Br. at 13.)  Request No. 2 of Entech's document requests seeks "All documents relating to the Transaction, including but not limited to  . . . all documents relating to the due diligence performed by the Defendants in connection with the Transaction."  (Pl. Br., Ex. A at 9.)  If, as Entech now appears to contend, such documents are not relevant, Entech should not have requested them in discovery.  It did, along with a host of other materials that even Entech concedes have no bearing on this case.

### B.      *Entech's Objections to Westmoreland's Requests*

Entech's suggestion that Westmoreland interposed too many objections to its admittedly overbroad requests (see Pl. Br. at 13) is somewhat remarkable.  In its responses and objections to Westmoreland's document requests (attached hereto as Exhibit 3 for the Court's reference), Entech objected to just about everything, including phrases like, "concerning the accounting that is the subject of" Westmoreland's

9

objections, on the grounds that they were vague and ambiguous. (See Ex. 3 at 28.) This case is about *Entech's* accounting and Westmoreland's objections to specific items in Entech's financial statements, and there is no ambiguity in the language Westmoreland used to request relevant documents from Entech.[7]

In light of Entech's voluminous objections to virtually every document request Westmoreland issued, Westmoreland would have been required to file a massive motion to compel had Entech not later conceded that, with just one or two exceptions, it would not stand by its objections and would in fact not withhold any non-privileged, responsive documents.[8]

### C.    *Entech's Document Production*

Entech began producing documents on April 13, 2005. In the cover letter that accompanied its initial production, Entech's counsel stated that "ten boxes of documents" were "[a]ttached" and that Entech anticipated that it "would continue to produce five to ten boxes of documents per day over the next week." (A true and correct copy of this letter is attached hereto as Exhibit 4.) Upon opening the boxes containing Entech's initial production, many of which were approximately half the size of a standard production box, counsel for Westmoreland discovered that the documents contained

---

[7]    Entech also objected to requests seeking documents (i) concerning the objections at issue in this proceeding and Entech's representation and warranty under Section 2.08 of the SPA on the ground that such documents contained "confidential information of third parties." (Ex. 3 at 10.) When questioned about these objections at the initial meet and confer between the parties, counsel for Entech did not attempt to defend them. Instead, he stated that he was not personally responsible for drafting Entech's objections and therefore could not explain why this particular objection had been interposed. Entech's counsel further surmised that this objection was improperly interposed in response to several of Westmoreland's requests.

[8]    Westmoreland has resolved all issues with respect to Entech's objections other than two, and, as a result, Westmoreland will file a very limited motion to compel.

therein were not sequentially numbered and there were large unexplained gaps in

Entech's production.  Through considerable effort, counsel for Westmoreland was able to

discern that Entech had produced document that were Bates stamped ENT 0002112-

4953, ENT 0004954-5665, ENT 0009415-10573, ENT 0013164-16121 and ENT

0019752-23247.  Page 1 of Entech's production was missing.[9]

Entech's second installment of its document production contained no

cover letter at all and also consisted of non-sequentially numbered documents.  After

realizing that tracking Entech's document production was consuming an inordinate

amount of time and that attempting to verify that it was receiving all of the documents

that Entech believed it had produced was impossible, counsel for Westmoreland

requested that counsel for Entech provide an itemized list of all the documents it had

produced to date by Bates number and provide information concerning the Bates ranges

of documents contained in future productions in cover letters accompanying those

productions.  They did not.

On April 22, 2005, Entech's third installment of documents arrived.  In the

cover letter accompanying that production, Entech's counsel stated that Entech's first two

productions contained documents bearing production numbers ENT 0000001 "through

and including" ENT 0030086 and that Entech's third installment of documents "includes

documents [B]ates stamped ENT – 0030087 through and including ENT – 0050592."  (A

true and correct copy of this letter is attached hereto as Exhibit 5.)  Since receiving this

---

[9]      Although Entech disputes Westmoreland's suggestion that it withheld documents
that were ready for production, it is nearly impossible to understand how the first
2111 pages of Entech's production were not ready to be produced until nine days
*after* Entech's initial installment of documents – which is when they were
received by Westmoreland.

letter, Westmoreland has confirmed that pages bearing production numbers ENT

0010574, ENT 0027927 and ENT 0040682 – ENT 0042149 have never been produced

to Westmoreland.[10]

### D.    *Entech's Subpoenas*

Despite the fact that Entech seeks no affirmative recovery in these cases,

Entech has issued subpoenas to five different lenders, auditors and consultants seeking all

manner of discovery about Westmoreland's business affairs.  In doing so, Entech has

failed to comply with the relevant procedural rules.

It is well-established under Rule 45 of the Federal Rules of Civil

Procedure that, prior to serving a subpoena on a third party, counsel for a party must

provide the opposing party with (i) notice and (ii) the opportunity to object.  Rule

45(b)(1) unambiguously provides:

> Prior notice of any commanded production of documents and things or
> inspection of premises before trial shall be served on each party in the
> manner prescribed by Rule 5(b).

Fed. R. Civ. P. 45(b)(1); see Cootes Drive LLC v. Internet Law Library, Inc., No. 01

CIV. 0877 (RLC), 2002 WL 424647, at *1 (S.D.N.Y. Mar. 19, 2002) (serving notice

even one day after service of subpoena "is a manifest violation of Rule 45")(attached as

---

[10]    Entech's production also included documents labeled with tape flags with
handwritten notes on them.  Upon discovery of the handwriting, counsel for
Entech immediately ceased looking through the boxes and phoned counsel for
Entech to determine whether the notes – which could have been attorney work
product – had intentionally been produced.  Although it is customary for
purposes of document production to photocopy and treat as a separately numbered
document any materials affixed to production documents, Entech chose a
different path.  Counsel for Entech informed counsel for Westmoreland that its
unorthodox approach to document production was intentional and that there was
no inadvertent waiver.  However, as a result of Entech's decision not to
photocopy and assign production numbers to responsive documents, the parties
will now be forced to create trial exhibits using documents with tape flags.  To the
extent that these tape flags fall off documents or are mistakenly removed by third-
party copy vendors, the parties' exhibits will be incomplete.

Exhibit 6); Spencer v. Steinman, 179 F.R.D. 484, 487 (E.D. Pa. 1998) (parties must provide prior notice of Rule 45 subpoenas to other parties "to afford other parties an opportunity to object").

Entech failed to give Westmoreland the notice required by Rule 45, or any notice of any kind, with just about every subpoena that it has served.  In some cases, Westmoreland received notice that Entech served third parties with subpoenas many days after service.

Before becoming aware that any third parties had been served by Entech, Westmoreland proposed a cooperative approach to deposition discovery in which both parties would work together to make their former employees available for depositions and refrain from serving any third-party discovery until they could agree on its scope. Counsel for Entech agreed in principle with this approach with the proviso that he needed to consult with his colleagues before reaching a definitive agreement.  The next time counsel for the parties spoke, Entech stated that it was not willing to agree to Westmoreland's proposal and that it already had served two subpoenas on third parties.

E. **Entech's Expression of Concern With Westmoreland's Objections Is Recent**

Westmoreland provided Entech with its written responses and objections to Entech's discovery requests on March 23, 2005.  (See Pl. Br., Ex. C & D.)  Entech waited *nearly a month* after receiving Westmoreland's objections to express any concern with them.  Once it had expressed its concerns on April 19 and April 25, Entech was quick to file its motion to compel accusing Westmoreland of being "dilatory."  (Pl. Br. at 14.)  Accordingly, Entech's repeated attempt to make Westmoreland look dilatory by claiming that Westmoreland should have done things "weeks ago" (Pl. Br. at 24), is

13

unavailing.  Entech gave Westmoreland a *four-day window* to answer all of its questions

before it moved to compel.[11]

## II.    Entech's Motion to Compel Seeks Documents that Either Already Have Been Produced or Are Neither Relevant to the Claims or Defenses of the Parties Nor Likely To Lead To the Production of Admissible Evidence

### A.    *Request No. 9*

At the initial meet and confer, counsel for Westmoreland asked counsel

for Entech to articulate a theory of relevance for the documents sought by Request No. 9

of Entech's document requests, which seeks documents concerning valuations of the

Companies, including any valuation of the Companies that Westmoreland has done in the

more than four years since the closing.  Counsel for Entech responded that the concept of

relevance under the Federal Rules of Civil Procedure is broad – a fact discussed at length

in Entech's motion.  (See Pl. Br. at 15.).  That is not a theory as to why these particular

documents have any bearing on any of the issues that this Court will decide.  Indeed,

although broad, the concept of relevancy in the discovery context "is not without

bounds."  United States v. Dentsply Int'l, Inc., No. Civ. A. 99-5 MMS, 2000 WL 654286,

at *4 (D. Del. May 10, 2000)(attached as Exhibit 7).

The theory of relevance articulated in Entech's motion – that whether

Westmoreland got what it paid for is "one of the most basic issues in this litigation" – is

just plain wrong.  (Pl. Br. at 16.)  This case is about Entech's accounting.  It is not about

whether Westmoreland's valuations of the Coal Companies were correct or how

---

[11]    Although Westmoreland has been diligent in trying to obtain answers to certain of Entech's questions, its efforts have been somewhat hampered by the departure of Westmoreland's General Counsel, Assistant General Counsel, Controller and Assistant Controller from Westmoreland in recent weeks.

Westmoreland created those valuations, or whether Westmoreland made a good deal on the purchase or not. Even if Westmoreland believed that the Coal Companies were worth millions of dollars more than the purchase price it agreed to pay, that would not change the fact that Entech committed that it would provide Westmoreland with accurate financial information prepared in accordance with GAAP and failed to abide by that commitment. Nor would the fact that Westmoreland was able to negotiate a good deal for the Companies – assuming that it was – have any bearing on whether Westmoreland is entitled to indemnification for Entech's breach of Section 2.08 of the SPA. For example, if Entech made a representation that it had no environmental liability, and that representation proved to be false and cost Westmoreland $1 million, it would be no defense for Entech to contend that the overall purchase was a good deal for Westmoreland, so Entech was free to engage in deliberate accounting errors.

Despite the irrelevancy of all valuations, in an effort to compromise and avoid needless discovery disputes, Westmoreland agreed to provide Entech with non-privileged documents constituting valuations created at or before the closing and documents relating to those valuations. Entech refused. Entech's suggestion that the Federal Rules of Civil Procedure authorize it to obtain a host of additional documents concerning valuations created *years* after the SPA was negotiated to demonstrate whether or not Westmoreland made a profit on the Transaction is frivolous, and pure voyeurism. Although broad, the concept of relevance under Rule 26 is not limitless. See Dentsply Int'l, 2000 WL 654286, at *4. To the extent that Westmoreland has not already agreed to produce them, documents responsive to Request No. 9 are neither relevant to the claims

or defenses of the parties to this action nor reasonably calculated to lead to the discovery of admissible evidence.

### B.    *Request No. 11*

Entech's motion with respect to Request No. 11 has been resolved.

### C.    *Request No. 12*

Entech's motion with respect to Request No. 12 has been resolved.

### D.    *Request No. 15*

Entech's motion with respect to Request No. 15 has been resolved.

### E.    *Request No. 16*

Entech's motion with respect to Request No. 16 has been resolved.

### F.    *Request  No. 17*

Entech's motion with respect to Request No. 17 has been resolved.

### G.    *Request No. 19*

Entech's motion with respect to Request No. 19 has been resolved.

### H.    *Request No. 25*

Entech's motion with respect to Request No. 25 has been resolved.

### I.    *Request Nos. 26 and 27*

Entech's motion with respect to Request Nos. 26 and 27 has been resolved.

## III.    **Entech's Premature Motion to Compel With Respect to Westmoreland's Interrogatory Responses Has Been Resolved.**

### A.    *Interrogatory No. 6*

Entech's motion with respect to Interrogatory No. 6 has been resolved.

**B.**    ***Interrogatory No. 17***

Entech's motion with respect to Interrogatory No. 17 has been resolved.

**C.**    ***Interrogatory No. 18***

Entech's motion with respect to Interrogatory No. 18 has been resolved.

**D.**    ***Interrogatory No. 20***

Entech's motion with respect to Interrogatory No. 20 has been resolved.

## CONCLUSION

For the foregoing reasons, Westmoreland respectfully requests that the

Court deny Entech's Motion to Compel in its entirety.


Dated: Wilmington, Delaware
        May 17, 2005

POTTER ANDERSON & CORROON LLP

By _____
        Laurie Selber Silverstein (No. 2396)
        Rebecca S. Beste (No. 4154)
1313 N. Market Street
Wilmington, Delaware  19801
(302) 984-6000
(302) 658-1192 (Fax)

– and –

SIDLEY AUSTIN BROWN & WOOD LLP
        John G. Hutchinson
        Lee S. Attanasio
787 Seventh Avenue
New York, New York  10019
(212) 839-5300
(212) 839-5599 (Fax)

*Attorneys for Defendants and Counterclaim
Plaintiffs Westmoreland Coal Company and
Westmoreland Mining, LLC*