# EXHIBIT No. 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ) | |
| ) | |
| TOUCH AMERICA HOLDINGS, INC., et al., ) | Chapter 11 |
| ) | |
| Debtors ) | Case No. 03-11915 |
| ) | (KJC) |
| ) | |
| —————————————— ) | |
| ) | |
| ENTECH LLC, ) | Adversary Proceeding |
| ) | No. 04-52935 (KJC) |
| Plaintiff, ) | |
| ) | |
| -and- ) | |
| ) | |
| THE OFFICIAL COMMITTEE OF UNSECURED ) | |
| CREDITORS, ) | |
| ) | |
| Plaintiff-Intervenor ) | |
| ) | |
| -vs- ) | |
| ) | |
| WESTMORELAND COAL COMPANY, a Delaware ) | |
| Corporation, and WESTMORELAND MINING LLC, ) | |
| a Delaware Limited Liability Company, ) | |
| ) | |
| Defendants. ) | |

STIPULATION AND ORDER RESOLVING DEFENDANTS' MOTION TO DISMISS
AND/OR STAY AND FOR RELIEF FROM AUTOMATIC STAY

This Stipulation and Order is made and entered into as of this 18th day of August

2004, by and between Entech LLC ("Entech") and the Official Committee of Unsecured

Creditors (the "Committee," collectively, "Plaintiff"), on the one hand, and Westmoreland Coal

Company and Westmoreland Mining LLC (collectively, "Westmoreland" or "Defendants"), on

the other hand:

Date Filed _____

Docket No. _____

WHEREAS, on or about March 5, 2004, Plaintiff filed its Complaint in the above captioned Adversary Proceeding (the "Action"); and

WHEREAS, on or about May 19, 2004, Defendants filed their Motion to Stay or, Alternatively, Dismiss the Complaint and for Relief from the Automatic Stay, or, Alternatively, to Compel Arbitration and for Partial Abstention (the "Motion"); and

WHEREAS, on or about July 9, 2004, Plaintiff filed its opposition to the Motion; and

WHEREAS, the Parties hereto desire to resolve the Motion;

NOW THEREFORE, in consideration of the covenants contained herein, the parties stipulate and agree as follows:

1.     All capitalized terms used but not defined in this Stipulation and Order shall have the meanings given to such terms in the Stock Purchase Agreement dated as of September 15, 2000 (the "Stock Purchase Agreement").

2.     The Net Asset Value Objections Nos. 1, 3, 5, 7, 16, 17, 18, 19a and 20a, 20d, 20e, 20g, 20l, 20m, 20p and 20q, as set forth in Exhibit 1 annexed hereto, and Net Revenue Objections Nos. 29a, 30a, 30b, 30c, 30d, 30e, 31, 31a, 32 and 33, as set forth in Exhibit 1 annexed hereto, will be adjudicated in the Independent Accountant Proceeding.

3.     Except as set forth herein or unless otherwise agreed to by the parties, the Independent Accountant Proceeding will be conducted in accordance with the procedures and time frames set forth in Section 1.04 of the Stock Purchase Agreement. The Independent Accountant Proceeding will be deemed to commence on September 30, 2004, and will be concluded within 30 days thereafter.

4.      From the date of this Stipulation and Order and through September 29, 2004, the parties will agree on the identity of the Independent Accountant and will retain the Independent Accountant to commence work on September 30, 2004.

5.      The parties agree that Westmoreland may obtain the following documents in discovery prior to the commencement of the Independent Accountant Proceeding, but only to the extent that such documents exist: (i) supporting schedules or calculations to the Interim Financial Statements; and (ii) any documents created by, or furnished to, David Smith, to the extent those documents relate to the calculation of the amounts reflected in the objections set forth in paragraph 1 above, and to the extent those documents were created prior to the date of the issuance of the Closing Date Certificate to Westmoreland. Entech will not be required to provide to Westmoreland any such documents that are legitimately protected by the attorney-client privilege or that legitimately constitute work product.

6.      The parties agree that, notwithstanding the outcome of the Independent Accountant Proceeding, no party will seek to obtain any monetary award against the other until the conclusion of both the Independent Accountant Proceeding and the Action, including, without limitation, the full and complete adjudication of all of the Indemnification Claims (as hereinafter defined) to be asserted as Counterclaims in the Action, which Action and Indemnification Claims will be litigated in the United States District Court for the District of Delaware, as set forth in paragraph 7 below.

7.      With respect to all of the remaining objections set forth in Exhibit 1 annexed hereto (and any objections that the Independent Accountant does not address and resolve on the merits) and all of Westmoreland's Pension Claims as set forth in the Proof of Claim (collectively, the "Indemnification Claims"), the parties agree that those objections will be

3

asserted as an Answer and Counterclaims in the Action within 20 days after the date of this Stipulation and Order. The parties further agree that they will jointly seek to withdraw the reference with respect to the Action and the Indemnification Claims to the United States District Court for the District of Delaware by filing, within 10 days after this Stipulation is So Ordered, a Stipulation to so withdraw the reference.

        8.     The automatic stay is hereby lifted to enable the parties to commence the Independent Accountant Proceeding and to file the Indemnification Claims in the Action.

        9.     Plaintiff reserves its right to claim after the conclusion of the Independent Accountant Proceeding and the Action, including the adjudication of Indemnification Claims set forth above, that any monetary award in its favor, if any, need not wait until the conclusion of the McGreevey Litigation as it relates to Westmoreland, and Westmoreland reserves the right to contest such claim and to contend that, among other things, its Proof of Claim and any amounts owed to Entech, if any, cannot be determined until the conclusion of the McGreevey Litigation as to Westmoreland.

Dated:       August 19, 2004

                    YOUNG CONAWAY STARGATT & TAYLOR LLP

                    Robert S. Brady (No. 2847)
                    Matthew P. Denn (No. 2985)
                    Edmon L. Morton (No. 3856)
                    The Brandywine Building, 17th Floor
                    1000 West Street
                    Wilmington, DE 19801
                    (302) 571-6600

Attorneys for Plaintiff

THE BAYARD FIRM

_____

Neil B. Glassman
Steven M. Yoder
Christopher A. Ward (No. 3877)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
(302) 655-5000


-and-

WINSTON & STRAWN LLP
David Neier
C. MacNeil Mitchell
Piero Tozzi
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700
Attorneys for Plaintiff-Intervenor


POTTER ANDERSON & CORROON LLP

*filed w/ permission*

Laurie Selber Silverstein
_____
Laurie Selber Silverstein
Hercules Plaza
1313 N. Market Street
Wilmington, DE 19899
(302) 984-6000

-and-

SIDLEY AUSTIN BROWN & WOOD LLP
John G. Hutchinson
Lee Attanasio
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
Attorneys for Defendants

So ordered this 9th day of Sept 2004

United States Bankruptcy Judge

NY1 5574557v1

# Exhibit 1

**Westmoreland Coal Company**
**Net Asset Value Objections**
**AR-Employees**
**April 30, 2001**

| Objection # | Entity | Description | Amount |
|---|---|---|---|
| 1 | NWR | Student loan receivable from Teresa G. Livingston. Based upon the fact that she is no longer an employee, payments are currently past due, and she has asserted a claim against NWR for wrongful termination, the recovery of this amount is unlikely. | (816) |
| 3 | WECO | Student loans receivable from Floyd Hiwalker. Based upon the fact that he is no longer an employee and payments are currently past due, the recovery of this amount is unlikely. | (2,550) |
| | | Total Amount Subject to Objection | (3,366) |

**Westmoreland Coal Company**
**Net Asset Value Objections**
**Notes Receivable**
**April 30, 2001**

| Objection # | Entity | Description | Amount |
|---|---|---|---|
| 6 | WSCLLC | SGI – 12% Note Currently Past Due. Due to delinquency of payments, the recoverability of this amount is unlikely. | (40,500) |
| | | Total Amount Subject to Objection | (40,500) |

**Westmoreland Coal Company**
**Net Asset Value Objections**
**M&S Inventory**
**April 30, 2001**

| Objection # | Entity | Description | Amount |
|---|---|---|---|
| 6 | WECO | Slurry inventory. This inventory has been on hand since July 1997 and has proven to be unsalable. The Western Energy accounting staff has suggested writing this inventory off since at least 1999. | (163,106) |
| | | Total Amount Subject to Objection | (163,106) |

**Westmoreland Coal Company**
**Net Asset Value Objections**
**Prepayments and Other**
**April 30, 2001**

| Objection # | Entity | Description | Amount |
|---|---|---|---|
| 7 | WECO | Surety Bonds. This bond was not transferred to Westmoreland and any unamortized premium should be returned to Entech when the policy is cancelled. | (120,323) |
| | | Total Amount Subject to Objection | (120,323) |

Westmoreland Coal Company
Net Asset Value Objections
PP&E, net
April 30, 2001

| Objection # | Entity | Description | Amount |
|---|---|---|---|
| 8 | WECO | Exploration costs capitalized during mine development stage and reserve delineation. Recoverability of capitalized costs is unsupportable under US GAAP prior to determining the existence of a commercially minable deposit, as contemplated by SEC Industry Guide 7 for a mining company. Industry Guide 7 states that for a deposit to be commercially minable, it must be geologically proven, it must be economical, and it must be legally extractable. As such, costs incurred to determine such geological information and economics should be expensed as incurred under US GAAP. The amount of Westmoreland's objection represents the capitalized exploration costs, less the accumulated depletion of such costs through 4/30/01. | (1,864,012) |
| 9 | NWR | Exploration costs capitalized during mine development stage and reserve delineation. Recoverability of capitalized costs is unsupportable under US GAAP prior to determining the existence of a commercially minable deposit, as contemplated by SEC Industry Guide 7 for a mining company. Industry Guide 7 states that for a deposit to be commercially minable, it must be geologically proven, it must be economical, and it must be legally extractable. As such, costs incurred to determine such geological information and economics should be expensed as incurred under US GAAP. The amount of Westmoreland's objection represents the capitalized exploration costs, less the accumulated depletion of such costs through 4/30/01. | (2,428,175) |
| 10 | NWR | Capitalized costs relating to the Dew property. The Dew property represents an area which is not in the current mine plan, nor has this area ever been included in the mine plan. Under current mine plans and contract terms, the recoverability of this cost is unsupportable under US GAAP (SFAS 121) and should have been expensed as incurred. The amount of Westmoreland's objection represents the net book value of the costs in question as of 4/30/01 | (59,899) |
| | | Total Amount Subject to Objection | (4,352,086) |

**Westmoreland Coal Company**
**Net Asset Value Objections**
**Advanced Coal Royalties**
**April 30, 2001**

| Objection # | Entity | Description | Amount |
|---|---|---|---|
| 11 | NWR | Advanced Dew Royalty. The Dew lease represents an area which is not in the current mine plan, nor has this area ever been included in the mine plan. Under current mine plans and contract terms, the recoverability of this cost is unsupportable under US GAAP (SFAS 121) and should have been expensed as incurred. | (121,828) |
| | | Total Amount Subject to Objection | (121,828) |

**Westmoreland Coal Company**
**Net Asset Value Objections**
**Overburden Removal**
**April 30, 2001**

| Objection # | Entity | Description | Amount |
|---|---|---|---|
| 12 | WECO | Area C Overburden Removal. WECO has historically accounted for overburden removal costs by deferring stripping costs until such time that the coal under the overburden was produced, so as to properly match the overburden removal costs with the related revenue. Under the terms of the revised coal supply agreement with Units 3&4 covering Area C production and effective July 1, 2000, overburden removal costs in Area C are reimbursed as they are incurred. In order to comply with GAAP, deferring stripping costs for overburden removal in Area C should have been discontinued at that time. By not doing so, the matching principal integral to GAAP accounting has been violated and Area C overburden removal costs should be expensed as incurred. The balance at 4/30/01 does not represent an asset as defined by GAAP. This conclusion is consistent with recommendations made by the WECO accounting staff to Montana Power management in July 2000. | (1,538,290) |
| | | Total Amount Subject to Objection | (1,538,290) |

**Westmoreland Coal Company**
**Net Asset Value Objections**
**NWR Reclamation Issues**
**April 30, 2001**

| Objection # | Entity | Description | Amount |
|---|---|---|---|
| | NWR | | |

Westmoreland's objection relates to the general accounting methods used for accounting for reclamation activities at Northwestern Resources and involves three separate accounts identified in the Closing Date Certificate. Under the terms of the revised LSA with Reliant, subsequent to July 2002, reclamation costs incurred while the mine remains in production are not reimbursable. Reliant will not reimburse NWR for costs expected to be incurred by NWR for reclamation after July 2002 and the projected amount of these costs therefore is not a valid receivable. Further, the costs to be incurred subsequent to the mine completing production are to be paid by Reliant, and are not an obligation of NWR.

| 13 | NWR | Base Reclamation Receivable. This balance should represent the amount of reclamation costs to be paid by Reliant to NWR for reclamation conducted by NWR prior to July 2002. The amount recorded in this account is greater than the costs of the reclamation work that will be conducted by NWR prior to July 2002, as projected by NWR's engineering staff. | (1,887,846) |

| 14 | NWR | Final Reclamation Receivable. This balance should represent the amount of reclamation costs to be paid by Reliant to NWR for reclamation conducted by NWR prior to July 2002. The amount recorded in this account is greater than the costs of the reclamation work that will be conducted by NWR prior to July 2002, as projected by NWR's engineering staff. | (11,935,430) |

| 15 | NWR | Mining Reclamation Costs Accrued. This balance should represent the accrual for the cost of the reclamation to be conducted by NWR prior to the completion of production, because the cost of reclamation to be conducted after the completion of production is the obligation of Reliant. The amount recorded in this account is greater than the costs estimated to be expended during that period, as projected by NWR's engineering staff. | 3,964,315 |

**Westmoreland Coal Company**
**Net Asset Value Objections**
**Accounts Payable - Unrelated**
**April 30, 2001**

| Objection # | Entity | Description | Amount |
|---|---|---|---|
| 16 | WECO | Dispute over intangible costs under Colstrip Units 3&4 contract. Based on the results of a report issued by KPMG, WECO is more likely than not to have to refund the 3&4 buyers for the intangible costs charged to them since June 2000. The amount of Westmoreland's objection represents the ROI for the intangibles in question from June 2000 to April 2001. | (425,546) |
| 17 | WECO | Claim by Puget over Mine Plan costs. Puget filed a claim totaling approximately $2.5 million. WECO offered to settle the claim for $100,000. That offer was refused and, as such, it appears that the ultimate outcome of this claim will be greater than $100,000, which is also the amount of the reserve recorded in WECO's balance sheet. Based upon discussions with counsel and review of pertinent information, US GAAP would require the recording of an additional contingent liability under SFAS 5 in the amount of $150,000. | (150,000) |
| 18 | NWR | Reliant settlement relating to SFAS 112 costs. To date, NWR has passed through $857,418 of SFAS 112 costs in addition to the actual SFAS 112 claims/benefits payments. Based on the results of a recent audit by Reliant, NWR is more likely than not going to have to refund the amount of pass-through costs in excess of actual claims/benefit payments. | (857,418) |
|  |  | Total Amount Subject to Objection | (1,432,964) |

**Westmoreland Coal Company**
**Net Asset Value Objections**
**Deferred Taxes - Current**
**April 30, 2001**

| Objection # | Entity | Description | Amount |
|---|---|---|---|
| 19a | WECO | A/P Entech - Pensions.  This account should have been excluded from the Net Asset Value included in the Closing Date Certificate. | (477,922) |
| 19b | WECO | Other Taxes Payable.  We have requested additional explanations as to the tax accounting for these items and the related deferred tax asset.  Our objection is subject to receiving adequate explanations. | (3,856,319) |
| 19c | Basin | Vacation Liability.  In spite of a $0 book balance, there is a deferred tax asset recorded for this item.  We have requested additional explanation as to the timing of this future deduction. | (60,907) |
| | | Total Amount Subject to Objection | (4,395,148) |

Westmoreland Coal Company
Net Asset Value Objections
Deferred Taxes–Noncurrent
April 30, 2001

| Objection # | Entity | Description | Amount |
|---|---|---|---|
| 20a | WECO | Long-Term Debt - Entech ESOP. This account should have been excluded from the Net Asset Value included in the Closing Date Certificate | (181,091) |
| 20b | WECO | Deferred Reclamation. Our objection relates to the amount by which the gross deferred tax asset exceeds the obligation recorded on the balance sheet. | (978,607) |
| 20c | WECO | Deferred Post Retirement and Post Employment Benefits. Our objection relates to the amount by which the gross deferred tax asset exceeds the obligation recorded on the balance sheet. | (204,301) |
| 20d | WECO | Deferred MPC/ENT Foundation (ST and LT). This account should have been excluded from the Net Asset Value included in the Closing Date Certificate | (11,373) |
| 20e | NWR | Long-Term Debt - Incentive Stock, Broadbased EVA and Entech ESOP. These accounts should have been excluded from the Net Asset Value included in the Closing Date Certificate | (875,426) |
| 20f | NWR | Other Deferred Credits. Our objection relates to the amount by which the gross deferred tax asset exceeds the obligation recorded on the balance sheet. | (800,808) |
| 20g | NWR | Texas Franchise Tax Deferred. This account should have been excluded from the Net Asset Value included in the Closing Date Certificate | (110,138) |
| 20h | NWR | Advance Royalties. We have requested additional explanation regarding the tax accounting for royalty payments. We object to the tax basis reported for advance royalties and the related deferred tax asset, pending receipt of adequate explanation. | (4,458,991) |
| 20i | NWR | Deferred Revenue. Our objection relates to the amount by which the gross deferred tax asset exceeds the obligation recorded on the balance sheet. | (184,443) |
| 20j | Basin | Plant. There is a significant deferred tax asset recognized in spite of no book value remaining and a March 2001 workpaper provided to us which reflects only $387 in tax basis. We object to the recognition of this asset. | (2,416,619) |

Westmoreland Coal Company
Net Asset Value Objections
Deferred Taxes-Noncurrent

| | | | |
|---|---|---|---|
| 20k | Basin | Accrued Maintenance and Post Employment Benefits. In spite of $0 book balances, there is a deferred tax asset recorded for these items. We have requested additional explanation as to the timing of these future deductions. | (55,843) |
| 20l | Basin | State Corporate License Tax. This account should have been excluded from the Net Asset Value included in the Closing Date Certificate | (104,183) |
| 20m | Syncoal | State Corporate License Tax. This account should have been excluded from the Net Asset Value included in the Closing Date Certificate | (173,060) |
| 20n | NCE | Provision for Future Operating Losses. Our objection relates to the amount by which the gross deferred tax asset exceeds the obligation recorded on the balance sheet. | (68,535) |
| 20o | NCE | Deferred Revenue. In spite of $0 book balances, there is a deferred tax asset recorded for these items. We have requested additional explanation as to the timing of these future deductions. | (405,878) |
| 20p | NCE | State Corporate License Tax. This account should have been excluded from the Net Asset Value included in the Closing Date Certificate | (42,155) |
| 20q | Horizon | State Corporate License Tax. This account should have been excluded from the Net Asset Value included in the Closing Date Certificate | (288,988) |
| 20r | Horizon | Other Current Liabilities, LT Debt-Incent. Stock, Deferred Post Retirement/Employment and Deferred Pension. In spite of $0 book balances, there is a deferred tax asset recorded for these items. We have requested additional explanation as to the timing of these future deductions. | (99,084) |
| 20s | Horizon | Plant. We have requested additional information regarding the tax accounting for both "plant" and for the long-term receivable recorded. We object to the deferred tax asset recorded, pending its adequate explanation. | (215,621) |

Total Amount Subject to Objection    (11,575,126)

**Westmoreland Coal Company**
**Net Asset Value Objections**
**Other Deferred Credits**
**April 30, 2001**

| Objection # | Entity | Description | Amount |
|---|---|---|---|
| 23a | WECO | SFAS 106 obligation  Based on a review by our consulting actuary, we object to the methods utilized by your actuary in preparing the valuation of this obligation. The objection relates to the methodology utilized for measuring historical claims experience.  Your actuaries used a blended population of active and retiree claims.  As this is a retiree benefit obligation, our actuaries insist on using only retiree claims.  By doing so, the obligaiton would be higher by the amount of our objection. | (175,000) |
| | | Total Amount Subject to Objection | (175,000) |

**Westmoreland Coal Company**
**Net Asset Value Objections**
**March 2001**
**April 30, 2001**

| Objection # | Entity | Description | Amount |
|---|---|---|---|
| 29a | WECO | Income tax expense. The effective rate recorded for January and February was approximately 30%. We have inquired as to the 48% effective tax rate recorded in March. Our objection represents the amount by which the income tax expense would need to be reduced to derive a 30% effective tax rate. | (528,758) |
| | | Total Amount Subject to Objection | (528,758) |

**Westmoreland Coal Company**
**Net Revenue Amount Objections**
**April 2001**
**April 30, 2001**

| Objection # | Entity | Description | Amount |
|---|---|---|---|
| 30a | WECO | Income tax benefit. Included in the income tax benefit for April are two adjustments for prior year transactions - one for "1994-1995 - IRS and Audit Adjustment" and one for "2000 - Final Est. Revised". We object to the inclusion of these expenses in the April 2001 income statement. | (566,318) |
| 30b | WECO | Income tax benefit. As discussed in objection 29a, the historical effective tax rate appears to be approximately 30%. Our objection represents the amount by which the income tax benefit would need to be increased to derive a 30% effective tax rate, prior to giving effect for the amounts discussed in objection 30a. | (24,071) |
| 30c | NWR | Income Tax Expense. The historical effective tax rate appears to be approximately 28%. Our objection represents the amount by which the income tax expense would need to be decreased to derive a 28% effective tax rate (calculated based on 2001 Final Estimate - April column). | (504,890) |
| 30d | NWR | Income tax expense. Included in the income tax expense for April is an adjustment for "2002 Estimated Texas Accrual". We object to the inclusion of these expenses in the April 2001 income statement. | (245,426) |
| 30e | Horizon | Income tax expense. In spite of $0 pre-tax earnings, there is income tax expense recorded, apparently for "2000 FASB 109 Final Estimate". We object to the inclusion of these expenses in the April 2001 income statement. | (48,868) |
| 31 | Basin | Adjustment to SFAS 106 obligation. This amount represents the adjustment to the SFAS 106 obligation relating to a contested group of participants. The group has been contested for a number of years. The change in the obligation, and the related charge to the p&l, should have been recognized in a prior period. In 1999, a summary judgment was issued in favor in the contested group, clearly indicating that the obligation to the contested group represented a SFAS 5 liability at that time. Under US GAAP, the increase in the obligation to recognize the benefits for a contested group of participants should not be reported in the 2001 income statement. | (4,000,377) |
| 31a | Basin | To reflect the tax effect of objeciton 31 | 1,520,143 |

Westmoreland Coal Company
Net Revenue Amount Objections
April 2001
April 30, 2001

| | | | |
|---|---|---|---|
| 32 | WECO | Reverse gain on sale of equipment #190, 191 and 193. This gain was booked in 2000 when three bulldozers were sold to "Cyber Sales". Although a deposit was received, the assets were never delivered and revenue recognition criteria under US GAAP were not met. In 2001, it became clear that Cyber Sales would be unable to deliver the sales price and the gain was reversed. Our objection is based on the fact that the gain was improperly booked in 2000 and the charge in April 2001 to reverse such gain is also improper. | (76,266) |
| 33 | WECO | Pension liability true-up for pre-2001 periods. In April 2001, WECO took a charge of $481,245 to properly reflect its pension obligation as of April 30, 2001. Of that total, $306,780 was designated as "pre-2001 true-ups". This amount should have recognized as an obligation as of December 31, 2000, and should not be reflected as an expense in 2001. | (305,780) |
| | | Total Amount Subject to Objection | (4,252,852) |