# EXHIBIT No. 7

Case 1:04-cv-01336-SLR   Document 42-8   Filed 05/17/2005   Page 1 of 9

**Westlaw.**

Not Reported in F.Supp.2d

2000 WL 654286 (D.Del.), 2000-1 Trade Cases P 72,919

(Cite as: 2000 WL 654286 (D.Del.))

Page 1

▷

**Motions, Pleadings and Filings**

United States District Court, D. Delaware.
UNITED STATES OF AMERICA, Plaintiff,
v.
DENTSPLY INTERNATIONAL, INC., Defendant.
**No. Civ.A. 99-5 MMS.**

May 10, 2000.
Carl Schnee, United States Attorney, and Judith M. Kinney, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware, Mark J. Botti, William E. Berlin, Jon B. Jacobs, Sanford M. Adler, Frederick S. Young, Dionne C. Lomax, and Eliza T. Platts-Mills, United States Department of Justice, Antitrust Division, Washington, D.C., for plaintiff, of counsel.

James P. Hughes, Jr., and John W. Shaw, of Young, Conaway, Stargatt & Taylor, Wilmington, Delaware, Margaret M. Zwisler, Richard A. Ripley, Kelly A. Clement, and Eric J. McCarthy, of Howrey & Simon, Washington, D.C., for defendant Dentsply International, Inc. , of counsel.

*MEMORANDUM OPINION ON PLAINTIFF'S MOTION TO COMPEL*

SCHWARTZ, Senior J.

I. Introduction
*1 On January 5, 1999, the United States Department of Justice ("United States" or "government") filed a complaint against Dentsply International, Inc. ("Dentsply"), seeking equitable and other relief for Dentsply's alleged violations of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and § 3 of the Clayton Act, 15 U.S.C. § 14, *inter alia,* through exclusive dealing arrangements that effectively deny effective distribution outlets to competing manufacturers of prefabricated artificial teeth. Docket Item (D.I.) 1. Pursuant to Fed.R.Civ.P. 37(a) and D. Del. L.R. 7.1.1, the United States filed a motion to compel Dentsply to produce requested information related to its competitive position in foreign markets. D.I. 176 ("Motion to Compel"). The United States contends this information is directly relevant to the action and, therefore, is discoverable under Fed.R.Civ.P. 26(b)(1). Dentsply counters that its foreign market position is not relevant to the claims and defenses in this case and that the burden and expense of the foreign market discovery will outweigh its likely benefit. Although the Court has some concern about the ultimate admissibility and weight of the information the United States seeks to discover, the information has the potential to be relevant to the intent of the exclusive dealer criteria and its impact in the United States market place. In light of the liberal thrust of the discovery rules, limited foreign discovery by the United States will be permitted.

II. Factual and Procedural Background
The United States' complaint alleges Dentsply has engaged, and continues to engage, in various actions to unlawfully maintain monopoly power in the market for prefabricated, artificial teeth. The government alleges Dentsply denies competing manufacturers of artificial teeth access to independent distributors (known in the industry as "dealers") of artificial teeth in the United States, in violation of §§ 1 and 2 of the Sherman Act and § 3 of the Clayton Act. The government alleges the dealers are an essential link in the existing distribution network if manufacturers of artificial teeth are to effectively distribute their products in the United States. It further complains that Dentsply has entered into restrictive agreements and taken other actions to induce and compel dealers not to carry certain competing lines of artificial teeth. As a result of Dentsply's actions, particularly "Dealer Criterion Number 6," [FN1] the United States contends rival manufacturers of artificial teeth have

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 2

2000 WL 654286 (D.Del.), 2000-1 Trade Cases P 72,919

**(Cite as: 2000 WL 654286 (D.Del.))**

been foreclosed from selling their teeth through the large majority of outlets that carry artificial teeth. [FN2] The United States asserts this reduces competition among artificial teeth manufacturers and results in higher prices, fewer choices, less market information, and lower quality artificial teeth. In its complaint, the United States alleges that both domestic and foreign artificial tooth manufacturers compete with Dentsply more successfully outside the United States, D.I. 1, ¶¶ 11-13, where, the United States contends, their access to dealers is not restricted by Dentsply.

> FN1. "Dealer Criterion Number 6" is Dentsply's requirement that dealers carrying its artificial teeth "may not add further tooth lines to their product offering." D.I. 1, ¶ 22.

> FN2. The United States' complaint states that almost all artificial teeth sold in this country are used by dental laboratories to make dentures. Although some manufacturers of artificial teeth sell their product directly to dental laboratories, dealers (also referred to in the complaint as "dental laboratory dealers," "independent dealers," and "independent distributors") are the primary channel through which dental laboratories purchase artificial teeth.

*2 The United States has sought to obtain information and documents that Dentsply possesses regarding its competitive position and business strategy in foreign markets in a variety of ways at several different times. Dentsply has objected to production of such information, but has produced limited documents and permitted questioning of some of its officers and employees on these issues at their depositions.

First, on March 2, 1999, the United States served on Dentsply its First Request for Production of Documents ("First Document Request"), which included document requests 22 and 23 pertaining to Dentsply's competitive position in foreign markets. [FN3] D.I. 178 at A-16. In Dentsply's April 1, 1999 Objections and Responses to Plaintiff's First Document Request, Dentsply asserted a general objection to the United States' document request definition of "Dentsply" as including all domestic and foreign subsidiaries and affiliates. The ground of the objection was that such entities had no relation to the litigation. *Id.* at A-23. Dentsply also objected to Requests No. 22 and 23 on the grounds that the United States should have requested documents pursuant to the discovery procedures of the forum countries where the documents were located. However, Dentsply further stated that, subject to its general objections, it would "produce responsive documents maintained in the United States located after a reasonable search." [FN4] *Id.* at A-40-41. Subsequently, by letter dated April 27, 1999, Dentsply informed the United States it would not produce any documents responsive to Request Nos. 22 or 23, whether maintained inside or outside the United States on the ground that Dentsply's foreign activities were not relevant to this action and the requested discovery would therefore be unduly burdensome. D.I. 190, Exhibit (Ex.) A.

> FN3. The pertinent requests sought:
> 22. All documents that report, describe, summarize, analyze, discuss or comment on competition from, or the marketing or sales strategies, marked shares o[r] projected market shares, market conditions or the profitability of, any company, including your company, in the supply, manufacture, distribution or sale of prefabricated artificial teeth or dentures in any country other than the United States, including all strategic plans, long-range plans and business plans of any such company.
> 23. All documents that report, describe, summarize, analyze, discuss or comment on the following for any country outside of the United States:
> a. the methods, channels, strategies, means, or policies of distributing prefabricated artificial teeth;
> b. the selection, retention, monitoring, supervision or termination of dealers or dental laboratories generally or any specific dealer or dental laboratory;

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 3
2000 WL 654286 (D.Del.), 2000-1 Trade Cases P 72,919
**(Cite as: 2000 WL 654286 (D.Del.))**

    c. exclusive arrangements with dealers, dental laboratories, or dentists; or
    d. the utility, advantages, or disadvantages of distributing teeth through dealers, including the various services dealers provide to dental laboratories or their suppliers of dental products, including your company.
D.I. 178 at A-16.

    FN4. The Court disagrees with the United States' assertion that Dentsply waived its relevance objections to interrogatories 22 and 23 in its April 1, 1999 response. Dentsply's general objection to providing any information regarding Dentsply's foreign affiliates or subsidiaries, incorporated by reference in the specific objections to interrogatories 22 and 23, was a sufficient assertion of a relevance objection. *See id.* at A-23, 40-41.

After various attempts by the parties to resolve the dispute, the United States, by letter dated May 3, 1999, informed Dentsply that it would ask the Court to compel production of documents responsive to Requests No. 22 and 23 regarding international matters, as well as to certain other requests, if the parties were unable to reach an agreement. D.I. 178, at A-52-53. Dentsply responded that it "maintain[ed] its objections" to the international discovery. D.I. 190, Ex. C. During a meet and confer between the parties on May 20, 1999, Dentsply agreed "that if [its] search of Dentsply's active files located documents from the international divisions that were responsive to an outstanding request," Dentsply would produce those documents. *Id.,* Ex. D. "Dentsply's active files" encompassed "files from Dentsply's corporate offices, excluding the warehouse archives, that [Dentsply had] reason to believe might contain documents responsive to document requests to the extent they pertain to Dentsply's domestic artificial tooth business operations." *Id.,* Ex. E. The United States agreed to review those documents to see whether they contained the information the United States was seeking before deciding whether it was necessary to compel production of additional documents. *See* D.I. 178, at A-54-56.

*3 Contemporaneous with the parties' dispute over documents, on April 16, 1999, the United States served its First Set of Interrogatories on Dentsply, which included one interrogatory seeking Dentsply's annual unit and dollar sales of artificial teeth in countries other than the United States. [FN5] *Id.* at A-65. On May 17, 1999, Dentsply refused to answer this interrogatory on the ground that such information is beyond the scope of the subject matter of this antitrust litigation, and would impose an undue burden and expense on Dentsply. *Id.* at A-73.

    FN5. The relevant interrogatory requested:
    2. State your company's annual unit and dollar sales, separately for each type or line of prefabricated artificial teeth your company sold or manufactured in any country other than the United States, separately for each country, and separately for 1985 and each subsequent year. *Id.* at A-65.

During the depositions of at least six Dentsply employees, taken by the United States over a period from August 19, 1999 to November 5, 1999, the United States asked questions regarding Dentsply's market shares and means of distribution in other countries, as well as other international issues. Dentsply did not object to the relevance of any question on international facts at any of these depositions, and its employees and officers provided answers to those questions. [FN6] Subsequently, Dentsply asserted its relevancy objection to international discovery during the deposition of Chris Clark, former Vice President and General Manager of Dentsply's Trubyte division, on December 15, 1999. When the topic of Dentsply's international operations was broached, counsel for Dentsply indicated Mr. Clark would not be permitted to answer any questions regarding international issues.

    FN6. The United States argues that Dentsply did not make a relevancy objection to any of the above-cited

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 4
2000 WL 654286 (D.Del.), 2000-1 Trade Cases P 72,919
**(Cite as: 2000 WL 654286 (D.Del.))**

deposition testimony and that the United States is entitled to discovery requesting information regarding these issues "to clarify, confirm, or supplement the selected information Dentsply has produced." D.I. 177, at 11. This argument is not persuasive, because relevancy objections need not be raised at depositions. *See* Fed.R.Civ.P. 32(d)(3)(A).

Pursuant to Fed.R.Civ.P. 30(b)(6), on December 7, 1999, the United States noticed a deposition requesting Dentsply to produce a witness to testify on Dentsply's competitive position in Canada, Australia, and several European countries. D.I. 161. Dentsply informed the United States on December 17, 1999, that it would not produce any witness to testify about international facts based on its standing objection to international discovery. During the parties' meet and confer, the United States offered to narrow the information sought. Dentsply maintained its relevancy objection. The United States' Motion to Compel international discovery followed.

III. Discussion
The United States requests the Court to enter an order compelling Dentsply to produce the following information relating to its competitive position in the prefabricated artificial teeth market in Canada, Australia, England, France, and Germany:
(1) [Dentsply's] market share in each of its two most recent, complete fiscal years, along with any estimates of the market shares of its competitors;
(2) annual strategic or business plans of each of its two most recent, complete fiscal years;
(3) a statement of whether it has a policy that is the same as, or similar to, its Dealer Criteria # 6 in the United States, which provides that its dealers "may not add further tooth lines to their product offering," and, if not, a full and complete description of why it does not have such a policy; and
(4) any documents created since January 1, 1990 discussing any plan or proposal to adopt a policy that is the same as, or similar to, its Dealer Criteria # 6 in the United States.
*4 D.I. 176 (attached proposed Order). Each of the above items is encompassed by one of the discovery requests already served by the United States. [FN7] Aside from the documents requested in item number 4, the United States will accept production of the requested information in the form most convenient to Dentsply, be it as an interrogatory answer, responsive documents, or the deposition testimony of a person who can provide the information requested. *Id.*

   FN7. The foreign discovery requested in the Motion to Compel is more limited than the original discovery requests.

A. Legal Standard

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, parties may obtain discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). Discoverable material is not limited to that which would be admissible at trial, but also includes any non-privileged information that "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Relevance is a fact-specific inquiry and, therefore, the determination of relevance lies within the trial court's broad discretion. *See, e.g., Watson v. Lowcountry Red Cross,* 974 F.2d 482, 489 (4th Cir.1992); 6 James Wm. Moore et al., Moore's Federal Practice § 26.41[2] (3d ed. 1999) ("Moore's"). Relevance has been construed liberally under Rule 26(b)(1), to "encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978); *see also In re ML-Lee Acquisition Fund II,* 151 F.R.D. 37, 39 (D.Del.1993) ("[D]iscovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." (quotation omitted)); *Pennwalt Corp v. Plough, Inc.,* 85 F.R.D. 257, 259 (D.Del.1979); Moore's § 26.41[2], at 26-89. Liberal discovery is particularly appropriate in a government antitrust suit because of the important public interest involved. *See* Moore's § 26.46[1]; *see also id.* §

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 5
2000 WL 654286 (D.Del.), 2000-1 Trade Cases P 72,919
**(Cite as: 2000 WL 654286 (D.Del.))**

26.41[1] ("[I]n antitrust and other complex litigation, discovery is expected to be somewhat of a 'fishing expedition."' (citation omitted)).

Although courts should liberally construe relevancy in the discovery context, discovery is not without bounds. The Federal Rules of Civil Procedure allow a court to limit discovery that would otherwise be permissible under Rule 26(b)(1) on a showing that the burden or expense associated with producing the information outweighs the likely benefit to the requesting party in obtaining the discovery. *See* Fed.R.Civ.P. 26(b)(2)(iii). [FN8] This provision was added to Rule 26(b) to "guard against redundant or disproportionate discovery." *Id.* (Advisory Committee Notes to the 1983 Amendment). Rule 26 vests the district courts with broad discretion to tailor discovery. *See Crawford--El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 1597 (1998).

> FN8. Fed.R.Civ.P. 26(b) states in relevant part:
> (2) Limitations.... The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rules shall be limited by the court if it determines that:
> ...
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

B. Relevance of Discovery Sought by the United States

*5 The United States asserts the information it seeks to compel is relevant to a comparison between Dentsply's market share in the United States and in five other countries that have "mature markets" like the United States and where it believes Dentsply does not restrict its dealers from carrying or adding competing tooth lines. The United States has obtained through third party discovery information supporting its belief that Dentsply does not use any restrictive dealer criteria akin to Dealer Criteria No. 6 in other countries, D.I. 178, at 82-83, 84-87, 88-89, 96, and that Dentsply's market share in these countries is lower, sometimes substantially lower, than its market share in the United States. *Id.* at 90-92, 93-96. D.I. 205, at 4. In its discovery requests for foreign market information, the United States seeks confirmatory and supplemental information on these issues. The government maintains the information it seeks is relevant because it is probative of the intent and competitive effects of Dentsply's Dealer Criteria No. 6 in the United States.

Dentsply counters the foreign market data is irrelevant in this litigation where the relevant market has been defined as the United States. Dentsply argues that the facts relevant to the United States' claim that Dentsply has violated antitrust laws by imposing a condition on its United States dealers that has foreclosed competitors from entering the artificial tooth market in the United States, are whether and to what extent competitive artificial teeth entered the United States market and what effect, if any, Dentsply's United States distribution policy has had on the ability of competitive artificial teeth to enter the United States market. Dentsply contends that the success of competitors in foreign markets, even if true, is simply not a fact of consequence in determining whether there is a causal relationship between Dentsply's distribution policy and competitors' performance in the United States. D.I. 190, at 8. [FN9] Given the Court's duty to construe relevancy broadly at the discovery stage, *see, e.g., Oppenheimer Fund, Inc.,* 437 U.S. at 351; *In re ML-Lee Acquisition Fund II,* 151 F.R.D. at 39; *Pennwalt Corp,* 85 F.R.D. at 259, it disagrees.

> FN9. In support of its argument, Dentsply cites Fed. R. Evid. 402 (presumably Dentsply intended to cite Fed.R.Evid. 401) for the definition of relevance. D.I. 190, at 8. However, as discussed *supra,* section III. A., relevance is construed more broadly at the discovery stage than at trial.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 6
2000 WL 654286 (D.Del.), 2000-1 Trade Cases P 72,919
**(Cite as: 2000 WL 654286 (D.Del.))**

The fact that the United States is the relevant market in this case does not necessarily limit discovery to the United States. *See generally Kellam Energy, Inc. v. Duncan,* 616 F.Supp. 215, 219 (D.Del.1985) (antitrust case stating that "regardless of how [the] geographic market is eventually defined in this action, the boundaries of that market do not set the geographic limit of discovery"). A "general policy of allowing liberal discovery in antitrust cases" has been observed by this Court because "broad discovery may be needed to uncover evidence of invidious design, pattern, or intent." *Id.* at 217 (citations omitted).

Dentsply's intent in adopting Dealer Criteria No. 6 is relevant to assessing the legality of Dentsply's conduct under sections 1 and 2 of the Sherman Act. *See, e.g., Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 602 (1985) (section 2); *Orson, Inc. v. Mirimax Film Corp.,* 79 F.3d 1358, 1367 (3d Cir.1996) (section 1). In this case, a comparison between Dentsply's distribution policies in this country and in other markets could be probative of the purpose and significance of Dealer Criteria No. 6 in the United States. *Cf. Aspen Skiing Co.,* 472 U.S. at 603-04 & n. 30 (Without engaging in an exhaustive comparative analysis, the Court looked to other geographic markets and defendant's conduct in other markets in determining whether the defendant's conduct was "a decision of a monopolist to make an important change in the character of the market."). Moreover any discussions surrounding consideration by Dentsply of whether to employ distribution criteria similar to Criteria No. 6 in other countries clearly could be probative of the intent of Criteria No. 6 in the United States. Therefore, the Court concludes that items two through four of the United States' proposed Order accompanying its Motion to Compel may produce information relevant to the issue of Dentsply's purpose in adopting Dealer Criteria No. 6.

*6 The United States in this case desires that the Court assess the competitive effects of Dealer Criteria No. 6 by comparing the market shares of Dentsply and its primary competitors in countries where the allegedly restrictive Dealer Criteria No. 6 is not imposed with market shares in the United States where Dentsply employs that dealer criteria. The United States seeks to use the foreign market share comparisons to show the competitive effects of Criteria No. 6 in part because it has been unable to parse the effects of that dealer criteria geographically within the United States or time-wise . [FN10] D.I. 205, at 15. The parties have not cited, and the Court has not found, any cases on point as to whether comparative foreign market data is relevant to prove the effects of an alleged anti-competitive company policy imposed in this country. However, use of comparative market data in an analogous context suggests that comparing Dentsply's market share in the United States to its market share in the named five countries may be relevant in assessing the competitive effects of Dentsply's allegedly restrictive dealer criteria. *Cf. Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 116 n. 11, 124-25 (1969) (district court calculated damages resulting from Zenith's exclusion from the Canadian television market by assuming that, absent the conspiracy, its market share in Canada would have been roughly equal to its market share in the United States during the same period). [FN11] Therefore, at this discovery stage, there is sufficient relevance of the comparative market data sought by the first item of the proposed order accompanying the Motion to Compel so as to preclude shielding it from discovery. [FN12]

> FN10. Dealer Criteria No. 6 appears to have been applied nation-wide and, although it was not memorialized in writing until 1993, the United States believes that it existed informally within the company since the 1980s. D.I. 205, at 15.
>
> FN11. The type of evidence relied upon included testimony that, had Zenith been free from the unlawful activity, it would have had the same proportion of the Canadian market as it did in the United States; that the principal competitors in Canada were counterparts of the principal competitors in the United States; that promotion and advertising flowed back

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 7
2000 WL 654286 (D.Del.), 2000-1 Trade Cases P 72,919
**(Cite as: 2000 WL 654286 (D.Del.))**

and forth between the two countries; and that distributors were available in Canada but were frightened off by the illegal activities and threats in Canada. See *Hazeltine Research, Inc. v. Zenith Radio Corp.,* 418 F.2d 21, 25-26 (7th Cir.1969). The United States seeks to present similar kinds of evidence in this case.

The Court disagrees with Dentsply's blanket assertion that *Zenith Radio Corp.* is entirely different from this case. Moreover, there are companion private treble damages actions accompanying the government complaint. Under *Zenith Radio Corp.,* the comparative market data may be discoverable at the damages phase of those actions.

> FN12. The Court cautions, although evidence on Dentsply's foreign market position and distribution policy in foreign markets is relevant for discovery purposes, the Court is not passing on the ultimate admissibility of such evidence for trial.

C. Whether the Burden and Expense of the Requested Discovery Will Outweigh its Likely Benefit

Dentsply asserts that, even assuming the requested foreign discovery is relevant, the burden and expense of granting the United States' request will outweigh the likely utility of the information and, therefore, the request should be denied. *See* Fed.R.Civ.P. 26(b)(2)(iii). Dentsply does not contend that the specific information and documents sought by the United States' motion to compel would be burdensome to produce. Rather, Dentsply asserts that if the Court permits the foreign discovery, it will be compelled to undertake burdensome and expensive third party discovery to rebut any comparative market evidence presented by the United States. More precisely, Dentsply contends that a market comparison is probative only if the markets involved are not dissimilar in any material respect, and that the limited information the United States seeks will not provide a basis for concluding that the markets in the five identified countries are comparable to the United States market. Thus, Dentsply maintains, because it will be entitled to respond to the United States' evidence by demonstrating that the idiosyncrasies of those markets preclude meaningful comparisons, granting the motion to compel will generate a whole separate phase of discovery on the markets for the distribution and sale of artificial teeth in these five countries. Therefore, Dentsply argues, the Court should exercise its discretion to deny the motion to compel because permitting the requested discovery will require it to undertake a disproportionate burden to rebut the foreign market information. D.I. 190 at 11.

*7 Although Dentsply may need to conduct some additional discovery on the attributes of the artificial tooth market in the five specified countries in order to show that these markets are not comparable to the United States, the "precise extent of this discovery is unknown." D.I. 190, at 10. The Court believes the extent of rebuttal discovery is likely not as substantial as Dentsply asserts. Because Dentsply competes in these markets, its employees should be able to speak to salient market differences. Additionally, Dentsply has already received some discovery on these issues and, at the time of briefing, was in the process of deposing additional witnesses with discoverable information on these issues. [FN13] D.I. 195 at 5.

> FN13. The deposition testimony of Brian F. Bremer, Vice Chairman of Austenal, Inc., a Dentsply competitor with European tooth operations, provides a case in point. *See* D.I. 222, at A2-A4 (explaining that one must look beyond changes in sales volume, to other factors, for example, changes in government health care reimbursement schedules in Germany, to determine impact on relative market shares). Such testimony appears to be the type of evidence already available to Dentsply that could be used to rebut the United States' theory.

Moreover, at the hearing on this motion, the United States represented that, irrespective of whether the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 8
2000 WL 654286 (D.Del.), 2000-1 Trade Cases P 72,919
**(Cite as: 2000 WL 654286 (D.Del.))**

Court grants its Motion to Compel, it intends to present what evidence it has on relative market shares and Dentsply's distribution policies in other countries in support of its theory that Dealer Criteria No. 6 restricts competition in the United States. D.I. 205, at 7. The United States points out that it has already obtained evidence, mostly from third parties, that Dealer Criteria No. 6 is unique to the United States and that Dentsply's market share in this country is higher that its market share in other "mature markets." [FN14] The United States seeks through this Motion to Compel corroborative and supplemental information and documents from Dentsply. D.I. 195, at 1. Because the United States at this juncture intends to present foreign market evidence at trial, Dentsply at this point in time has no choice but to gather whatever additional information on these foreign markets it deems necessary to rebut the United States' argument, no matter how the Court decides this motion. It follows that the foreign discovery requested in the Motion to Compel will not in of itself generate burden and expense that will outweigh its likely benefit. Accordingly, the Court in its discretion will grant the Motion to Compel limited to Australia, Canada, England, France, and Germany.

> FN14. The Court is in no position to determine the extent of such evidence; however, apparently interviews with executives of third party competitors who the United States has identified as likely trial witnesses included discussions of market shares and distribution relationships in other countries. Additionally, some of the documents produced by these companies reflect market shares and other information about foreign artificial tooth markets. D.I. 195, at 5; D.I. 196, at C-3-5. Apparently, Dentsply's own documents characterize these countries as "mature markets" like the United States. D.I. 195, at 1.

V. Conclusion

For the foregoing reasons, the Court concludes the information and documents sought by the United States' motion to compel are relevant under Fed.R.Civ.P. 26(b)(1) and that the burden and expense of the proposed discovery does not outweigh its likely benefits. An order will be entered granting the Motion to Compel.

2000 WL 654286 (D.Del.), 2000-1 Trade Cases P 72,919

**Motions, Pleadings and Filings (Back to top)**

- 1:99CV00005  (Docket)
(Jan. 05, 1999)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.