# EXHIBIT A

LEXSEE 1999 OHIO APP. LEXIS 1667

GEORGE W. NEWMAN, III, Plaintiff-Appellee, Cross-Appellant, v. SALAMANDER INDUSTRIAL PRODUCTS, INC., and ROBUS LEATHER CORP., Defendants-Appellants, Cross-Appellees.

APPEAL Nos. C-970811, C-970843, C-970879

COURT OF APPEALS OF OHIO, FIRST APPELLATE DISTRICT, HAMILTON COUNTY

1999 Ohio App. LEXIS 1667

April 16, 1999, Date of Judgment Entry on Appeal

**NOTICE:** [*1] THESE ARE NOT OFFICIAL HEADNOTES AND OR SYLLABI AND ARE NEITHER APPROVED IN ADVANCE NOR ENDORSED BY THE COURT. PLEASE REVIEW THE CASE IN FULL.

**PRIOR HISTORY:** Civil Appeal From: Hamilton County Court of Common Pleas. TRIAL NO. A-9506042.

**DISPOSITION:** Judgments Appealed From Are: Affirmed.

**LexisNexis(R) Headnotes**

**SYLLABUS:** Where the seller breached warranties contained in a stock-purchase agreement, the trial court properly determined that the correct measure of damages for the buyer's breach-of-warranty claims was the diminution in value of the company's stock and not the diminution in value of the particular item warranted.

There was competent, credible evidence to support the trial court's conclusion that the buyer had failed to establish that the seller had breached his warranty regarding the value of the company's inventory.

Although the trial court erred as a matter of law in determining that the buyer was foreclosed from asserting breach-of-warranty claims concerning the value of certain corporate assets, there was competent, credible evidence to support the trial court's alternative conclusion that the claims lacked merit because the buyer had failed to demonstrate that it had suffered any damage as a result [*2] of the breaches.

Where a contractual attorney-fee provision was a product of free and understanding negotiations between two equally sophisticated parties, its enforcement was not contrary to Ohio public policy; accordingly, choice-of-law principles did not require that Ohio law be applied in place of the law chosen by the parties to govern the enforceability of the contract.

The trial court acted within its discretion in assessing attorney fees in a particular amount pursuant to the parties' attorney-fee agreement.

**COUNSEL:** Frederick J. McGavran, of Frost & Jacobs, for Plaintiff-Appellee, Cross-Appellant.

James F. McCarthy, III, of Katz, Teller, Brant & Hild, and William M. Barron, of Walter, Conston, Alexander & Green, P.C., for Defendants-Appellants, Cross-Appellees.

**JUDGES:** Sundermann, P.J., Hildebrandt and Gorman, JJ.

**OPINION:** DECISION.

Per Curiam.

Plaintiff-appellee, cross-appellant George W. Newman, III (Newman), was the sole shareholder of the George Newman Company (the Company), a corporation engaged in the manufacture and sale of bonded-leather products. In the summer of 1994, another producer of bonded leather, defendant-appellant, cross-appellee Salamander Industrial [*3] Products, Inc. (Salamander), approached Newman with respect to purchasing the Company. After several months of negotiations, the parties entered into a stock-purchase agreement (the Agreement), whereby Salamander acquired all of the Company's common stock in exchange for $7,000,000, and approximately $500,000 in non-compete and consulting fees. In

addition, Salamander paid $7,000,000 towards the Company's existing indebtedness.

Included in the Agreement were the following relevant items:

Newman's warranty that the company's financial statements were true, complete and correct, fairly and accurately represented the properties and assets of the company, and had been prepared in accordance with generally accepted accounting principles;

Newman's agreement to reimbürse Salamander for any decline in the Company's stockholder's equity that occurred between December 31, 1993, and October 4, 1994, the closing date of the acquisition;

Salamander's express reservation of its rights under Newman's warranties;

Newman's agreement to indemnify Salamander for attorney fees, accountant fees, and other reasonable costs incurred by Salamander in enforcing its rights under the [*4] Agreement or arising from a breach of warranty or contract by Newman or the Company; and

A New York choice of law provision.

Following Salamander's acquisition of the Company, which was renamed Robus Leather Corporation (Robus), Salamander engaged the accounting firm of Ernst & Young to conduct an audit of the Company's balance sheet as of the closing date of the transaction. The results of the audit led Salamander to conclude that Newman had improperly overvalued, on the Company's books and financial statements, certain inventory, equipment, and property. Salamander believed that these overvaluations constituted breaches of Newman's warranties in the Agreement. The audit also led Salamander to conclude that the company's stockholder's equity as of the closing date was less than it had been as of December 31, 1993. Accordingly, Salamander believed that, pursuant to the Agreement, it was entitled to reimbursement in the amount of the decline.

Salamander and Robus (hereinafter collectively referred to as Salamander) notified Newman of their concerns and asserted claims for breach of contract and breach of warranty. After settlement efforts between the parties stalled, Salamander [*5] withheld, as a setoff against its alleged claims against Newman, $125,000 owed to Newman in payment of his covenant not to compete. Thereafter, Newman commenced the instant action by asserting a claim for breach of contract regarding Salamander's failure to pay him the $125,000. Salamander, in turn, counterclaimed for breach of warranty and breach of contract. Specifically, Salamander sought reimbursement for the decline in stockholder's equity and indemnification for obsolete inventory, overvalued inventory, overvalued equipment, overvalued property, and undisclosed environmental liabilities. Salamander also asserted that the fee and expense provision contained in the Agreement required Newman to indemnify it for attorney fees, accountant fees, and other reasonable costs and expenses incurred by it in enforcing its rights under the Agreement and arising from Newman's breaches of warranty or contract.

After approximately one year of discovery, the matter proceeded to a bench trial. There, the trial court, having determined that it was appropriate to give effect to the parties' choice-of-law provision, made the initial ruling that New York law would govern its resolution of the dispute. [*6] In addition, the trial court bifurcated the trial on Salamander's claims for fees, expenses, and interest from the trial of the underlying claims. The trial on the merits proceeded for the next three weeks.

Thereafter, the trial court entered judgment on the merits of the case, finding in favor of Newman on his claim for breach of contract and awarding him $125,000 in damages, and entering judgment and awarding damages on Salamander's claims as follows:

(1) stockholder's equity: found in favor of Salamander in the amount of $101,989;

obsolete inventory: found in favor of Salamander in the amount of $416,696;

environmental liabilities: entered a declaratory judgment against Newman and awarded damages in the amount of

$100,500;

overvalued inventory: found in favor of Newman and awarded no damages;

overvalued equipment: found in favor of Newman and awarded no damages;

overvalued property: found in favor of Newman and awarded no damages.

Salamander timely appealed this judgment under the number C-970811.

Soon thereafter, the trial court conducted an evidentiary hearing on Salamander's remaining claims for fees,

expenses, and interest. In [*7] its entry on these matters, the trial court awarded Salamander $131,837 in prejudgment interest and $278,841 in fees and expenses. Both Salamander and Newman timely appealed this judgment under the numbers C-970879 and C-970843, respectively. By order of this court, all the appeals were consolidated. Accordingly, we now have before us for review the five assignments of error raised by Salamander in its appeal, as well as the two assignments of error raised by Newman in his cross-appeal.

We begin by addressing Salamander's assignments of error. For the purposes of analysis, we first review Salamander's third assignment of error. In this assignment, Salamander challenges the trial court's determination of the proper measure of damages for its breach-of-warranty claims. Salamander contends that the trial court incorrectly concluded that the proper measure of damages in this case was the diminution in the value of the Company's stock caused by a specific breach of warranty. According to Salamander, the proper measure of damages was the difference between the warranted value of a particular asset and its actual value.

In ruling on the merits of Salamander's breach-of-warranty claims, [*8] the trial court undertook a two-step process. First, it determined whether a breach had occurred. If the court determined that there had been a breach, it then went on to determine whether the breach had resulted in damages. The trial court expressly adopted the "aggregate value theory" as the proper measure of damages. In doing so, the trial court determined, as a matter of law, that in order to demonstrate that it had been damaged by a particular breach, Salamander was required to demonstrate that the breach had resulted in a diminution in the value of the Company's stock. It would not be sufficient, the trial court determined, for Salamander to demonstrate that a particular asset was actually worth less than Newman had warranted if it could not also demonstrate that the diminution in the value of that asset had the additional effect of decreasing the value of the stock.

Courts in New York are in agreement that, in compensating a buyer for a seller's breach of warranty, the buyer is entitled to the "benefit of his bargain." The difficulty in the instant case involves determining what constitutes "the benefit" of Salamander's bargain. Salamander argues that it bargained for assurances [*9] as to the value of each individual asset held by the Company. According to it, once one of those assets was discovered to have an actual value below what was warranted by Newman, it had suffered damage. According to Newman and the trial court, however, Salamander bargained to acquire a complete company by purchasing its stock. The purpose of the individual warranties was to assure Salamander of the fair market value of the Company's stock. And, insofar as a breach of one of the individual warranties did not diminish the value of the stock, Salamander received the benefit of its bargain and suffered no damage.

Like the trial court, we believe that, under the facts of this case, the structure of the parties' transaction is significant to a determination of the proper measure of damages. Because the transaction at issue was a stock sale rather than an asset sale, we are persuaded that it was appropriate to inquire whether a particular breach affected the value of the Company's stock, and not merely to subtract the actual value of a particular asset from its warranted value. Based on the peculiar facts of this case, then, we conclude that the trial court applied the correct measure of [*10] damages. Accordingly, we overrule Salamander's third assignment of error.

In its first assignment of error, Salamander asserts that the trial court erred in failing to award it damages for Newman's alleged breach of warranty for overvalued inventory. We disagree.

At trial, Salamander argued that the Ernst & Young post-closing audit revealed that Newman had improperly overvalued unfinished inventory on the Company's books and financial statements. As a result, Salamander asserted, Newman had breached his warranty, as contained in the Agreement, that the Company's financial statements were "true, complete and correct" and that they "fairly and accurately" represented the Company's assets. Salamander contended that it was entitled to $330,648, the amount by which the unfinished inventory should properly have been written down.

The trial court, however, determined that the discrepancy in the value allotted to the unfinished inventory was the result of differing accounting philosophies employed by Newman prior to closing and by Salamander following closing. The trial court noted that Salamander's expert would not go so far as to say that Newman's approach to valuing the unfinished inventory [*11] was not according to generally accepted accounting principles. Given this, the trial court stated that it could not hold Newman liable for Salamander's different accounting philosophy. The trial court, therefore, concluded that Salamander had "failed to prove [that] Newman breached his warranty regarding unfinished inventory."

Our review of the record demonstrates competent, credible evidence to support the trial court's conclusion that Salamander failed to establish that Newman breached this particular warranty. In the face of such

evidence, we shall not disturb the determination of the trial court. Accordingly, we overrule Salamander's first assignment or error.

Salamander's second assignment of error challenges the trial court's failure to award damages for Newman's alleged breach of warranty based on his overvaluation of property on the Company's financial statements. The specific property at issue was located in the Cincinnati suburb of Norwood, Ohio, and was carried on the Company's financial statements at a net book value of approximately $1 million.

At trial, Salamander contended that Newman's valuation of the Norwood property was grossly in excess of its actual market [*12] value. Salamander further contended that this misrepresentation of the property's value was in breach of Newman's warranty in the Agreement. The trial court, however, determined that Salamander was "foreclosed from asserting the breach of warranty" because it had "quality knowledge that the book value *** of the Norwood property was not accurate." Salamander contends that, in so holding, the trial court mischaracterized New York law. We agree.

To prevail on a claim for breach of warranty under New York law, a buyer must show that he suffered damage as the result of the breach of an express warranty he relied on as part of a contract. n1 With regard to the element of reliance, the buyer need not show that he relied on the truthfulness of the warranted information. Rather, the buyer must show only that he relied on the seller's promise as part of the "basis of the bargain" in entering into the contract. n2 Nevertheless, if a buyer closes on a contract in the full knowledge and acceptance of facts disclosed by the seller that would constitute a breach of warranty under the terms of the contract, and does not expressly reserve his rights under the warranty, he is foreclosed from later [*13] asserting the breach. n3 However, even where the seller has communicated facts or information that would amount to a breach of warranty, the buyer may preserve his right to later assert the breach by expressly stating that disputes regarding the accuracy of the seller's warranties are unresolved and that, by signing the agreement, he does not waive any rights to enforce the terms of the agreement. n4

    n1 *Metromedia Co. v. Fugazy (C.A.2, 1992), 983 F.2d 350, 360; CBS, Inc. v. Ziff-Davis Publishing. Co. (1990), 75 N.Y.2d 496, 503, 553 N.E.2d 997, 554 N.Y.S.2d 449.* –

    n2 *CBS, Inc.*, supra; *Rogath v. Siebenmann (C.A.2, 1997), 129 F.3d 261; Getty Family Trust v. Peltz, 1998 U.S. Dist. LEXIS 3945* (Mar. 27, 1998), S.D.N.Y. No. 93 Civ. 3162 (DAB), unreported.

    n3 *Galli v. Metz (C.A.2, 1992), 973 F.2d 145, 151; Rogath,* supra.

    n4 *Rogath,* supra, *129 F.3d at 264.*

On the other hand, in the event that the buyer's knowledge that the warranted facts are false comes from a source independent of the seller, [*14] the buyer is not foreclosed from later claiming a breach since "it is not unrealistic to assume that the buyer purchased the seller's warranty as an insurance policy *** ." n5

    n5 *Rogath,* supra, *129 F.3d at 265.*

Here, the trial court based its determination that Salamander was foreclosed from asserting the breach of warranty on the fact that it had "quality knowledge" that the Norwood property was worth much less than what Newman had warranted. But the trial court's own entry and the record in this matter establish that this knowledge came from a source independent of Newman. Specifically, Salamander's knowledge that the property's value was less than that warranted by Newman stemmed from the independent estimate of a local realty company, which Salamander solicited prior to closing. Given that Salamander's knowledge came from a third party, and not from the seller himself, we conclude, as a matter of law, that Salamander was not foreclosed from asserting a breach of warranty. Furthermore, even if Salamander [*15] had obtained this information directly from Newman, given that Salamander expressly reserved its rights under the warranties in the Agreement, n6 it would still not have been foreclosed from asserting the breach. Accordingly, we conclude, as a matter of law, that the trial court erred in determining that Salamander was foreclosed from asserting that Newman had breached his warranty regarding the value of the Norwood property.

    n6 Salamander's express reservation of rights provided in pertinent part, "The participation by [Salamander] in the Closing, even with knowledge of any breach or default of Newman or Company in connection with any covenant, representation or warranty shall not constitute a waiver of any claim or cause of action in regard to such breach unless [Salamander] shall have specifically waived such claim in writing at or prior to closing."

Our conclusion that the trial court committed this error of law does not, however, result in our acceptance of Salamander's assertion that the trial court [*16] erred in failing to award it damages on the claim. This is true because the trial court, in its opinion and entry, offered an alternative basis to support its determination that Salamander could not prevail on the claim. The trial court found that, even if Salamander had not been foreclosed from asserting the alleged breach of warranty, its claim lacked merit because Salamander had failed to demonstrate that this breach resulted in damage to it. Because the record contains competent, credible evidence to support this conclusion, we overrule the second assignment of error.

Salamander's fourth assignment of error, which challenges the trial court's granting of Newman's motion to reinstate his waiver defense to Salamander's breach-of-warranty claims, is rendered moot by our discussion and resolution of the second assignment or error. For this reason, we decline to address it.

Before we address Salamander's fifth assignment of error, which challenges the trial court's failure to award Salamander the full amount of attorney fees and costs requested, we must first address the argument contained in the first assignment of Newman's cross-appeal. In this assignment, Newman challenges the [*17] trial court's enforcement of the attorney-fee provision contained in the Agreement. He argues that, although the provision may have been enforceable under New York law, its enforcement was contrary to Ohio public law. Therefore, he argues, conflict-of-laws principles n7 require that the provision not be enforced in this jurisdiction. We disagree.

n7 See *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.* (1983), 6 Ohio St. 3d 436, 453 N.E.2d 683, syllabus (expressly adopting Restatement of Law 2d Conflict of Laws [1971] 561, Section 187).

In Ohio, a successful litigant in a civil action may recover attorney fees where the award is supported by either statutory authorization, a showing of bad faith, or an enforceable contract provision. n8 According to the weight of authority in Ohio, contractual provisions providing for the reimbursement of attorney fees are enforceable in both commercial and noncommercial transactions in instances where parties of equal bargaining power and similar sophistication [*18] freely negotiate for the inclusion of such a provision in their contract. n9

n8 *Nottingdale Homeowners' Assoc., Inc. v. Darby* (1987), 33 Ohio St. 3d 32, 514 N.E.2d 702.

n9 *Id.*; *Goldfarb v. The Robb Report, Inc.* (1995), 101 Ohio App. 3d 134, 655 N.E.2d 211 (Franklin Cty.); *Hilb, Rogal & Hamilton Agency of Dayton, Inc. v. Reynolds* (1992), 81 Ohio App. 3d 330, 610 N.E.2d 1102 (Montgomery Cty.); *First Capital Corp. v. G & J Industries, Inc.*, 1999 Ohio App. LEXIS 195 (Jan. 28, 1999), Cuyahoga App. No. 73337, unreported; *GMS Management Co., Inc. v. K & K Industries, Inc.*, 1991 Ohio App. LEXIS 2036 (Apr. 29, 1991), Stark App. No. CA8279, unreported; *Pingue v. Durante*, 1996 Ohio App. LEXIS 1857 (May 9, 1996), Franklin App. No. 95APG09-1241, unreported; *Kennecorp Mortgage Brokers, Inc. v. Huron Shores Limited Partnership*, 1991 Ohio App. LEXIS 4013 (Aug. 23, 1991), Lucas App. No. L-90-174, unreported; *Premium Enterprises, Inc. v. T.S., Inc.*, 1999 Ohio App. LEXIS 396 (Feb. 9, 1999), Medina App. No. 2751-M, unreported.

Because the instant attorney-fee provision was a product of free and understanding negotiations [*19] between two equally sophisticated parties, its enforcement was not contrary to Ohio public policy. Choice-of-law principles do not, then, require that Ohio law be applied in place of the law chosen by the parties. Accordingly, we overrule Newman's first assignment of error.

In its fifth and final assignment of error, Salamander asserts that the trial court erred in failing to award the full amount of attorney and accountant fees and expenses incurred by it in pursuing claims arising from the Agreement.

By virtue of the Agreement entered into by the parties, Newman was contractually obligated to indemnify Salamander for attorney fees, accountant fees, and expenses reasonably incurred in enforcing its rights under the Agreement or in investigating, preparing, and prosecuting an action arising out of a breach of contract or warranty by Newman or the Company. Salamander claimed that it had incurred approximately $1.3 million in fees and expenses in preparing and litigating the matter. This figure represented $924,909.14 in attorney fees and disbursements paid to Salamander's New York counsel, $56,767.26 in attorney fees paid to its local counsel, $160,302 in accountant fees and disbursements, [*20] and $170,469.85 in expenses. Salamander sought indemnification for the full amount of these fees and expenses. The trial court, however, determined that

Salamander was only entitled to indemnification in the amount of $278,841.

As a general matter of New York law, when a contract contains an attorney-fee indemnification provision, the court will enforce that provision and will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable. n10 Here, the trial court determined that the amounts expended by Salamander's attorneys, accountants, and other professionals were not reasonable and that, therefore, a reduction was necessary. Specifically, the trial court determined that certain fees and expenses incurred were duplicative, excessive, and unrelated to the litigation. This determination is supported by the weight of the evidence. However, most significant to the trial court's determination that a reduction in the fees and expenses was necessary was the fact that Salamander had achieved only limited success on its claims.

   n10 *F.H. Krear & Co. v. Nineteen Names Trustees (C.A.2, 1987), 810 F.2d 1250; Diamond D Enterprises USA, Inc. v. Steinsvaag (C.A.2, 1992), 979 F.2d 14.*

[*21]

Although we are cognizant that the "degree of success" or "amount recovered" is but one of many criteria that a court should weigh in fixing a reasonable fee, n11 based on the circumstances of this case, we are unable to conclude that the trial court abused its discretion in giving greater weight to this particular factor. Rather, we conclude that the trial court acted within its discretion in fixing Salamander's fees and expenses. Accordingly, we overrule Salamander's fifth assignment of error.

   n11 *Diamond D Enterprises, supra.*

The final issue that we must address is contained in the second assignment of Newman's cross-appeal. In this assignment, Newman asserts that the trial court erred in calculating the amount of reimbursement that Salamander was entitled to receive for the decline in the Company's stockholder's equity. We are not persuaded by this argument.

Pursuant to the Agreement, Newman was contractually obligated to reimburse Salamander if, as of closing, the Company's stockholder's [*22] equity was less than its 1993 year-end agreed value of $745,495. Newman does not dispute that there was a decline in the value of the stockholder's equity. Rather, Newman's sole argument on appeal is that the trial court erred in including $51,261 for uncollected accounts receivable in the 1993 year-end value of the stockholder's equity. Accordingly, Newman believes that Salamander was entitled to $51,261 less in reimbursement than it was awarded by the trial court.

In rejecting Newman's argument, the trial court noted that the Agreement negotiated by the parties specifically and clearly provided that the value of the stockholder's equity as of December 31, 1993, was $748,495. Given this, and given Newman's failure to establish that there had been a mutual mistake between the parties in including the $51,261 in this amount, the trial court refused to revise the terms of the Agreement. We conclude that the trial court's resolution of this issue was appropriate. Accordingly, we overrule Newman's second assignment of error and affirm the judgments of the trial court.

   Judgments affirmed.

Sundermann, P.J., Hildebrandt and Gorman, JJ.