IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ) | Chapter 11 |
| ) | |
| TOUCH AMERICA HOLDINGS, INC., et al., ) | Bk. No. 03-11915 (KJC) |
| ) | |
| Debtors. ) | Jointly Administered |
| ENTECH LLC, ) | |
| ) | Adv. No. 04-52935 (KJC) |
| Plaintiff, ) | |
| ) | |
| OFFICIAL COMMITTEE OF UNSECURED ) | |
| CREDITORS, ) | |
| ) | |
| Plaintiff-Intervenor, ) | |
| ) | |
| v. ) | C.A. No. 04-1336-SLR |
| ) | |
| WESTMORELAND COAL COMPANY, ) | |
| a Delaware corporation, and ) | |
| WESTMORELAND MINING LLC, ) | |
| a Delaware limited liability company, ) | |
| ) | |
| Defendants. ) | |

### NOTICE OF DEPOSITION

TO:   Laurie Selber Silverstein, Esquire
      Potter Anderson & Corroon LLP
      1313 North Market Street
      P.O. Box 951
      Wilmington, DE 19899-0951

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6), plaintiff Entech LLC will take the deposition upon oral examination of defendant Westmoreland Coal Company ("Westmoreland") regarding the topics of examination set forth in the attached Schedule A in accordance with the definitions set forth therein.

The deposition will begin at 9:30 a.m. on July 18, 2005 at the offices of Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801, or at such other time and place as may be agreed upon by counsel. The deposition will be conducted before an officer authorized to administer oaths and will continue day to day until completed. The testimony at the deposition will be recorded by stenographic and/or videographic means.

In accordance with Federal Rule of Civil Procedure 30(b)(6), Westmoreland shall designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf as to each of the topics of examination set forth in the attached Schedule A. Westmoreland is requested to advise counsel for Entech of the identity of the individual(s) who will testify regarding each topic of examination at least one week in advance of the deposition.

You are invited to attend.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_/s/ Christian Douglas Wright_
Robert S. Brady (No. 2847)
John T. Dorsey (No. 2988)
Christian Douglas Wright (No. 3554)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
cwright@ycst.com

-and-

        WINSTON & STRAWN LLP
        C. MacNeil Mitchell
        Piero A. Tozzi
        200 Park Avenue
        New York, NY 10166-4193
        (212) 294-6700

        Rolf S. Woolner
        333 South Grand Avenue
        Los Angeles, CA 90071-1543
        (213) 615-1700

        Co-counsel to the Plaintiff

DATED: June 9, 2005

## SCHEDULE A

## DEFINITIONS

Notwithstanding anything else to the contrary herein, each word, term or phrase used in this Schedule is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. For purposes of this Schedule, the following definitions will apply, regardless of whether the defined word is capitalized or not:

A. "$5 Million Adjustment Agreement" means the letter agreement, dated April 25, 2001, concerning a deferral of $5 million of the purchase price for the transaction contemplated by the Stock Purchase Agreement.

B. "Adverse Consequences" has the meaning set forth in Section 12.01 of the Stock Purchase Agreement.

C. The words "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Interrogatories information that might otherwise be construed to be outside its scope; the singular shall include the plural and the plural shall include the singular except as the context may otherwise dictate; the term "any" means "any and all" and the term "all" means "any and all"; the past tense shall include the present tense, and vice versa; and the word "including" means "including without limitation."

D. "Basin" means Basin Resources, Inc.

E. "Boards of Directors" means the boards of directors of Westmoreland Coal and Westmoreland Mining, jointly or separately as the context may require.

F.    "Closing Date Certificate" means the Closing Date Certificate provided by Entech to Westmoreland on June 29, 2001, as supplemented on July 1, 2001 and July 16, 2001.

G.    "Coal Companies" collectively means Basin Resources, Inc., Horizon Coal Services, Inc., North Central Energy Company, Northwestern Resources Co., and Western Energy Company (including its subsidiary Western SynCoal LLC).

H.    "Communication" means any manner or means of disclosure, transfer, exchange or conveyance of information, including, but not limited to, any conversation, discussion, letter, memorandum, facsimile transmission, note, meeting, electronic mail, or other transfer of information, whether oral or written, or by any other means and includes any document that abstracts, digests, transcribes or records any communication.

I.    "Counterclaims" means the counterclaims asserted in the Second Amended Answer and Counterclaims filed by Defendants on January 18, 2005.

J.    "Credit Agreement" means the $20,000,000 Revolving Credit Facility Credit Agreement dated April 27, 2001 between Westmoreland, the Guarantors and Banks party thereto, and PNC Bank, National Association, as Agent, and any amendments thereto.

K.    "Defendants" shall jointly mean Westmoreland Coal and Westmoreland Mining.

L.    "Document" shall have the broadest meaning possible under Federal Rules of Civil Procedure 26 and 34.  Further, the word "document" is used in the broad sense and means written, typed, printed, recorded or graphic matter, however produced or reproduced of any kind and description, and whether an original, master, duplicate or copy, including but not limited to, papers, notes of conversations, contracts, electronic mail, computer files,

agreements, drawings, telegrams, tape recordings, communications of any kind whatsoever (including inter-office and intra-office memoranda), reports, studies, working papers, corporate records, minutes of meetings (including meetings of the Boards of Directors or committees thereof), notebooks, bank deposit slips, bank checks, canceled checks, diaries, diary entries, appointment books, desk calendars, photographs, transcriptions or sound recordings of any type of personal or telephone conversations or negotiations, meetings or conferences, or things similar to any of the foregoing, and include any data, information or statistics contained within any data storage modules, tapes, discs or other memory device or other information retrievable from storage systems, including but not limited to computer generated reports and print-outs. The word "document" also includes data compilations from which information can be obtained, and translated, if necessary, through detection devices in a reasonably usable form. If any document has been modified by the addition of notations or otherwise, or has been prepared in multiple copies which are not identical, each modification copy or non-identical copy is a separate "document."

     M.    "Entech" means Entech LLC, a Delaware limited liability company, the plaintiff in this action, and the successor of Entech, Inc.

     N.    "Financial Materials" means any statements of operation and any financial or accounting information, statements, balance sheets, and reports relating to the Coal Companies, which were provided, exchanged, reviewed, collected, or otherwise utilized in connection with the Transaction or the preparation of the Objections, the Proof of Claim, or the Indemnity Notices.

O. "Guiding Principles Agreement" means the agreement titled Guiding Principles for Calculation of Net Asset Value and Net Revenue Amount, dated April 25, 2001.

P. "Horizon" means Horizon Coal Services, Inc.

Q. "Indemnity Notices" jointly means the Indemnity Notice of Adverse Consequences, dated October 26, 2001, submitted by Westmoreland Coal to Entech, and the Indemnity Notice of Adverse Consequences, dated October 26, 2001, submitted by Westmoreland Mining to Entech.

R. "Interim Financial Statements" has the meaning set forth in Section 12.01 of the Stock Purchase Agreement.

S. "KPMG" means KPMG LLP, and any and all of its predecessors, subsidiaries, divisions, departments and affiliates, and their respective officers, directors, agents, employees, attorneys and/or other representatives.

T. "National City Bank" means National City Bank, and its affiliates, subsidiaries, agents, representatives, officers, directors, partners, associates and employees.

U. "NCE" means North Central Energy Company.

V. "Northwestern" means Northwestern Resources Co.

W. "Norwest" means Norwest Corporation, and its affiliates, subsidiaries, agents, representatives, officers, directors, partners, associates and employees.

X. "Objections" means the objections to the Closing Date Certificate originally submitted by Westmoreland to Entech on July 27, 2001, as subsequently amended and revised (including but not limited to the September 2001 Objections and the November 2001 Objections).

4

Y. "Person" means any individual, natural person, firm, partnership, association, corporation, limited liability company, joint venture, or any other legal, business or governmental entity of any type whatsoever.

Z. "PNC Bank" means PNC Bank, National Association, and its affiliates, subsidiaries, agents, representatives, officers, directors, partners, associates and employees.

AA. "Proof of Claim" means the Proof of Claim filed by Defendants on December 10, 2003, in the Chapter 11 proceeding *In re Touch America Holdings, Inc., et al.*, Case No. 03-11915 (KJC), in the United States Bankruptcy Court for the District of Delaware, but excluding those portions of the Proof of Claim relating to the *McGreevey* Litigation (as that term is used in the Proof of Claim).

BB. "Relate to" or "relating to" mean concerning, regarding, referring to, discussing, supporting, constituting, comprising, containing, evidencing, setting forth, showing, disclosing, describing, explaining, summarizing, reflecting or mentioning, directly or indirectly, in whole or in part.

CC. "Rothschild" means Rothschild, Inc., and its affiliates, subsidiaries, agents, representatives, officers, directors, partners, associates and employees.

DD. "Section 338(h)(10) Election" has the meaning set forth in Section 8.09 of the Stock Purchase Agreement.

EE. "Stock Purchase Agreement" means the Stock Purchase Agreement, dated as of September 15, 2000, by and between Westmoreland Coal and Entech, Inc.

FF. "SynCoal" means Western SynCoal LLC.

GG. "Term Loan Agreement" means the Term Loan Agreement concerning Westmoreland Mining LLC $20,000,000 Floating Rate Senior Guaranteed Secured Notes,

Series A, due June 30, 2002 and $100,000,000 9.39% Senior Guaranteed Secured Notes, Series B, due December 31, 2008, dated April 27, 2001, and any amendments thereto.

HH. "Transaction" means the transaction contemplated by the Stock Purchase Agreement, the Guiding Principles Agreement, the $5 Million Adjustment Agreement, and any documents and agreements related thereto.

II. "Transaction Financing Agreements" means the agreements filed as Exhibits 99.2, 99.3, 99.4, 99.5, 99.6, 99.7, 99.8, 99.9, 99.10, and 99.11 to the Form 8-K filed by Westmoreland Coal on May 15, 2001, including the Credit Agreement and the Term Loan Agreement.

JJ. "U.S. Bank" means U.S. Bank, N.A., as the successor in interest to Firstar Bank, N.A., a lending bank under the Credit Agreement and a purchaser of Series A Floating Rate Senior Guaranteed Notes under the Term Loan Agreement, and its affiliates, subsidiaries, agents, representatives, officers, directors, partners, associates and employees.

KK. "WECO" means Western Energy Company.

LL. "Westmoreland Coal" means Westmoreland Coal Company, a Delaware corporation and a defendant in this action, and any and all of its predecessors, subsidiaries, divisions, departments and affiliates, and their respective officers, directors, agents, employees, attorneys and/or other representatives.

MM. "Westmoreland Mining" means Westmoreland Mining LLC, a Delaware limited liability company and a defendant in this action, and any and all of its predecessors, subsidiaries, divisions, departments and affiliates, and their respective officers, directors, agents, employees, attorneys and/or other representatives.

## **TOPICS**

1. The negotiation of the Transaction, including the bid(s) submitted by Defendants.

2. The due diligence performed by Defendants in connection with the Transaction (whether such due diligence was performed prior to the execution of the Stock Purchase Agreement or up through to the Closing Date).

3. The Stock Purchase Agreement, including but not limited to Sections 2.08 and 5.04(g) thereof.

4. The Objections.

5. The Indemnity Notices.

6. Defendants' evaluation of the Financial Materials, both before and after the Closing Date.

7. The accounting and tax treatment, methods, or procedures used by Defendants with respect to the evaluation of the Financial Materials.

8. Defendants' evaluation of the Interim Financial Statements.

9. The accounting and tax treatment, methods, or procedures used by Defendants with respect to the evaluation of the Interim Financial Statements.

10. Valuations of the Coal Companies performed by or for Defendants, whether directed to any one or more of the Coal Companies separately (including any subsidiaries thereof) or to the Coal Companies as a group.

11. The determination by Defendants of the amounts to offer for the stock of the Coal Companies, and the bases therefor.

12. The accounting and tax treatment, methods, or procedures used by Defendants with respect to the Coal Companies, from April 30, 2001 to the present day, including such treatment, methods, or procedures with respect to the matters that are the subject of the Objections, and the purchase accounting performed by Defendants or the Coal Companies with respect to the Transaction.

13. Any request made for an audit or management representation letter on any issue that is the subject of one or more of the Objections, and, if no audit or management representation letter was issued, the reasons why.

14. Communications between KPMG and Defendants concerning the Transaction, the Objections, the Financial Materials, the Interim Financial Statements, the Transaction Financing Agreements, or any opinion or audit by KPMG relating to or including the Coal Companies.

15. Communications between Rothschild and Defendants concerning the Transaction, the Objections, the Financial Materials, the Interim Financial Statements, or the Transaction Financing Agreements.

16. Communications between Norwest and Defendants concerning the Transaction, the Objections, the Financial Materials, the Interim Financial Statements, or the Transaction Financing Agreements.

17. Communications between PNC Bank and Defendants concerning the Transaction, the Objections, the Financial Materials, the Interim Financial Statements, or the Transaction Financing Agreements.

18. Communications between National City Bank and Defendants concerning the Transaction, the Objections, the Financial Materials, the Interim Financial Statements, or the Transaction Financing Agreements.

19. Communications between U.S. Bank and Defendants concerning the Transaction, the Objections, the Financial Materials, the Interim Financial Statements, or the Transaction Financing Agreements.

20. Any requests for information, documents, or materials received by Defendants from any of the banks which are or were parties to the Transaction Financing Agreements (or any of their successors or assigns), which relate to the Transaction or to the Financial Materials, the Interim Financial Statements, or any information contained therein.

21. Any meetings or communications between Defendants and Entech, including but not limited to the November 5, 2001 meeting in Denver, Colorado, relating to any of the Transaction, the Objections, the Indemnity Notices, the Financial Materials, or the Interim Financial Statements.

22. The pension-related issues set forth in Defendants' Counterclaims, including any communications with the Northwestern Resources and Western Energy Pension Plan or with the trustee thereof or any actuary, consultant, or other advisor with respect thereto.

23. Defendants' contention that "the value of the accrued benefits on a termination basis must include an increase due to the Load Factor," as set forth in Paragraph 98 of the Counterclaims.

24. Defendants' contention that Entech "improperly excluded non-vested benefits from the transfer amount," as set forth in Paragraph 103 of the Counterclaims.

25. The Section 338(h)(10) Election, and any associated book and tax accounting in connection therewith.

26. The amount and computation of any damages or Adverse Consequences allegedly suffered by Defendants on account of any alleged act, omission, error, breach, or failure by Entech.

27. The accounting that is the subject of Objection No. 6.

28. The accounting that is the subject of Objection No. 8.

29. The accounting that is the subject of Objection No. 9.

30. The accounting that is the subject of Objection No. 10.

31. The accounting that is the subject of Objection No. 11.

32. The accounting that is the subject of Objection No. 12.

33. The impact of the August 12, 1999 amendment of the Lignite Supply Agreement between Northwestern and Reliant Energy Inc. on the obligation of Reliant Energy Inc. to pay for reclamation costs incurred in connection with the Jewett Mine.

34. The accounting that is the subject of Objection No. 13.

35. The accounting that is the subject of Objection No. 14.

36. The accounting that is the subject of Objection No. 15.

37. The calculation in the Interim Financial Statements of a liability for final reclamation activities at the Jewett Mine.

38. The accounting that is the subject of Objection No. 19a.

39. The accounting that is the subject of Objection No. 19b.

40. The accounting that is the subject of Objection No. 19c.

41. The accounting that is the subject of Objection No. 20a.

42. The accounting that is the subject of Objection No. 20b.

43. The accounting that is the subject of Objection No. 20c.

44. The accounting that is the subject of Objection No. 20d.

45. The accounting that is the subject of Objection No. 20e.

46. The accounting that is the subject of Objection No. 20f.

47. The accounting that is the subject of Objection No. 20g.

48. The accounting that is the subject of Objection No. 20h.

49. The accounting that is the subject of Objection No. 20i.

50. The accounting that is the subject of Objection No. 20j.

51. The accounting that is the subject of Objection No. 20k.

52. The accounting that is the subject of Objection No. 20l.

53. The accounting that is the subject of Objection No. 20m.

54. The accounting that is the subject of Objection No. 20n.

55. The accounting that is the subject of Objection No. 20o.

56. The accounting that is the subject of Objection No. 20p.

57. The accounting that is the subject of Objection No. 20q.

58. The accounting that is the subject of Objection No. 20r.

59. The accounting that is the subject of Objection No. 20s.

60. The accounting that is the subject of Objection No. 23a.

61. The representation and warranty in Section 6.1.9 of the Credit Agreement and Section 5.9 of the Term Loan Agreement that the Historical Statements (as defined in Section 6.1.9 of the Credit Agreement and Section 5.9 of the Term Loan Agreement) "are correct and complete and fairly represent the financial condition of WECO and Northwestern

as of their dates and the results of operations for the fiscal periods then ended and have been prepared in accordance with GAAP consistently applied, subject (in the case of the Interim Statements) to normal year-end audit adjustments and the absence of footnotes."

62. "Confidential Offering Memorandum" provided by Defendants pursuant to Section 6.1.11 of the Credit Agreement or Section 5.11 of the Term Loan Agreement.

63. "Updates to Schedules" (as that term is used in Section 6.2 of the Credit Agreement) provided by Defendants pursuant to Section 6.2 of the Credit Agreement, which involve, concern, or relate in any way to Westmoreland or the Coal Companies.

64. "Compliance Certificates" provided by Defendants pursuant to Section 8.3.4 of the Credit Agreement or Section 7.1(d) of the Term Loan Agreement.

65. Any "notice of all actions, suits, proceedings or investigations" within the meaning of Section 8.3.6 of the Credit Agreement or Section 7.1(f) of the Term Loan Agreement provided by Defendants to PNC Bank, National City Bank, or U.S. Bank, which involve, concern, or relate to Defendants or the Coal Companies.

66. Any filings made by Defendants or any of the Coal Companies with the Securities and Exchange Commission, the Texas Railroad Commission, or any other governmental or regulatory agency that relate to the Transaction, the Objections, the Financial Materials, the Interim Financial Statements, or the Transaction Financing Agreements.

67. Communications with either Defendant's Board of Directors or any committee of same, including their audit committees, that relate to the Transaction, the Objections, the Financial Materials, the Interim Financial Statements, or the Transaction Financing Agreements.

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2005, I caused to be electronically filed a true and correct copy of *Notice of Deposition* with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Laurie Selber Silverstein, Esquire
>Potter Anderson & Corroon LLP
>Hercules Plaza
>1313 North Market Street
>Wilmington, DE 19801

I further certify that on June 9, 2005, I caused a copy of the *Notice of Deposition* to be served by hand-delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

>**BY FEDEX**
>
>John G. Hutchinson, Esquire
>Sidley Austin Brown & Wood LLP
>787 Seventh Avenue
>New York, NY 10019

>YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
>/s/ Christian Douglas Wright
>Christian Douglas Wright (No. 3554)
>The Brandywine Building
>1000 West Street, 17th Floor
>Wilmington, DE 19801
>P.O. Box 391
>Wilmington, DE 19899-0391
>(302) 571-6600
>cwright@ycst.com
>
>*Attorneys for Entech LLC*

WP3:1097149.1

62207.1001